RENE L. VALLADARES
Federal Public Defender
Nevada Bar No. 11479
DAVID ANTHONY
Assistant Federal Public Defender
Nevada Bar No. 7978
david_anthony@fd.org
BRAD D. LEVENSON
Assistant Federal Public Defender
California Bar No. 166073
brad_levenson@fd.org
TIMOTHY R. PAYNE
Assistant Federal Public Defender
Ohio Bar No. 0069329
tim_payne@fd.org
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577
(702) 388-5819 (Fax)

Attorneys for Zane M. Floyd

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ZANE M. FLOYD,<br><br>         Plaintiff,<br><br>    v.<br><br>CHARLES DANIELS, Director, Nevada Department of Corrections; HAROLD WICKHAM, NDOC Deputy Director of Operations; WILLIAM GITTERE, Warden, Ely State Prison; WILLIAM REUBART, Associate Warden at Ely State Prison; DAVID DRUMMOND, Associate Warden at Ely State Prison; IHSAN AZZAM, Chief Medical Officer of the State of Nevada; DR. MICHAEL MINEV, NDOC Director of Medical Care, DR. DAVID | Case No._____<br>(To be Supplied by Clerk)<br><br>**PLAINTIFF'S MOTION FOR DISCLOSURE OF METHOD OF EXECUTION**<br><br>**(DEATH PENALTY CASE)**<br><br>**EXECUTION WARRANT SOUGHT BY THE STATE FOR THE WEEK OF JUNE 7, 2021** |

GREEN, NDOC Director of Mental Health Care, LINDA FOX, NDOC Director of Pharmacy; JOHN DOES I-XV, NDOC execution team members,

        Defendants.

DATED this 16th day of April, 2021.

    Respectfully submitted
    RENE L. VALLADARES
    Federal Public Defender

    */s/ David Anthony*
    DAVID ANTHONY
    Assistant Federal Public Defender

    */s/Brad D. Levenson*
    BRAD D. LEVENSON
    Assistant Federal Public Defender

    */s/ Timothy R. Payne*
    TIMOTHY R. PAYNE
    Assistant Federal Public Defender

## POINTS AND AUTHORITIES

### I. INTRODUCTION

The State of Nevada, through the Clark County District Attorney Office's April 14, 2021 filing in state court requesting a Second Supplemental Warrant of Execution, seeks to execute Zane Floyd during the week commencing June 7, 2021. The State, however, does not have the means to carry out the execution in compliance with its own execution protocol. The current execution protocol calls for a three-drug lethal injection procedure in which the drugs midazolam, fentanyl and cisatracurium are to be sequentially injected intravenously into Floyd's body. It is apparent from various accounts, including those from state officials positioned to know, that the State does not have the drugs needed to carry out this procedure. Zane Floyd therefore requests this Court issue an order requiring Defendants to disclose the method by which it intends, in less than one month from the date of this motion, to carry out his execution.

### II. APPLICABLE LEGAL STANDARDS

Floyd is entitled to this information pursuant to his instant 42 U.S.C. § 1983 Complaint and his rights under the United States Constitution. He has a constitutional right to be executed humanely and to not suffer through an excruciating execution.

#### A. Eighth Amendment

The Eighth Amendment protects inmates from execution methods that pose a substantial risk of causing cruel pain and suffering if another available method would significantly reduce the risk. *See Bucklew v. Precythe*, 139 S. Ct 1112, 1125,

3

1129 (2019). For this protection to have effect, inmates must be able to challenge critical aspects of their own execution. The "right to be heard before being condemned to suffer grievous loss of any kind . . . is a principle basic to our society." *Joint Anti–Fascist Comm. v. McGrath*, 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring). The only meaningful time that an inmate can challenge the method of his own execution is before he is executed. "There is no redo." *Lopez v. Brewer*, 680 F.3d 1084, 1092 (9th Cir. 2012) (Berzon, J., concurring in part and dissenting in part from denial of rehearing en banc).

The Eighth Amendment's ban on cruel and unusual punishment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958). Without knowing Nevada's intended method for executing Floyd, it is impossible for him or this Court to determine whether the method comports with evolving standards of decency. Moreover, it is consistent with any standard of decency, whether evolving or not, that the State inform Floyd and the citizens of Nevada how it intends to put him to death.

