RENE L. VALLADARES
Federal Public Defender
Nevada Bar No. 11479
DAVID ANTHONY
Assistant Federal Public Defender
Nevada Bar No. 7978
david_anthony@fd.org
BRAD D. LEVENSON
Assistant Federal Public Defender
California Bar No. 166073
brad_levenson@fd.org
TIMOTHY R. PAYNE
Assistant Federal Public Defender
Ohio Bar No. 0069329
tim_payne@fd.org
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577
(702) 388-5819 (Fax)

Attorneys for Zane M. Floyd

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

ZANE M. FLOYD,

      Plaintiff,

  v.

CHARLES DANIELS, Director, Nevada
Department of Corrections, et al.,

      Defendants.

Case No. 3:21-cv-00176-RFB-CLB

**MOTION FOR STAY OF EXECUTION**

**(DEATH PENALTY CASE)**

**EXECUTION WARRANT SOUGHT BY THE STATE FOR THE WEEK OF JUNE 7, 2021**

DATED this 21st day of April, 2021.

Respectfully submitted
RENE L. VALLADARES
Federal Public Defender

*/s/ David Anthony*
DAVID ANTHONY
Assistant Federal Public Defender

*/s/ Brad D. Levenson*
BRAD D. LEVENSON
Assistant Federal Public Defender

*/s/ Timothy R. Payne*
TIMOTHY R. PAYNE
Assistant Federal Public Defender

## PLAINTIFF'S APPLICATION
## FOR STAY OF EXECUTION AND BRIEF IN SUPPORT

Plaintiff Zane Floyd respectfully applies to this Court for an Order staying his execution by lethal injection which the State of Nevada seeks to carry out during the week commencing on the 7th day of June, 2021. *See* Ex. 13 (state's motion). Floyd has previously filed a Complaint challenging the constitutionality of Nevada's lethal injection execution protocol and its intent to execute him by sequentially administering midazolam, fentanyl, and cisatracurium. ECF No. 2. This three-drug lethal injection procedure is the manner of execution authorized by Nevada Department of Correction's (NDOC's) Execution Manual, effective June 11, 2018, which, to the best of Floyd's knowledge, represents Nevada's current execution protocol. Along with his Complaint, Floyd also filed a motion for preliminary injunction and temporary restraining order. ECF Nos. 5 and 6.

This Application is being presented to this Court because it is necessary that Floyd's execution be stayed to allow him the opportunity to litigate and appeal, if necessary, his constitutional claims as set forth in his Complaint. In the event the State asserts an intent to utilize a method of execution different than that set forth in the NDOC's June 11, 2018 execution protocol, it is necessary that Floyd's execution be stayed to allow him the opportunity to adequately review, ascertain, and litigate any claims regarding the constitutionality or lawfulness of any new proposed method, *i.e.* "execution protocol," proposed by the State for killing Floyd.

Floyd is aware of various reports in the media suggesting that the Nevada Department of Corrections (NDOC) does not possess the three drugs required under

3

its June 11, 2018 execution protocol for carrying out Floyd's execution. For this reason, Floyd has also filed a Motion for Disclosure of the State of Nevada's Intended Method of Execution. ECF No. 7. As presented in that motion, if the State does plan to use some other method of execution, it has yet to inform Floyd of the most basic information regarding its intentions. Floyd presently has no knowledge, for instance, of what the State's new proposed method of execution would be; whether, if the method is lethal injection, the new protocol calls for use of drugs different than those under the current protocol; if new drugs are to be used, what they are and who manufactured them; if new drugs are to be used, how they are to be administered, and in what sequence and dosages; whether there is a new written execution protocol for the proposed method; whether the new written execution protocol, if any, has been appropriately reviewed, approved by signature, and given an effective date; whether the new execution method was developed in conformance with state law (e.g., whether the NDOC Director properly consulted with the State of Nevada's Chief Medical Officer in selecting the drug or combination of drugs to be used in the execution, *see* Nev. Rev. Stat. § 176.355(2)(b); and whether the new protocol provides for the basic equipment, medical staff, staff training and other necessary safeguards to reasonably ensure a humane and constitutional execution of Floyd.

Furthermore, even were the State to disclose some of this basic information and identify any new drugs to be used in Floyd's lethal injection execution, he should still be entitled to a stay of execution and the opportunity to conduct

4

discovery and present expert testimony at an evidentiary hearing to challenge the change in execution protocol. *See, e.g., Pavatt v. Jones*, 627 F.3d 1336, 1338–40 (10th Cir. 2010); *see also Nelson v. Campbell*, 541 U.S. 637, 639 (2004) (concluding that 42 U.S.C. § 1983 was "an appropriate vehicle for petitioner's Eighth Amendment claim seeking a temporary stay" based on altered execution protocols that could violate constitutional rights).

