1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AARON D. FORD
  Attorney General
D. Randall Gilmer (Bar No. 14001)
  Chief Deputy Attorney General
State of Nevada
Office of the Attorney Generals
555 E. Washington Ave., Ste. 3900
Las Vegas, Nevada 89101
Telephone: (702) 486-3427
Facsimile: (702) 486-3773
Email: DGilmer@ag.nv.gov

*Attorneys for Defendants Daniels,*
*Wickham, Gittere, Reubart, Drummond,*
*Minev, Green and Fox (NDOC Defendants)*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ZANE M. FLOYD,

                Plaintiff,

v.

CHARLES DANIELS, DIRECTOR,
NEVADA DEPARTMENT OF
CORRECTIONS, ET AL.,

                Defendants.

Case No. 3:21-cv-00176-RFB-CLB

**NDOC DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER WITH NOTICE AND PRELIMINARY INJUNCTION (ECF NOS. 5, 6)[1]**

        Defendants, Charles Daniels, Harold Wickham, William Gittere, William Reubart, David Drummond, Dr. Michael Minev, Dr. David Green, and Linda Fox (collectively, "NDOC"), by and through counsel, Aaron D. Ford, Attorney General for the State of Nevada, and D. Randall Gilmer, Chief Deputy Attorney General, hereby provide their response in opposition to *Plaintiff's Motion for Temporary Restraining Order with Notice and Preliminary Injunction*[2] (PI Motion).

---

        [1] As a preliminary matter, NDOC reserves the right to challenge the Federal Public Defender's Office representation of Plaintiff Zane Floyd in this 42 U.S.C. § 1983 action. *See* 18 U.S.C. § 3006A (CJA); Guide to Judicial Policy, Vol. 7A, at 5–6 § 210.20.20 (authorizing appointment of counsel in narrow circumstances that do not include civil rights actions under 42 U.S.C. § 1983); Guide at 7–8, § 210.20.50(c) (expressly stating, "[p]risoners bringing civil rights actions under 42 U.S.C. § 1983" are not "[c]ases or proceedings . . . *covered by* or *compensable* under the CJA") (emphasis added).

        [2] ECF Nos. 5, 6. As these documents are identical, NDOC will cite only to ECF No. 5 throughout this Opposition.

I.   **INTRODUCTION**

There is no current execution warrant. There is no current execution order. There is no currently scheduled execution.  There is also no current execution protocol. In addition, NDOC does not have midazolam nor anticipate having the ability to obtain midazolam. Therefore, while the PI Motion requests this Court "stay[] Plaintiff's execution warrant and enjoin[] Defendants or anyone from attempting to implement any aspect of Nevada's execution protocol against him,"[3] there is nothing for this Court to stay or enjoin. Accordingly, the PI Motion must be denied.

II.  **STATEMENT OF FACTS**

A.   **There is No Execution Order or Execution Warrant Issued**

On April 14, 2021,[4] the Clark County District Attorney's Office (CCDA) filed a motion in the originating criminal matter in the Eighth Judicial District Court, State of Nevada (state court), seeking a "Second Supplemental Order of Execution" and a "Second Supplemental Warrant of Execution" (CCDA's Motion).[5]  Without the entry of these legally-required court orders, no execution can take place under Nevada law.[6]

*Neither of these legally required documents have been issued by the state court.*

B.   **Floyd Is Opposing the Entry of Second Supplemental Execution Order and Execution Warrant**

Floyd opposed the CCDA's Motion on April 21, 2021.[7]  In his opposition and multiple counter-motions, Floyd argues that the state court should not issue the execution warrant and order because:

---

[3] ECF No. 5 at 14:7–8.

[4] While the state court docket notes this motion was filed on April 15, 2021, the signature block is dated April 14, 2021. Either way, it is undisputed the motion was filed before or contemporaneously with the various motions Floyd filed in response.

[5] ECF No. 11—1 at 5:21–22.

[6] NEV. REV. STAT. (NRS) 176.495; NRS 176.505; *see also* ECF No. 11–1 at 4:2–5:26.

[7] *See Floyd's Opposition to Motion to Issue Second Supplemental Order of Execution and Second Supplemental Warrant of Execution,* **attached as Exhibit A.  An Amended Opposition was subsequently filed on April 26, 2021.** *See* **Exhibit B**.