### B.     Fourteenth Amendment Due Process

The requested disclosure is also consistent with requirements of due process under the Fourteenth Amendment. The Due Process Clause protects individuals from deprivations of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV. A procedural due process violation "occurs when an official deprives an individual of a liberty or property interest without providing appropriate procedural protections. Liberty interests arise out of the Constitution

itself or 'may arise from an expectation or interest created by state laws or policies.'" *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). The method by which the state will conduct an execution implicates a condemned inmate's life interest in avoiding "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).[1] Procedural due process in turn protects a condemned inmate's right not to be executed in a manner that violates the Eighth Amendment. *See Ohio Adult Parole Authority v. Woodard*, 523 US 272, 281 n.3 (1998) ("This substantive constitutional prohibition [against cruel and unusual punishment] implicate[s] due process protections.").

Because Floyd has a constitutionally cognizable interest in not being executed inhumanely, the manner of his execution is subject to the requirements of procedural due process. "For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected … must first be notified.'" *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (quoting *Baldwin v. Hale*, 68

---

[1] A condemned inmate "maintains a residual life interest" in an execution being conducted consistent with the requirements of the Constitution. *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 281 (1998); *see also id.* at 288 (O'Connor, concurring in part and concurring in the judgment) ("A prisoner under a death sentence remains a living person and consequently has an interest in his life."); *id.* at 291 (Stevens, J., concurring in part and dissenting in part) ("There is … no room for legitimate debate about whether a living person has a constitutionality protected interest in life. He obviously does."). That interest is "separate from the life interest already adjudicated in the inmate's conviction and sentence." *Id.* at 281 n.3. Thus, for example, a condemned inmate cannot be "summarily executed by prison guards." *Id.* at 281.

U.S. (1 Wall.) 223, 233 (1863)). Notice, however, is not an end to itself, but rather a means "to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing,'" *Memphis Light, Gas & Water Div. v. Craft*, 436 US 1, 14 (1978), during which he has "an opportunity to present [his] objections," *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ("The opportunity to present reasons … why proposed action should not be taken is a fundamental due process requirement."). "If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented." *Fuentes*, 407 U.S. at 81.

In cases involving lethal injection protocols, at least three federal district courts have held that a condemned inmate has a due process right to notice of at least the method of execution. *In re Ohio Execution Protocol Litigation*, No. 2:11-cv-1016, 2018 WL 6529145 at *10 (S.D. Ohio December 12, 2018) (describing right to timely notice of method of execution as "correct application of the law"); *First Amend. Coal. of Arizona, Inc. v. Ryan*, 188 F. Supp. 3d 940 (D. Ariz. 2016) (similar), *aff'd in part, rev'd in part and remanded on other grounds*, 938 F.3d 1069 (9th Cir. 2019); *Oken v. Sizer*, 321 F. Supp. 2d 658, 665 (D. Md. 2004) (explaining that due process does not permit federal courts to "tak[e] [the state's] word that [an inmate's] rights will not be violated").[2]

---

[2] There is additional precedent that inmates facing the death penalty are entitled to notice when there has been a post-conviction change in method of execution. *See, e.g.*, *Stewart v. LaGrand*, 526 U.S. 115, 119 (1999); *Vickers v.*

### C. Fourteenth Amendment Equal Protection

The State's failure to provide Floyd with notice of the method of execution also violates his Fourteenth Amendment right to equal protection. The Equal Protection Clause commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Supreme Court has stated that this language "embodies the general rule that States must treat like cases alike." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). The states cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one person differently from others similarly situated without any rational basis for the difference. *Id.*; *see Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (holding that equal protection claims may be brought by a "class of one"). When the disparate treatment burdens a fundamental right, strict scrutiny applies. *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1 (1973).

The State is treating Floyd disparately in depriving him of his fundamental right to notice of the manner in which the State intends to carry out his execution. Since reinstatement of the death penalty by the United States Supreme Court approximately 45 years ago, the State has traditionally had an execution protocol in

---

*Stewart*, 144 F.3d 613, 617 (9th Cir. 1998); *Poland v. Stewart*, 117 F.3d 1094, 1105 (9th Cir. 1997); *see also Sims v. Florida*, 754 So.2d 657, 665 (Fla. 2000); *DeShields v. State*, 534 A.2d 630, 639 n. 7 (Del. 1987); *Wetzel v. Wiggins*, 85 So.2d 469, 471 (Miss. 1956); *State v. Fitzpatrick*, 684 P.2d 1112, 1113 (Mont. 1984); *but cf.*, *Beaty v. Brewer*, 649 F.3d 1071, 1074 (9th Cir. 2011) (substitution of one barbiturate for another did not present basis for stay of execution, where petitioner "failed to provide any factual support for his claim," and "failed to suggest any way in which the modified protocol is constitutionally objectionable.").