## I.   LEGAL STANDARD FOR STAY OF EXECUTION

The same factors applicable to injunctive relief apply to a request for a stay of execution. *Hill v. McDonough*, 547 U.S. 573, 584 (2006). Additionally, in considering whether to grant a stay of execution, the Court may also consider whether an inmate has delayed unnecessarily in bringing a claim. *Nelson v. Campbell*, 541 U.S. 637, 649–50 (2004). Granting a stay of execution along with a preliminary injunction is proper. *See Nken v. Holder*, 556 U.S. 418, 428–29 (2009) (distinguishing between a stay, which suspends the source of authority to act and "operates upon the judicial proceeding itself," and an injunction, which prohibits persons from taking any action because it "is directed at someone, and governs that party's conduct").

### A.   Floyd is entitled to a stay of execution.

A stay is warranted when a condemned inmate seeks additional time to raise and litigate his claims beyond what his scheduled execution date allows. *See Martiniano v. Bell*, 454 F.3d 616, 616–17 (6th Cir. 2006). There are four factors this Court must consider when granting a motion for stay of execution. These are: (1) the likelihood Floyd will succeed on the merits; (2) the possibility of irreparable injury

to Floyd if the stay application is not granted; (3) the possibility of injury to other parties; and (4) the public interest. *Bundy v. Wainwright*, 808 F .2d 1410, 1421 (11th Cir. 1987). Moreover, where a plaintiff seeking temporary injunctive relief has adequately established irreparable harm and the balance of hardships weigh in his favor, the probability-of-success requirement is relaxed: "where the 'balance of hardships . . . tips sharply towards the plaintiff,' a plaintiff need only show 'serious questions going to the merits,' rather than likelihood of success on the merits, to warrant preliminary injunctive relief." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)); *see also Villanueva-Bustillos v. Marin*, 370 F. Supp. 3d 1083, 1087 (C.D. Cal. 2018); *Anthony v. Texaco*, 803 F.2d 593 (10th Cir. 1986). These factors favor entry of a stay in Floyd's case.

As to the first factor, Nevada's proposed lethal injection procedure is unconstitutional under the Eighth Amendment. As set forth in detail in his Complaint, the three-drug protocol proposed by Nevada is problematic on several fronts. The first drug to be administered under the protocol is midazolam. There has been an increasing concern in the scientific community that, in the context of government-sponsored executions, midazolam not only fails to adequately anesthetize a condemned inmate so as to render him insensate to pain caused by administration of subsequent drugs, but also produces flash pulmonary edema which in and of itself is painful as well as a burning sensation caused by the acidity of the drug solution.

The second drug to be administered, fentanyl, is known to lack capacity to block awareness in patients even when given in high dosages, and it is highly experimental as a drug used in executions. Because it does not adequately block awareness, use of this drug creates a risk that Floyd could be aware of his need to breathe while he is being suffocated to death, which medical experts describe as a horrific, torturous experience.

The third and final drug to be administered, cisatracurium, is a paralytic drug. Nevada is the only state with a proposed lethal injection procedure calling for a paralytic agent to be the final drug administered; nor has there ever been an execution in the United States in which a paralytic was used as the final, killing drug. Its use in Nevada would thus be wholly experimental. Further, it is recognized that delivery of a paralytic agent to an inadequately anesthetized individual would undoubtedly result in an unconstitutional risk of causing severe pain and suffering. *See Baze v. Rees*, 553 U.S. 35, 53 (2008) ("It is uncontested that, failing a proper dose of sodium thiopental that would render the prisoner unconscious, there is a substantial, constitutionally unacceptable risk of suffocation from the administration of [paralytic agent] pancuronium bromide and pain from the injection of potassium chloride."). Indeed, the only court (state or federal) to hold an evidentiary hearing and address the constitutionality of Nevada's proposed lethal injection method of execution found it to be unconstitutional under the

Eighth Amendment.[1] Floyd establishes a sufficient likelihood of success on the merits.

The second factor, irreparable injury to Floyd, also weighs heavily in favor of a stay. Floyd's execution under the present protocols is certainly irreversible. And that execution, absent this Court's intervention, will cause unconstitutional pain and suffering.