- The state court transferred the case to a different department of the court;[8]

- The state court should disqualify the CCDA;[9]

- The state court should decide the state habeas petition before issuing the second supplemental execution order and warrant;[10] and

- The state court should require the Attorney General's Office and/or NDOC, who are not named parties, to participate in the state court proceedings prior to issuing any warrant or order pertaining to the execution.[11]

The state court scheduled a hearing to consider all but the state habeas petition for May 14, 2021.[12]  A status conference in the state habeas case is currently set the same day, with a hearing on the merits of the petition set for June 11, 2021.[13]

Floyd also filed a civil lawsuit in the state court challenging NEV. REV. STAT. (NRS) § 176.355(2)(b) under the Nevada Constitution.[14] NRS 176.355(2)(b) provides that Director Daniels, as director of NDOC, will select "the drug or combinations of drugs to be used for the execution after consultation with Chief Medical Officer" (Dr. Azzam).  As part of that lawsuit, which is currently set to be heard on June 8, 2021, Floyd has also sought a temporary restraining order (TRO) and preli0minary injunction that, if granted, would stay "his execution and enjoin[] Defendants from implementing any aspect of Nevada's execution protocol against him."[15]   Floyd also amended his motion in opposition to the

---

[8] **Ex. B at 2;** *See also Motion to Transfer Case Under EDCR 1.60(H),* **attached as Exhibit C**.

[9] **Ex. B at 2;** *see also Motion to Disqualify Clark County District Attorney's Office,* **attached as Exhibit D**.

[10] **Ex. B at 2–3;** *see also Petition for Habeas Corpus,* **attached as Exhibit E**.

[11] **Ex. B at 3:4–9.**

[12] **State Court Docket, Case No. 99-C-159897, attached as Exhibit F.**

[13] **State Court Docket, Case No. A-21-832952-W, attached as Exhibit G**.

[14] **State Court Docket, Case No. A-21-833086-C, attached as Exhibit I.**

[15] ***Plaintiff's Motion for Temporary Restraining Order with Notice of Preliminary Injunction,* attached as Exhibit H;** *see also* **Ex. I.**

CCDA's Motion in his state criminal case for a new execution warrant and order based on this lawsuit, specifically arguing to the state court that the constitutional challenge "warrants deferring consideration of the State's motion" seeking the execution warrant and execution order.[16]

### C.     There Is No Finalized Execution Protocol

As of the date of this filing, NDOC has not finalized an updated execution protocol should the state court order NDOC to complete the gravest of possible sentences. While NDOC is committed to full transparency regarding "the drug or combination of drugs,"[17] until it finalizes a protocol, it is premature for NDOC to state what drug or drugs will be a part of the final execution protocol.[18]

### D.     NDOC Does Not Have Access to Midazolam

While NDOC has not yet concluded what drug or drugs will comprise the lethal injection cocktail, NDOC represents that, as of the date of this response, there are no plans for the final execution protocol to contain midazolam as that drug is not available to NDOC.[19] The inability to obtain midazolam means that until the execution protocol is revised and finalized, "Nevada presently has no execution protocol that it could apply to Floyd."[20]

## III.   LEGAL STANDARD

### A.     General Injunctive Relief Standard

Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right."[21] Courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."[22]

---

[16] **Ex. B at 3:11–12.**

[17] NRS 176.355(2)(b).

[18] **Declaration of Director Daniels at 2, ¶ 7, attached as Exhibit J**.

[19] *Id*. at 3, **¶¶ 9-11**.

[20] *Floyd v. Filson*, 949 F.3d 1128, 1162 (9th Cir.), *cert denied sub nom. Floyd v. Gittere*, 141 S. Ct. 660 (2020); *see also* **Ex. J. at 2-3, ¶¶ 8, 11-13.**

[21] *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24 (2008).

[22] *Amoco Prod. Co. v. Vill. of Gambell, AK,* 480 U.S. 531, 542 (1987).

1   "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on
2   the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief,
3   that the balance of the equities tips in his favor, and that an injunction is in the public
4   interest."[23]

5       **B.    PLRA Restrictions on Injunctive Relief**

6       In addition, under the Prison Litigation Reform Act (PLRA), a preliminary
7   injunction

> must be narrowly drawn, extend no further than necessary to
> correct the harm the court finds requires preliminary relief, and
> be the least intrusive means necessary to correct that harm. *The*
> *court shall give substantial weight to any adverse impact on*
> public safety or *the operation of a criminal justice system caused*
> *by the preliminary relief.* [18 U.S.C. § 3626(a)(2)(emphasis
> added).]