7

effect that it intended to follow and did not withhold from the condemned inmates in carrying out imposed sentences of death. Of the twelve inmates executed by Nevada since reinstatement, Floyd is aware of no one from whom the State kept hidden its intended method of execution. Floyd demands equal treatment from the State in this respect.

### III. APPLICATION OF LAW TO ZANE FLOYD

The State intends to kill Floyd in the very near future, and it is unknown how the State plans to carry this out. Various reports in the media suggest the Nevada Department of Corrections (NDOC) does not possess the three drugs required under its June 11, 2018 execution protocol for carrying out Floyd's execution. At the same time, Floyd is unaware of the State having any other drugs (e.g., pentobarbital) acquired for purposes of carrying out an execution.

Thus, Floyd does not possess the most basic information regarding the State's intended method of execution and is not even assured that the intended method is by lethal injection as opposed to some other means. Floyd does not know what the State's new proposed method of execution is; whether the new protocol calls for use of drugs different than those under the current protocol; if new drugs are to be used, the manufacturers of those drugs; if new drugs are to be used, how they will be administered, and in what sequence and dosages; whether there is a new written execution protocol for the proposed method; whether the new written execution protocol, if any, has been appropriately reviewed, approved by signature, and given an effective date; whether the new execution method was developed in conformance

with state law (*e.g.*, whether the NDOC Director properly consulted with the State's Chief Medical Officer in selecting the drug or combination of drugs to be used in the execution, *see* Nev. Rev. Stat. § 176.355.2.b); and whether the new protocol provides for the basic equipment, medical staff, staff training and other necessary safeguards to reasonably ensure a humane and constitutional execution of Floyd.

The State is required to disclose at least the basic information regarding its intended method of executing Floyd and cannot be permitted to effectively insulate itself from judicial review. *In re Ohio Execution Protocol Litigation*, No. 2:11-cv-1016, 2018 WL 1033486 (S.D. Ohio February 22, 2018); *First Amendment Coalition of Arizona,* 188 F. Supp. 3d 940. In the case of *In re Ohio Execution Protocol Litigation*, the court addressed plaintiffs' claim of a right to have notice of the manner of execution including a right to notice of changes in Ohio's method. The magistrate judge looked to *First Amendment Coalition of Arizona*, noting that the Arizona court observed that death row inmates have an interest in predictability of method of execution which "must be weighed against the State's interest in flexibility." *In re Ohio Execution Protocol Litigation*, 2018 WL 1033486, at *24 (quoting *First Amendment Coalition of Arizona*, 188 F. Supp. 3d at 953). The *Ryan* court further recognized that "[i]n some cases, the State's change to an inmate's execution method may be so significant, so near the date of execution, and so unsupported by state interests, that it denies the inmate the process he is due in order to raise an Eighth Amendment challenge." *Id.* Considering this precedent, the magistrate judge agreed "with the *Ryan* court that Plaintiffs are entitled to

sufficient notice of changes in Ohio's method of execution to permit them to litigate such changes as threaten their Eighth Amendment rights," *In re Ohio Execution Protocol Litigation*, 2018 WL 1033486 at *24, although it rejected plaintiffs' claim that Ohio's execution protocol was unconstitutional for failing to provide a "firm deadline for any variations on the [p]rotocol," *id.* The district court adopted the magistrate judge's analysis and ruling on this issue. *In re Ohio Execution Protocol Litigation*, 2018 WL 6529145 at *10.