The third factor, the possibility of injury to other parties also weighs in Floyd's favor. While the State will not be able to execute him immediately, they will be able to do so once they establish a constitutional protocol. The delay will not be significant and is very similar to the delays common to the process of execution as capital cases are reviewed. On the other hand, the impending harm to Floyd is extreme.

Further, the fourth factor, the public interest, is similar in this case to the injury factor and both weigh in favor of a stay. Both the public and Floyd have a strong interest in humane executions.

---

[1] The state court found the State's use of a paralytic drug in the execution presented an unconstitutional substantial risk of injury and an objectively intolerable risk of harm in violation of the Eighth Amendment and the corresponding provision of the Nevada Constitution. ECF No. 4-7 at 2-18 (December 2017 Findings of Fact, Conclusions of Law, and Order Enjoining the Nevada Department of Corrections From Using a Paralytic Drug in the Execution of Petitioner). On appeal, the Nevada Supreme Court reversed the district court's order, but only on procedural grounds. *See Nevada Dep't of Corr. v. Eighth Jud. Dist. Ct. in & for Cty. of Clark*, 417 P.3d 1117, 2018 WL 2272873 (Nev. 2018) (unpublished table disposition).

### B. This Court is also authorized to grant a stay under the All Writs Act.

In addition to the Court's power to grant temporary injunctive relief, this Court is empowered to grant the requested stay of execution pursuant to 28 U. S.C. § 1651(a), the All Writs Act, which provides:

> The Supreme Court and all courts established by Acts of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

The "all writs" authority of Section 1651 "extends to potential jurisdiction of a court where an appeal is not then pending but may be later perfected," and is "not confined to the issuance of writs in aid of a jurisdiction already acquired by appeal." *Federal Trade Comm'n v. Dean Foods Co.*, 384 U.S. 597, 603 (1966) (citations omitted); *Harris v. Nelson*, 394 U.S. 286, 299–300 (1969). In *Harris*, the Supreme Court stated:

> [T]he habeas corpus jurisdiction and the duty to exercise it being present, the court may fashion appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage. Where their duties require it, this is the inescapable obligation of the courts. Their authority is expressly confirmed in the All Writs Act, 28 U.S.C. § 1651. This statute had served since its inclusion, in substance, in the original Judiciary Act as a 'legislatively approved source of procedural instruments designed to achieve the rational ends of the law' .... It has been recognized that the courts may rely upon this statute in issuing orders appropriate to assist them in conducting factual inquiries .... In *Price v. Johnson* this court held explicitly that the purpose and function of the All Writs Act is to supply the courts with the instruments needed to perform their duty as prescribed by the Congress and the constitution provided only that such instruments are 'agreeable' to the usages and principles of law, extended to habeas corpus.

*Id.* at 300 (citation omitted).

Thus, this Court is also authorized to entertain this application and grant the emergency stay request under § 1651. The Eleventh Circuit notes that § 1651 "authorizes [a] court to issue a stay to preserve issues for judicial review." *Messer v. Kemp*, 831 F.2d 946, 957 (11th Cir. 1987). That is precisely what Floyd asks this Court to do. This Court will irrevocably lose its jurisdiction to consider the federal claims that entitle Floyd to relief if the State is allowed to execute him before federal review can occur.

Here, the need for a stay to preserve this Court's jurisdiction to orderly review Floyd's claims is particularly compelling. The primary basis for Floyd's requests for judicial relief arose just recently when informed the State had sought entry of a warrant of execution and, presumably to use a similar lethal injection procedure it had sought to use in 2017 in its effort to execute Scott Dozier, which procedure was declared unconstitutional by the only Nevada court to address a constitutional challenge to the protocol on the merits. *See* n.1, *supra*.

Many other courts, including the United States Supreme Court, have used the All Writs Act to grant stay relief. *See Lenhard v. Wolff,* 443 U.S. 1306 (1979); *Republican State Cent. Comm. v. Ripon Soc'y, Inc.*, 409 U.S. 1222 (1972). In *Lenhard*, then Associate Justice Rehnquist, acting on behalf of the whole Court, used the All Writs Act to continue a stay of execution, though he personally would have voted to deny the stay if sitting as a member of the full court. 443 U.S. at 1312. The Supreme Court's All Writs Act cases recognize that:

> [p]rocedural instruments are means for achieving the rational ends of law . . . . Unless appropriately confined by Congress, a federal court may avail itself of all auxiliary

> writs as aids in the performance of its duties, when the use
> of such historic aids is calculated in its sound judgment to
> achieve the ends of justice entrusted to it.