12   A preliminary injunction "may not 'attempt to "micro manage"' prison administration
13   or order relief that would 'require for its enforcement the continuous supervision by the federal
14   court over the conduct of' NDOC officials."[24] Indeed, the Ninth Circuit has recognized that
15   "Congress has warned that federal courts *should rarely issue equitable relief in prison*
16   *condition cases*, and the Supreme Court has often emphasized the same."[25] Therefore, the
17   PLRA "operates simultaneously to restrict the equity jurisdiction of federal courts and to
18   protect the bargaining power of prison administrators—no longer may courts grant or
19   approve relief that binds prison administrators to do more than the constitutional
20   minimum."[26]

---

[23] *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

[24] *Armstrong v. Brown*, 768 F.3d 975, 983-84 (9th Cir. 2014) (internal citations omitted).

[25] *Peralta v. Dillard*, 744 F.3d 1076, 1099 (9th Cir. 2014) (Hurwitz, J., dissenting in part and concurring in part) (citing 18 U.S.C. § 3626(a)(1)(A); *Farmer v. Brennan*, 511 U.S. 825, 846–47 (1994); *Turner v. Safley*, 482 U.S. 78, 84–85 (1987); *Bell v. Wolfish*, 441 U.S. 520, 562 (1979); *Procunier v. Martinez*, 416 U.S. 396, 404 (1974)) (emphasis added).

[26] *Gilmore v. California*, 220 F.3d 987, 999 (9th Cir. 2000).

### C.   Floyd's Potential Execution Does Not Change These Requirements

While Floyd is seeking the TRO in an attempt to stave off his yet to be scheduled execution date (as there is yet no execution warrant or ordered issued), the Supreme Court has held that a prisoner's 42 U.S.C. § 1983 execution protocol challenge does not mean that an injunction is a matter of right. In other words, Floyd's pending "§ 1983 claim does not warrant [in itself] the entry of a stay as a matter of right."[27] Thus, even though Floyd seeks this injunction in the context of a potential—but not scheduled—execution, this Court must not only follow the *Winter* test before providing the extraordinary remedy of injunctive relief, but also must "give substantial weight to any adverse impact on . . . the operation of criminal justice system caused by the relief."[28]

## IV.   SUMMARY AS TO WHY THIS COURT MUST DENY THE PI MOTION

The PI Motion fails for at least four separate and distinct reasons.  First, it fails because there is no current execution warrant or execution order to enjoin or stay. The premature nature of Floyd's request means there is no live case or controversy before this Court. Second, Floyd seeks an injunction to preclude NDOC from using an execution protocol that NDOC cannot use as it does not have the present—nor does it anticipate any future—ability to obtain midazolam. Thus, just as the lack of any present execution warrant or execution order makes this case speculative, so too does the lack of a current execution protocol. Third, despite Floyd's attempt to claim no exhaustion is necessary, binding case law requires exhaustion of administrative remedies. And finally, Floyd cannot establish that the *Winter* factors weigh in favor of issuing an injunction to stop a non-scheduled execution from occurring with an execution protocol NDOC affirmatively states will not be used.

---

[27] *Nelson v. Campbell*, 541 U.S. 637, 649 (2004).
[28] *Id*. at 650 (citing 18 U.S.C. § 3626(a)(1),(2)).

1    **V.    ANALYSIS AS TO WHY PI MOTION MUST BE DENIED**

2        **A.    There Is No Current Case or Controversy for This Court to Consider**

3        As noted above, at the present time there is neither an execution order nor execution

4    warrant. Nor is there a finalized execution protocol—and whatever finalized protocol

5    prepared by NDOC will not include midazolam. These undisputed facts make it clear as a

6    matter of law that Floyd has yet to establish an actual case or controversy before this Court

7    in general, let alone one that requires this Court to take the extraordinary step of enjoining

8    hypothetical orders and protocols.

9        "Article III of the United States Constitution limits the jurisdiction of the federal

10   court to 'Cases' and 'Controversies.'"[29] Three mandatory elements must be present for

11   jurisdiction to vest:

12            The case or controversy requirement, which constitutes "the
             irreducible constitutional minimum of standing," requires that a
13            plaintiff show "(1) it has suffered an 'injury in fact' that is (a)
             concrete and particularized and (b) actual or imminent, not
14            conjectural or hypothetical; (2) the injury is fairly traceable to the
             challenged action of the defendant; and (3) it is likely, as opposed
15            to merely speculative, that the injury will be redressed by a
             favorable decision.[30]
16