A different federal district court ruled similarly in *Oken*, 321 F. Supp. 2d at 665. There, the court recognized that judicial review of a state's method of execution is only possible with disclosure of the protocol: "Obviously, the fact of court review of the protocols presupposes their production." *Id.* at 664. The court found the right to disclosure of the information was premised on the right of due process:

> Fundamental fairness, if not due process, requires that the execution protocol that will regulate an inmate's death be forwarded to him in prompt and timely fashion. While the Court has located no cases specifically establishing a right of production, it is clear that in innumerable death penalty cases the execution protocols have been examined by courts for their compliance with constitutional requirements. *See, e.g., Nelson*, 124 S. Ct. 2117; *In re Williams*, 359 F.3d 811 (6th Cir. 2004); *Poland v. Stewart*, 117 F.3d 1094 (9th Cir. 1997); *Campbell v. Wood*, 18 F.3d 662 (9th Cir. 1994); *Cooper v. Rimmer*, 2004 WL 231325 (N.D.Cal. 2004), aff'd, 358 F.3d 655; *Cal. First Amendment Coalition v. Woodford*, 2000 WL 33173913 (N.D.Cal. 2000), aff'd, 299 F.3d 868; *Jones v. McAndrew*, 996 F.Supp. 1439 (N.D.Fl. 1998); *LaGrand v. Lewis*, 883 F.Supp. 469 (D.Ariz. 1995). Obviously, the fact of court review of the protocols presupposes their production.
>
> Due process requires nothing less—an opportunity to receive notice of how one's rights will be affected and opportunity to respond and be heard. *Cf. Mullane v. Central Hanover Bank*, 339 U.S. 306, 314 (1950).

*Id.* at 664–65 (footnote and additional citations omitted). The court then ruled that the plaintiff was "entitled to show—or at least to attempt to show—how his rights have been affected by the changes in the Execution Protocol." *Id.* at 665.

The reasoning of the federal district courts in *In Re Ohio Litigation*, *Ryan*, and *Oken* is apposite to the case at hand. If anything, the circumstances presented in Nevada are even more dire because the State has a recent history of approving lethal injection procedures that are experimental, having never before been used in carrying out an execution. The last two execution protocols (both three-drug procedures) approved by signature of the Director of the Nevada Department of Corrections have provided for an unprecedented use of a paralytic agent as the final, killing drug. This presents a dangerous, untried, and untested method of execution, as borne out by the findings made by the only state court to rule on the merits of an Eighth Amendment challenge to the three-drug procedure. *See* Exhibit 7 to Complaint for Injunctive and Declaratory Relief Due to Proposed Method of Execution Pursuant to 42 U.S.C. § 1983 (decision by the Eighth Judicial District Court for the State of Nevada holding that Nevada's proposed use of the paralytic cisatracurium as the third and final drug in conducting a lethal injection execution presented an unconstitutional "substantial risk of serious harm" and "an objectively intolerable risk of harm" under the Eighth Amendment).[3]

///

---

[3] *Rev'd on procedural grounds, Nevada Dep't of Corr. v. Eighth Judicial District Court (Dozier)*, 134 Nev. 1014, 417 P.3d 1117 (2018) (unpublished).

## IV. CONCLUSION

Accordingly, for all of the above reasons, Plaintiff Zane Floyd respectfully requests this Court grant his motion and enter an order requiring Defendants to disclose information on the method of execution intended to be used during the week commencing June 7, 2021.

DATED this 16th day of April, 2021.

                                Respectfully submitted
                                RENE L. VALLADARES
                                Federal Public Defender

                                */s/ David Anthony*
                                DAVID ANTHONY
                                Assistant Federal Public Defender

                                */s/ Brad D. Levenson*
                                BRAD D. LEVENSON
                                Assistant Federal Public Defender

                                */s/ Timothy R. Payne*
                                TIMOTHY R. PAYNE
                                Assistant Federal Public Defender

## CERTIFICATE OF SERVICE

In accordance with LR IC 4-1(c) of the Local Rules of Practice, the undersigned hereby certifies that on the 16th day of April, 2021, a true and correct copy of the foregoing PLAINTIFF'S MOTION FOR DISCLOSURE OF METHOD OF EXECUTION was filed electronically with the CM/ECF electronic filing system and was sent via email, addressed to counsel as follows:

D. Randall Gilmer
Chief Deputy Attorney General
Office of the Nevada Attorney General
Public Safety Division
555 E. Washington Avenue, Suite 3900
Las Vegas, NV 89101
Phone: 702.486.3427
Fax:  702.486.3773
drgilmer@ag.nv.gov

                                                */s/ Sara Jelinek*
                                                An Employee of the Federal Public Defenders Office, District of Nevada