*Adams v. United States ex rel. McCann*, 317 U.S. 269, 273 (1942).

In *F.T.C. v. Dean Foods Co.*, 384 U.S. 597 (1966), the Supreme Court made clear that a federal court may act under the All Writs Act to preserve its future federal jurisdiction over a matter committed to it by statute. In *Dean Foods*, the Court enjoined a company's merger and dissolution to preserve the court's future jurisdiction under the Administrative Procedure Act, which grants the court of appeals original jurisdiction to review final orders of federal administrative agencies. Although this regulatory matter was pending before an administrative agency and no federal court action formally had been initiated, the court of appeals was nevertheless permitted under the All Writs Act to stay the dissolution of the company pending invocation of its jurisdiction under the Administrative Procedure Act. 384 U.S. at 603–05.

In the case of *In Re Application of President and Directors of Georgetown College*, 331 F.2d 1000 (D.C. Cir. 1964), the district court issued an order under the All Writs Act permitting nonconsensual blood transfusions. Recognizing that federal jurisdiction does not depend on a comprehensive initial pleading, the Court explicitly noted and excused defects in the form of the papers filed:

> Though the papers may be irregular in form [counsel had
> appeared in chambers with a proposed order, and filed no
> other papers], in substance they perform the office of a
> complaint, indicating the nature of the matter in dispute,
> the grounds of jurisdiction, and the relief sought. Defects
> in the complaint are not fatal under the Rules, certainly
> where the deficiency is explained by lack of time or skill or
> the like. Even the lack of a complaint is not jurisdictional
> and ... when there has been no timely objection, a valid

judgment may properly be entered in such an informal litigation.

*Id.* at 1001 n.2 (citations omitted).

The jurisdiction-preserving power of the All Writs Act has long been used by the federal courts to stay the executions of state prisoners. The only question the Court must address is whether the state prisoner is potentially eligible for federal relief, regardless of whether the inmate filed a formal petition or validly invoked the Court's jurisdiction to provide final relief. *See, e.g.*, *Edwards v. New York*, 350 U.S. 490 (1956) (Harlan, J. in chambers) (despite "grave doubts, to say the least" as to the presence of a substantial federal question, "this being a capital case I am constrained to give petitioner a reasonable opportunity to petition for a writ of certiorari"); *United States v. Shipp*, 203 U.S. 563, 573 (1906) (Holmes, J.) (even had federal habeas jurisdiction been absent, federal stay of execution was proper, as was contempt prosecution arising from lynching of habeas petitioner during stay; stay was necessary for federal court to determine its own jurisdiction over action).

In *Adderly v. Wainwright*, 58 F.R.D. 389, 401 (M.D. Fla. 1972), the district court relied on the All Writs Act to enter stays of execution of prisoners absent their filing of individual habeas petitions where other prisoners sought to file a class action on their behalf.

In holding that it had authority under the All Writs Act to apply Federal Rule of Civil Procedure 23, by analogy, to a petition for a writ of habeas corpus, the court held that it had been "appropriate, and hence in aid of its habeas corpus

jurisdiction, that a writ issue allowing the petitioners to proceed in accordance with the provisions of Rule 23." 46 F.R.D. at 99.

## II.   CONCLUSION

Accordingly, for all reasons provided above, Plaintiff Zane Floyd respectfully requests this Court stay his scheduled execution.

DATED this 21st day of April, 2021.

Respectfully submitted
RENE L. VALLADARES
Federal Public Defender

*/s/ David Anthony*
DAVID ANTHONY
Assistant Federal Public Defender

*/s/ Brad D. Levenson*
BRAD D. LEVENSON
Assistant Federal Public Defender

*/s/ Timothy R. Payne*
TIMOTHY R. PAYNE
Assistant Federal Public Defender

### CERTIFICATE OF SERVICE

In accordance with the Rules of Civil Procedure, the undersigned hereby certifies that on this 21st day of April, 2021, a true and correct copy of the foregoing PLAINTIFF'S MOTION FOR STAY OF EXECUTION, was filed electronically with the United States District Court. Electronic service of the foregoing document shall be sent via email addressed as follows:

D. Randall Gilmer
Chief Deputy Attorney General
Office of the Nevada Attorney General
Public Safety Division
555 E. Washington Avenue, Suite 3900
Las Vegas, NV 89101
Phone: 702.486.3427
Fax: 702.486.3773
drgilmer@ag.nv.gov

*/s/ Sara Jelinek*
An Employee of the Federal Public
Defenders Office, District of Nevada

14