17       Presently, Floyd cannot show that he "suffered an 'injury in fact'" and therefore he

18   cannot meet the first element.  The lack of a current injury in fact is clear on the face of

19   both the Complaint and the PI Motion. Specifically, the Complaint notes only that the

20   CCDA "seeks to execute [Floyd] during the week commencing on the 7th day of June,

21   2021."[31]  In response to the CCDA's Motion, Floyd filed the following: (1) an opposition; (2)

22   an amended opposition; (3) a motion challenging the transfer of the case to a different

23   department; (4) a motion to disqualify the CCDA; (5) a separate state habeas petition; and

24   (6) a civil lawsuit challenging the constitutionality of NRS 176.355(2)(b), which also

25

26       [29] *Bayer v. Neiman March Group, Inc.*, 861 F.3d 853, 861 (9th Cir. 2017) (citing U.S.
     Const. art. III, § 2, cl. 1).

27       [30] *Id*. at 861–62 (internal citation omitted).

28       [31] ECF No. 2 at 6:11–12, ¶ 2; see also *Id*. at 1 (cover page noting "Execution Warrant
     *Sought*," not obtained or issued) (emphasis added).

requests a TRO and preliminary injunction enjoining the execution.[32]  Floyd also concludes his opposition to the CCDA's Motion with a plea that the state court "defer consideration of the [CCDA's] motion until this matter is assigned to the correct court, litigated by the appropriate representative of the State, and Mr. Floyd has had the opportunity to litigate his pending state petition."[33]

The state court scheduled a hearing on the CCDA's Motion and Floyd's motions to transfer and disqualify for May 14, 2021.[34] The court also scheduled a status conference on the state habeas petition on the same date.[35]

With the multiple pending motions and civil lawsuit in state court, it is impossible for Floyd to claim he is presently suffering a "concrete and particularized" injury that this Court can address. Simply put, there is not an "actual or imminent" execution Floyd is facing unless and until the state court issues an execution warrant and execution order *and* fails to stay the enforcement of those legally required documents.

Couple this with the additional undisputed fact that NDOC does not currently have a finalized execution protocol and does not anticipate using midazolam in the final protocol, Floyd's arguments as to the use of midazolam in the execution protocol—as well as the rest of the protocol—are nothing more than speculation, conjecture, and hypothetical.

The Ninth Circuit telegraphed the unripe nature of Floyd's plea in his federal habeas appeal. There, the court stated the following with regard to the Floyd's protocol challenge:

> Floyd's uncertified challenge to Nevada's lethal injection protocol—a three-drug sequence of the anesthetic midazolam, the opioid fentanyl, and the paralytic cisatracurium—is not yet ripe. In 2018, the manufacturer of Nevada's supply of midazolam brought an action to enjoin its product's use in executions. The manufacturer won, obtaining a preliminary injunction, *Alvogen v. Nevada*, No. A-18-777312-B (Nev. Dist. Ct. Sept. 28, 2018), which is currently on appeal to the Nevada Supreme Court. *See State v. Alvogen, Inc.*, Nos. 77100, 77365, 2019 WL 5390459 (Nev. 2019). **As a result, for all practical purposes, Nevada presently has no execution protocol that it could apply to Floyd.** A

---

[32] *See* Exs. A, B, C, D, E, F.

[33] **Ex. B at 18:5–8.**

[34] Ex. F at 23.

[35] Ex. G at 2.

method-of-execution challenge is not ripe when the respondent state has no protocol that can be implemented at the time of the challenge. *See Payton v. Cullen*, 658 F.3d 890, 893 (9th Cir. 2011) (claim unripe because no protocol in place following state court invalidation of existing protocol). **We cannot determine what drugs Nevada might attempt to use to execute Floyd, and we cannot adjudicate the constitutionality of an unknown protocol. Floyd's claim is therefore unripe for federal review because "the injury is speculative and may never occur**." *Portman v. County of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993) (citation omitted).[36]

Nothing has changed since the Ninth Circuit's decision: NDOC still does not have midazolam; NDOC does not have a realistic belief that it can or will obtain midazolam; and NDOC is in the process of revising its execution protocol.  Accordingly, as noted by the Ninth Circuit in Floyd's habeas case, since there is no protocol to examine, "Floyd's claim is [] unripe for federal review because the injury is speculative."[37]

The District of Arizona also noted the premature nature of a First Amendment challenge to the protocol that was not yet final. In *Guardian News & Media LLC v. Ryan*, the court denied the First Amendment challenge in part because "there [was] presently no sufficient factual basis for the Court to conclude that the state's procedures for disclosing information about compounded chemicals violates the First Amendment."[38] The court then concluded, relying on Supreme Court precedent set forth in *A.L. Mechling Barge Lines, Inc., v. United States*,[39] that it "would be, at best, premature for the Court to rule that the state policy in this respect is unconstitutional."[40]  Or, as stated in *A.L. Mechling*, "sound discretion" requires "withhold[ing] the remedy [requested] where it appears that a challenged [protocol] is, at the moment of adjudication . . . undergoing significant modification so that its ultimate form cannot confidently be predicted."[41]

---

[36] *Floyd v. Filson*, 949 F.3d 1128, 1152 (9th Cir.), *cert. denied sub nom. Floyd v. Gittere*, 141 S. Ct. 660, 208 L. Ed. 2d 271 (2020) (emphasis added).

[37] *Id*. at 1152.

[38] 225 F. Supp. 3d 859, 873 (D. Ariz. 2016).

[39] 368 U.S. 324 (1961).

[40] *Guardian News*, 225 F. Supp. 3d at 873.

[41] 225 F. Supp. 3d at 859 (citing *A.L. Mechling*, 3368 U.S. at 342).

1
2
3
4
5
6
7

The same is true here. NDOC has not finalized the execution protocol. At a minimum, it is known that midazolam is not expected to be in the protocol as it is unavailable for purchase. Clearly the removal of midazolam from the protocol will be a "significant modification." And given Floyd's statements in the Complaint setting forth a potential alternative drug combination,[42] until the NDOC completes the protocol, and the drugs known, it remains to be seen whether Floyd will continue his challenge to the protocol.

8
9
10
11
12
13
14

This Court should deny the PI Motion given the lack of any current case or controversy. Floyd is free to file again once his potential injury becomes concrete. That will not occur unless and until the state court issues the requested execution warrant and execution order without any stay to its enforcement and until such time as NDOC finalizes the execution protocol—a protocol that NDOC will provide to Floyd and his counsel (subject to minimal redactions that do not include the drug or combination or drugs) immediately once finalized.

15

### B.   Floyd Did Not Attempt to Exhaust His Administrative Remedies

16
17
18
19
20
21
22

Prisoners are required to exhaust all available administrative remedies before bringing a § 1983 claim based on conditions of confinement.[43] This requires a prisoner to comply with all prison timelines "and other critical procedural rules."[44] The Supreme Court has made clear that proper exhaustion is mandatory.[45] Courts "may not excuse a failure to exhaust, even to take [special] circumstances into account."[46] The Supreme Court has rejected "every attempt to deviate" from the "textual mandate" contained in the PLRA.[47] This strict adherence is required since the exhaustion requirement is statutory.[48] "An

23
24
25
26
27
28

---

[42] *See* ECF No. 2 at 47-53.

[43] *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, __ (9th Cir. 2021) (citing 42 U.S.C. § 1997(e)(a))(pinpoint cites not available).

[44] *Merchant, supra* (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).

[45] *Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1856 (2016).

[46] *Id.* at 1857 (citing *Miller v. French*, 530 U.S. 327, 337 (2000)).

[47] *Id.*

[48] *Id.*

inmate raised a § 1983 method-of-execution action is not excused from this exhaustion prerequisite."[49] Finally, at least two Circuits have noted the importance of addressing the exhaustion issue even at the preliminary injunction stage.[50]

The Court should also deny the PI Motion due to Floyd's failure to exhaust his administrative remedies. Indeed, Floyd concedes he did not attempt to grieve the issue, arguing instead that exhaustion "is not necessary because this action does not challenge prison conditions and because there are no available administrative remedies" available.[51] Floyd also claims that because "Daniels and Gittere, have the discretion to change the Execution Protocol at any time—even after providing notice as to certain aspects—any attempt to grieve would be futile."[52]

While Floyd is correct that, at the present time, he cannot grieve the execution protocol, he is correct for the wrong reasons. He cannot do so because, as stated above, there is no current execution protocol to challenge, either by administrative grievance (as required by the PLRA) or before this Court. That undisputed fact does not change the mandatory exhaustion requirement once the NDOC finalizes the execution protocol.

Floyd is incorrect that he is excused from doing so based on his statement that he is not "challeng[ing] prison conditions and because there are no available administrative remedies capable of address the violations of federal law challenged in this pleading."[53] Addressing the latter part of this statement first, *e.g.*, "no available administrative remedies capable of addressing the" alleged violations, that argument could be made in literally every § 1983 claim. Such claims are premised on the violations of constitutional

---

[49] *Brant v. Reddish*, No. 3:13-cv-412-J-34MCR, 2019 WL 4600366, * 7 (M.D. Fl. Sept. 23, 2019) (citing *Hill v. McDonough*, 547 U.S. 573, 579–80 (2006); *Nelson*, 541 U.S. at 650; *Blankenship v. Owens*, No. 1:11-cv-42-TCB, 2011 WL 610967, at * 5 (N.D. ga. Feb. 15, 2011)).

[50] *Swain v. Junior*, 958 F.3d 1081, 1091–92 (11th Cir. 2020); *Valentine v. Collier*, 956 F.3d 797, 804 (5th Cir. 2020).

[51] ECF No. 2, at 2:2–4, ¶ 20.

[52] *Id.* at 2:5–7.

[53] *Id.* at ¶ 20.

rights. Yet, the PLRA still requires inmates to exhaust the grievance process.[54] It is not enough to allege that the grievance process cannot "address the violations of federal law challenged in this pleading." To be sure, while NDOC disputes that the final execution protocol would in any way violate the Constitution, Floyd could certainly attempt to moot any federal challenge by agreeing to the final execution protocol or, possibly, by providing the alternative lethal injection he raises in the Complaint to Daniels for consideration as part of the final execution protocol.

In this regard, Floyd identified what he considered to be a suitable alternative method of execution "by a two-drug lethal injection procedure using a barbiturate as the second drug"[55]  While NDOC does not suggest that it decided on a two-drug protocol, or what particular drug(s) or class of drug(s) will be part of the protocol, Floyd's willingness to put forth a potential alternative demonstrates the very reason why courts require administrative procedures to be exhausted.  Thus, not only is this a failure to exhaust issue, but it also reiterates the fact that there is not currently a case or controversy for this Court to decide.

Further, as a matter of law, Floyd is incorrect in asserting that because this is not a conditions of confinement case, the PLRA exhaustion requirements do not apply. "[C]laims challenging the method of execution are 'suits filed by prisoners' about 'prison conditions,' that require exhaustion of prison administrative remedies *prior to filing a complaint in the federal district court*."[56] Accordingly, a prisoner's Eighth and Fourteenth Amendment claims challenging method of execution do not excuse the mandatory PLRA exhaustion requirement.[57]

---

[54] *Ross*, 136 S. Ct. at 1857 (*citing Woodford*, 548 U.S. at 91 n. 2) (noting the Court "turned aside a requested exception for constitutional claims").

[55] *Id*. at 47 at 20–21, ¶ 26. NDOC notes, however, that Floyd stated this alternative "solely for the purposes of [the] Complaint, and because the Supreme Court has made it a prerequisite to a successful Eighth Amendment method-of-execution challenge." *Id.*

[56] *See, e.g.*, *Creech v. Reinke*, No. 1:12-cv-00173-EJL, 2012 WL 1995085, at *11–12 (D. Idaho, June 4, 2012) (emphasis added).

[57] *Creech*, 2012 WL 1995085, at *12.

**C.   Floyd Cannot Establish the Extraordinary Need for An Injunction**

This Court must also deny the PI Motion due to Floyd's inability to establish the extraordinary need for an injunction. NDOC will address each of the four *Winter* factors in turn to articulate why, in addition to the reasons set forth above in Section V(A) and (B), the PI Motion fails.

**1.   Floyd is not Likely to Succeed on the Merits**

Floyd implicitly acknowledges that he is unlikely to succeed on the merits by relegating the argument on this prong to last and attempting to change the requirement from "likely to succeed" to one of having a "fair chance of success on the merits."[58] *Even if* the "fair chance of success on the merits" were the appropriate standard, Floyd still cannot meet even this lesser burden.

At the risk of redundancy, there is no current execution warrant, order, or protocol. In addition, there is no plan to use midazolam in the final execution protocol. Without any of these things, Floyd cannot prevail on his assertion that he will "be subjected to cruel and unusual punishment in the form of torture or unnecessary conscious physical suffering, or both, during the course of his execution."[59]

Floyd cannot prevail because this argument assumes a valid execution warrant and execution order and the drugs NDOC will purportedly use in its execution protocol. One of those drugs—midazolam—will not be in the protocol. Another one of the drugs from the previous protocol—fentanyl—if included in the final execution protocol, may not be objectionable to Floyd given that it is listed in his alternative two-drug alternative cocktail.[60]

---

[58] ECF No. 5 at 12:17–19 (citing *Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 753 (9th Cir. 1982)).

[59] ECF No. 5 at 13:7–10.

[60] ECF No. 2 at 50 at 18–20, ¶ 50.

Further, even assuming NDOC does not use Floyd's suggested two-drug cocktail,[61] and that it is a known and readily available alternative to the not-yet-finalized execution protocol, without knowing what the final protocol will consist of, it is impossible for Floyd to establish that his alternative cocktail would "significantly reduce[] a substantial risk of severe pain"[62] over the execution protocol that NDOC implements.   Floyd's proposed alternative must be more than "a slight or marginally safer alternative."[63]

Without knowing the final combination of medications used to carry out any court-ordered execution, Floyd simply cannot meet these necessary requirements as the Supreme Court mandated in *Glossip*.   Similarly, he cannot establish or make a prima facie showing that an unknown execution protocol is "sure or very likely to cause serious illness and needless suffering and give[s] rise to 'sufficiently imminent dangers.'"[64] This is true even if the final execution protocol contains a paralytic, whether it be cisatracuriam (as used in Nebraska's August 2018 execution)[65] or another paralytic. The Supreme Court has categorically held that the use of paralytics in execution protocols "does not offend the Eighth Amendment" because States "ha[ve] an interest in preserving the dignity of the procedure."[66]

### 2.    Floyd is not Likely to Suffer Irreparable Harm

Floyd concedes he must establish that the harm he seeks to prevent is both likely and irreparable.[67] However, he cannot show either. This is because, while NDOC certainly admits that death is irreparable, the harm Floyd must show here is something other than

---

[61] NDOC can definitively state it will not use a firing squad, as that is not a readily available alternative given that NRS 176.355 requires the NDOC carry out all executions by lethal injection.

[62] *Glossip v. Gross*, 576 U.S. 863, 878 (2015).

[63] *Id*. (quoting *Baze v. Rees*, 553 U.S. 35, 47 (2008)).

[64] *Id*. at 875 (quoting *Baze*, 553 U.S. at 50).

[65] *See, e.g.*, *Nebraska first in US to use opioid fentanyl in execution*, https://www.bbc.com/news/world-us-canada-45185687, last accessed April 27, 2021 (noting the drugs used included "cisatracurium besylate, a muscle paralytic").

[66] *Baze*, 553 U.S. at 57.

[67] ECF No. 5 at 7:2–4.

death, as he concedes, as he must, that the execution can proceed under his desired protocols. Instead, the harm here is a legal harm, which would be a death brought about in violation of the Eighth Amendment prohibition against cruel and unusual punishment.

Floyd has again put the cart before the horse as there is no current execution warrant or execution order, let alone an execution protocol to challenge as cruel and usual. Floyd admits as much as the entirety of his irreparable harm argument consists of challenging the "new, and untested 3-drug injection procedure," specifically objecting to the proposed use of midazolam,[68] which will not be in final execution protocol given NDOC's inability to obtain the medication.

As succinctly stated in *Creech*: "Because [Floyd's] sentence of death is not at issue, to show irreparable harm . . . [Floyd] must demonstrate that there is a substantial risk that he will suffer serious pain during the execution."[69] For the reasons stated above, Floyd has not and cannot establish this substantial risk.

### 3.     The Balance of Equities Do Not Tip in Floyd's Favor

The Supreme Court has made clear that, "absent actual evidence showing something more than speculative harm, the law does not permit a federal district court to enjoin a scheduled state execution."[70] Floyd concedes "the State of Nevada has an interest in seeing finality in its criminal prosecutions by imposing the sentence of death."[71] NDOC agrees. However, at this time, there is no execution warrant, execution order, or execution protocol for Floyd to challenge. Should the state court issue the execution warrant and order, then Floyd is correct that the State of Nevada has a compelling interest in carrying out the legally-imposed death sentence. Until such time as NDOC completes the final execution protocol and Floyd has a colorable basis to believe NDOC will attempt to proceed with a constitutionally infirm execution protocol, the State's interest is the only recognizable

---

[68] *See Id*. at 8:12–18.

[69] *Creech*, 2012 WL 1995085, at *25.

[70] *Creech*, 2012 WL 1995085, at * 25 (citing *Brewer v. Landrigan*, 562 U.S. 996 (2010).

[71] ECF No. 5 at 9:8–10.

interest before this Court. Without an execution protocol, there are currently no equities to balance as Floyd cannot show something more than speculative harm.

### 4.    The Injunction is not in the Public Interest

Floyd does not attempt to argue the injunction would be in the public interest. Instead, he claims that it would not be *"[a]dverse* to the public interest."[72] This conflates the standard. The *Winter* test does not instruct the courts to determine whether an injunction would be adverse to the public interest. Instead, it demands that a court affirmatively find that an injunction is in the public interest.[73]

Here, assuming the state court issues the execution warrant and order, the State of Nevada has a compelling public interest in finally carrying out the jury verdict in this case. In addition, the State of Nevada has ensured that the public's interest in checking the veracity of that jury verdict by providing Floyd with multiple avenues to challenge both his conviction and death sentence. These legal remedies under both state and federal law continue to this day. As noted, Floyd is currently challenging the CCDA's request to the state court to issue the execution warrant and execution order. He also continues to seek federal habeas relief.[74]

Although NDOC readily acknowledges that the public interest supports ensuring that the jury's death sentence be carried out constitutionally, Floyd cannot establish that NDOC seeks to carry out the jury verdict in a constitutionally infirm manner. Rather, NDOC cannot proceed without the state court issuing a valid execution warrant and order. NDOC will finalize the execution protocol to ensure the competent and constitutional implementation of the jury's verdict, execution order, and execution warrant. Once NDOC finalizes the execution protocol, NDOC will—save for necessary safety and security considerations—provide that protocol to Floyd and the public.

---

[72] ECF No. 5 at 10:15 (emphasis added).

[73] *Winter*, 555 U.S. at 20; *see also Am. Trucking Assocs.*, 559 F.3d at 1052 ("To the extent that are cases have suggested a lesser standard, they are no longer controlling, or even viable.").

[74] Case No. 2:06-cv-0047-RFB-CWH.

At that time, Floyd can determine whether there is a viable constitutional challenge to the new execution protocol. But as of now, there is no public interest in issuing an injunction to preclude NDOC from using an execution protocol it does not intend to use.

## VI.   CONCLUSION

Because there is no current execution warrant, order or protocol, Floyd cannot show a live case or controversy.  Once NDOC finalizes an execution protocol, Floyd must exhaust his administrative remedies for that protocol before hailing NDOC into court to challenge its constitutionality. Floyd also cannot establish that any of the four mandatory injunction factors favor the issuance of an injunction in this case.  Simply put, there is nothing for this Court to enjoin.

Accordingly, NDOC respectfully states that Floyd cannot establish the high burden of the extraordinary remedy of injunctive relief. Consequently, this Court should deny the PI Motion.

Respectfully submitted April 30, 2021.

AARON D. FORD
Attorney General

By:   /s/ D. Randall Gilmer
      D. Randall Gilmer (Bar No. 14001)
      Chief Deputy Attorney General
      *Attorneys for Defendants*

**INDEX OF EXHIBITS**

| Exhibit | Title | Pages |
|---------|-------|-------|
| A | Opposition to Motion for the Court to Issue Second Supplemental Order of Execution and Second Supplemental Warrant of Execution filed on 4/21/21 (99C159897) | 18 |
| B | Amended Opposition to Motion for the Court to Issue Second Supplemental Order of Execution and Second Supplemental Warrant of Execution filed on 4/26/21 (99C159897) | 20 |
| C | Motion to Transfer Case Under EDCR 14.60(h) filed 4/14/21 (99C159897) | 10 |
| D | Motion to Disqualify Clark County District Attorney's Office filed 4/14/21 (99C159897) | 16 |
| E | Petition for Writ for Habeas Corpus (Post-Conviction) filed 4/15/21 (A-21-832952-W) | 48 |
| F | Docket for 99C159897 (excerpts) | 4 |
| G | Docket for A-21-832952-W | 3 |
| H | Plaintiff's Motion for Temporary Restraining Order with Notice and Preliminary Injunction filed 4/16/21 (A-21-833086-C) | 15 |
| I | Docket for A-21-833086-C | 2 |
| J | Declaration of Charles Daniels, Director of the Nevada Department of Corrections | 5 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the State of Nevada, Office of the Attorney General, and that on April 30, 2021, I electronically filed the foregoing **NDOC DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER WITH NOTICE AND PRELIMINARY INJUNCTION (ECF NOS. 5, 6)** via this Court's electronic filing system.  Parties who are registered with this Court's electronic filing system will be served electronically.

/s/ Natasha D. Petty
An employee of the
Office of the Nevada Attorney General