AARON D. FORD
  Attorney General
D. Randall Gilmer (Bar No. 14001)
  Chief Deputy Attorney General
State of Nevada
Office of the Attorney Generals
555 E. Washington Ave., Ste. 3900
Las Vegas, Nevada 89101
Telephone: (702) 486-3427
Facsimile:  (702) 486-3773
Email: DGilmer@ag.nv.gov

*Attorneys for Defendants Daniels,
Wickham, Gittere, Reubart, Drummond,
Minev, Green and Fox (NDOC Defendants)*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ZANE M. FLOYD,<br><br>                Plaintiff,<br><br>v.<br><br>CHARLES DANIELS, DIRECTOR, NEVADA DEPARTMENT OF CORRECTIONS, ET AL.,<br><br>                Defendants. | Case No. 3:21-cv-00176-RFB-CLB<br><br>**NDOC DEFENDANTS' MOTION FOR PROTECTIVE ORDER PERTAINING TO THE TESTIMONY OF DIRECTOR DANIELS AS WELL AS ANY DISCOVERY FROM HIM OR OTHERS SEEKING THE SAME INFORMATION**<br><br>**\* RULING RESPECTFULLY REQUESETED BEFORE EVIDENTIARY HEARING** |

Defendants, Charles Daniels, Harold Wickham, William Gittere, William Reubart, David Drummond, Dr. Michael Minev, Dr. David Green, and Linda Fox (collectively, "NDOC"), by and through counsel, Aaron D. Ford, Attorney General for the State of Nevada, and D. Randall Gilmer, Chief Deputy Attorney General, hereby bring the instant motion seeking a protective order as it pertains to the anticipated questioning of Director Daniels at the evidentiary hearing scheduled for May 5, 2021, as well as any similar information Plaintiff Zane Floyd (Floyd) may seek through discovery or testimony of any other NDOC official or employee.

## I.     Introduction and Summary of Why A Protective Order Is Necessary

Government officials must be able to have frank, candid conversations. Such consultations ensure government officials receive blunt information—whether facts or opinion—needed to formulate and finalize policy.

Nevada recognizes the need for the NDOC Director to obtain crucial information regarding medications and how those medications will react in a lethal injection protocol from the Chief Medical Officer who—because of education and training—can provide the NDOC Director with necessary and crucial information to consider in finalizing the execution protocol. This consultation benefits the public.

However, providing information as to what was discussed to arrive at the final execution protocol does not benefit the public. Indeed, given copycats and cancel culture, sharing information not relevant to the final execution protocol—including what drugs may or may not have been considered—would harm the public. This is the very essence of the deliberative process privilege, and the Court must issue a protective order to protect it.

Floyd has also informed NDOC Defendants that he desires the identity of the manufacturers of the drug(s) to be used in a final execution protocol. A protective order is necessary to protect the identity of these manufacturers as well. Providing these names in the public domain serves only one purpose—to allow opponents of the death penalty to use the information to place pressure on those manufacturers to not provide such products to correctional institutions. This harms the public by taking medications out of circulation.

To the extent the Court finds the manufacturers' identities are relevant, NDOC Defendants can provide the information to Floyd confidentially. This will ensure that Floyd has the information for whatever litigation purpose he believes it serves, while at the same time protecting the public and manufacturers from the media sideshow.

NDOC is committed to providing the execution protocol to Floyd once finalized. The protocol will include the drug(s) that will be used to carry out the constitutional sentence. Evading the deliberative process has no bearing on that ultimate question.

## II. Statement of Facts

Director Daniels is the Chief Administrative and Fiscal Officer of the NDOC based on his "training, experience and aptitude in the field of corrections."[1] As NDOC Director, Director Daniels must "enforc[e] all laws governing the administration of [NDOC] and the custody, care, and training of offenders."[2] One of those duties is ensuring that NDOC carries out executions in a matter consistent with state laws and state and federal constitutional requirements. Under Nevada law, in cases where a jury has imposed a death sentence, it shall be by lethal injection, and the Director shall "[s]elect the drug or combination of drugs to be used for the execution after consulting with the Chief Medical Officer."[3]

The plain language of this statute makes clear that consultation occurs before any decisions on the "drug or combination of drugs" is made. However, nothing in the statute precludes Director Daniels from seeking advice and consultation from other individuals with appropriate education and experience before making the decision in his sole discretion.

## III. Legal Standard for Protective Order

Unless otherwise limited by court order, the Federal Rules of Civil Procedure allow discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[4] The Rules require the court to "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that … the proposed discovery is outside the scope permitted by Rule 26(b)(1)."[5] Upon a showing of good cause, the court may enter a protective order shielding "a party or person from annoyance, embarrassment, oppression, or undue burden or expense," and

---

[1] NEV. REV. STAT. (NRS) 209.101.
[2] NRS 209.131.
[3] NRS 176.355(1), (2)(b).
[4] FED. R. CIV. P. (FRCP) 26(b)(1). All references to a "Rule" or "Rules" in this Motion refer to the Federal Rules of Civil Procedure unless otherwise stated.
[5] FRCP 26(b)(2)(C)(iii).

may include "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."[6]

## IV. ARGUMENT

### A. The Deliberative Process Privileges Requires a Protective Order

Nevada law requires Director Daniels to consult with the State's Chief Medical Officer (CMO) prior to finalizing the "drug or combination of drugs" Director Daniels, in his discretion, chooses to be part of the lethal injection cocktail. Because this consultation is required before the decision is made, it clearly is pre-decision and protected from disclosure under the deliberative process privilege.

The deliberative process privilege not only "permits the government to withhold documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated,"[7] it also protects government officials from being asked questions regarding the deliberative process undergone to arrive at a final policy decision.[8]

The privilege was "developed to promote frank and independent discussion among those responsible for making governmental decisions, ... and also to protect against premature disclosure of proposed agency policies or decisions."[9] The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news."[10]

Death penalty and execution protocols clearly require such candid conversations. Public policy demands those conversations and decisions be protected from disclosure.

---

[6] FRCP 26(c)(1), (D).

[7] *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)).

[8] *Ames Construction, Inc. v. Clark County*, Case No. 2:18-cv-00299-JCM-EJY, 2020 WL 1674327, at *3–4 (D. Nev. Apr. 6, 2020) (collecting cases).

[9] *Warner Commc'ns*, 742 F.2d at 1161 (internal citations omitted).

[10] *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001).

### 1. NDOC Anticipates Questions Asked of Director Daniels During the Evidentiary Hearing or in a Deposition Will Intrude on His Pre-Decisional Deliberations and Therefore A Protective Order is Necessary to Protect This Sacrosanct Privilege

To be protected under the deliberative process privilege, the sought information must be both (1) "predecisional," meaning it was "generated before the adoption of an agency's policy or decision," and (2) "deliberative in nature, containing opinions, recommendations, or advice about agency policies."[11] "Purely factual material that does not reflect deliberative processes is not protected."[12] However, in the second part of this analysis, courts must consider whether the sought "factual material is so interwoven with the deliberative material that it is not severable."[13]

The fact that these predecisional decisions are made in the context of ensuring that the NDOC carries out a death penalty sentence in a constitutional matter does not change this analysis. To this end, in *United States v. Fernandez,* the Ninth Circuit held that the deliberative process privilege protected a predecisional death penalty evaluation form and prosecution memorandum. There, the defendant filed a discovery motion seeking "all information that may tend to mitigate the sentence in this case," so he could make an "informed, accurate and meaningful presentation to the government."[14] The government argued, among other things, that the deliberative process privilege protected the documents.[15] The district court granted the motion, ordering prosecutors "to provide all capital-eligible defendants with its completed death penalty evaluation form and prosecution memorandum."[16] The government filed a " 'Notice of Non-Compliance with

---

[11] *Warner Commc'ns*, 742 F.2d at 1161 (citing *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

[12] *Id.* (citing *EPA v. Mink*, 410 U.S. 73, 87 (1973)).

[13] *United States v. Fernandez*, 231 F.3d 1240, 1247 (9th Cir. 2000) (citing *Binion v. Dep't of Justice*, 695 F.2d 1189, 1193 (9th Cir. 1983)).

[14] *Fernandez*, 231 F.3d at 1243.

[15] *Id.*

[16] *Id.* at 1244.

Court's Order and Suggested Procedure,' in which the government respectfully but firmly informed the district court that it would not comply with its order."[17]

The Ninth Circuit reversed, finding that the death penalty evaluation form and the prosecution memorandum were both "predecisional" and "deliberative."[18] The documents were predecisional since they were submitted "*before* the Attorney General ma[de] the final decision whether to seek the death penalty," and deliberative because they contained "opinions, recommendations, or advice about agency policies."[19] Because the documents "play[ed] an integral role in the government's deliberative and policy-making processes," the deliberative process privilege shielded them from disclosure.[20]

Here, any "opinions, recommendations or advice" Director Daniels seeks prior to finalizing the execution protocol plays "an integral role in" his deliberative and policy-making decision as the sole decisionmaker in finalizing a constitutional execution protocol.

The fact Floyd and/or this Court seek this information by way of testimony as opposed to documents is of no consequence. In *Ames Construction v. Clark County*,[21] Magistrate Judge Youchah concluded the deliberative process privilege applies prospectively to witness testimony and granted a protective order barring a county commissioner's deposition. There, Ames asserted the deliberative process only applied to instances where a party seeks disclosure of *documents* from a government body, but does not apply when a party seeks to take the *deposition* of a government official to ask him or her questions about factual matters or documents already disclosed. Magistrate Judge Youchah rejected this narrow interpretation of the privilege, agreeing with the defendants that Ames' conclusion was illogical because the goal of the privilege "is to encourage candid discussions of ideas and to improve the government decision-making process."[22] *Ames*

---

[17] *Id.*
[18] *Id.* at 1246.
[19] *Id.* (citations omitted).
[20] *Id.* at 1247.
[21] No. 2:18-cv-00299-JCM-EJY, 2020 WL 1674327 (D. Nev. Apr. 6, 2020).
[22] *Id.* at *3 (collecting cases).


further held that the defendants satisfied their burden of establishing that the privilege shielded the commissioner's deposition testimony.[23] The same is true here.

Director Daniels anticipates Floyd or this Court will ask questions in following areas of inquiry:

- Why is the execution protocol not yet finalized?
- When will the execution protocol be finalized?
- What drug or drugs is he considering for inclusion in the protocol?
- What drugs are available to be considered?
- What drugs are not available to NDOC and therefore cannot be considered?
- What was discussed during consultation(s) with Dr. Azzam?
- Whether Director Daniels has discussed these issues with other individuals?

Some of these areas of inquiry necessarily require delving into predecisional information. Others could infringe on that information depending on how they are asked and answered. A protective order is therefore required to protect the disclosure of these deliberative actions before a final decision has been made.

The deliberative process privilege shields all materials and testimony regarding the substance of Director Daniels' communications with individuals, Dr. Azzam or otherwise, so long as those Director Daniels held those discussions for the propose of assisting him in reaching the final execution protocol. This is because any substantive information provided to him during those discussions—or he asked others—took place for the express purpose of making a final decision. This means the information, whether verbal or written, qualifies as "predecisional" because Director Daniels has yet to make a decision on the new execution protocol.

The information is also "deliberative" because, whether statutorily required under NRS 176.355(2)(b), or as part of Director Daniels due diligence in seeking information and

---

[23] *Id.* at *4.

opinions from other sources, he sought it for purposes of seeking advice to aid in his selection of a drug or combination of drugs for use in a new protocol. A plain reading of the statute demonstrates the applicability of the privilege, even without delving into the details of any meetings.

However, when viewed in light of the privilege's purpose, it is clear that state officials such as Director Daniels and Dr. Azzam would "not communicate candidly among themselves" or others before the execution protocol is finalized if they were concerned that their exchange would become front page news.[24] Although Floyd is entitled to discovery, and NDOC Defendants are working with his counsel to expedite the process, he is not entitled to discover information regarding communications with others that are both "predecisional" and "deliberative" and were "integral" to assist Director Daniels in completing his policy-making decisions pertaining to the execution protocol.

What is important is the final policy. And there is no dispute among the parties that the final execution policy will be provided once completed.

## 2. The Balancing Test Weighs in Favor of Director Daniels

Floyd will likely argue that because the deliberative process privilege is not absolute, this Court should find that the balancing test weighs in his favor and that he should be allowed to invade the privilege. NDOC Defendants respectfully disagree.

The Ninth Circuit provided the following four-factor test in determining whether to rob government officials of this crucial privilege:

> 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions.[25]

Each of these factors fall against invading the privilege.

---

[24] *See Klamath Water Users Protective Ass'n*, 532 U.S. at 8–9.

[25] *Karnoski v. Trump*, 926 F.3d 1180, 1206 (9th Cir. 2019) (citing *Warner Commc'ns*, 742 F.2d at 1161).

Here, the details of discussions Director Daniels had as part of his consultation duties with Dr. Azzam or other individuals are irrelevant. The plain language of NRS 176.355(2)(b) vests broad and final authority with Director Daniels to select a drug protocol. On its face, NRS 176.355(2)(b) does not require the CMO to approve the drug or combination of drugs the NDOC Director selects, nor does the statute restrict the NDOC Director to consulting solely with the CMO. Although the drug protocol must withstand Eighth Amendment scrutiny, the consultation is not a part of the protocol. Thus, testimony regarding the Director Daniels' predecisional discussions with Dr. Azzam or others are not relevant to the issues before this Court.

With regard to the second factor, the availability of other evidence, the NDOC will provide Floyd with the final execution protocol. The final execution protocol will contain the drug or combination of drugs for the lethal injection. Floyd informed this Court that he needs the information to obtain experts to opine as to the constitutionality of the final protocol. That information will be in the final protocol. His experts can opine on what the final protocol will do, and what, in their opinion, should have been considered. The information can be obtained from the final protocol and Floyd's experts. Thus, the second factor favors the State.

As to the government's role in the litigation, it is a party. Its role is crucial to law enforcement functions of the State. This clearly requires it to be able to speak candidly and confidentially with individuals before making policy decisions of significant consequence. Especially when the final product of the deliberation, the execution protocol, will be available to not only Floyd, but the public as a whole.

Finally, for the reasons addressed throughout this Motion, Director Daniels must be able to obtain unfiltered information while formulating an execution protocol. If the information is subject to public disclosure, it "would hinder frank and independent discussions regarding contemplated policies and decisions."[26]

---

[26] *Id.* at 1206.

Accordingly, NDOC is entitled to a protective order. Without it, executive officials such as Director Daniels will face a chilling effect when it comes to seeking frank, candid, and controversial information.

### B. This Court Should Prohibit Disclosure of Manufacturer Names

As NDOC notes above, the names of any drug(s) are protected by the deliberative process privilege unless named in the final execution protocol. By extension then, the manufacturers of those drugs are also not relevant and protected by the privilege up until the execution protocol is finalized.

However, NDOC also believes the names of the manufacturer of the drugs contained in the final execution protocol are also subject to a protective order.

Courts have made clear that there is no constitutional right to the name of the manufacturer of drugs contained in an execution protocol.[27] This is true for both the public as a whole as well as the condemned individual seeking information regarding the intended protocol.

Regarding the statutory requirement for Director Daniels to consult with the CMO, NDOC is fully aware of the requirements set forth in NRS 176.355(2)(b) and will ensure compliance with that statute. Of course, the frank and sensitive communications between Director Daniels and the CMO are themselves confidential as discussions among high-ranking government officials are protected by, at a minimum, the deliberative process and official information privileges.[28] What is important is that the NDOC will disseminate the final result, the execution protocol, not only to Floyd but the public as a whole.

The court in *Wellons v. Commissioner, Ga. Dept. of Corrections* succinctly stated that "[n]either the Fifth, Fourteenth, or First Amendments afford Wellons the broad right 'to know where, how, and by whom the lethal injection drugs will be manufactured,' as well as

---

[27] *Ryan v. Wood*, 135 S. Ct. 21 (2014) (vacating, among other things, the Ninth Circuit's decision requiring the disclosure of the manufacturer of the drugs); *Wellons v. Comm'r, Ga. Dep't of Corr.*, 754 F. 3d 1260, 1267 (11th Cir. 2014) (finding the Constitution does not provide a right for the plaintiff "to know where, how, and by whom the lethal injection drugs will be manufactured, as well as the qualification of the person or persons who will manufacture the drugs, and who will place the catheters").

[28] *See supra* Section IV(A).

'the qualifications of the person or persons who will manufacture the drugs, and who will place the catheters.'"[29] In *Wood v. Ryan*,[30] the Ninth Circuit attempted to chart a course different from the Eleventh Circuit in *Wellons*. However, the Supreme Court vacated the Ninth's Circuit's order that required, among other things, the disclosure of the manufacturers only one day after the Ninth Circuit denied reconsideration, and three days after the panel reached its erroneous decision on the issue.[31]

The Ninth Circuit recognized the Supreme Court's course correction in *First Amendment Coalition of Arizona, Inc., v. Ryan*, stating that it agreed "with the district court that neither the public nor the press has a First Amendment right of access to" "information regarding the manufacturers, sellers, lot numbers, National Drug Codes, and expiration dates of lethal-injection drugs," just as they lack the right to information "regarding the qualifications of certain execution team members."[32]

For the same reasons, here, Floyd is not entitled to the manufacturers' names of the drugs—neither before nor after the NDOC finalizes the execution protocol.[33] In contrast, this Court should not order such information made public as sharing the information will only frustrate NDOC's ability to carry out its statutory duties. This has been shown time and time again based on manufacturers making drugs unavailable[34]—hurting not only states' ability to enforce death penalty statutes, but also making drugs unavailable to treat diseases and illnesses.

---

[29] 754 F. 3d 1260, 1267 (11th Cir. 2014).

[30] 759 F.3d 1076 (9th Cir. 2014), *vacated by Ryan v. Wood*, 135 S. Ct. 21 (2014).

[31] *Ryan v. Wood*, 135 S.Ct. 21 (vacating, among other things, the Ninth Circuit's decision requiring the disclosure of the manufacturer of the drugs).

[32] 938 F.3d 1069, 1078 (9th Cir. 2019).

[33] However, NDOC Defendants acknowledge there *could potentially* be a reason as to why the manufacturer of the drug is relevant at some point during this litigation. To the extent it becomes relevant at that time, the NDOC can provide that information subject to a protective order limiting the information only to Floyd's attorneys and limited experts. This Court need not decide this issue at this time as it is clear there is no reason for the disclosure of this information before the completion of the execution protocol and the drug or drugs are chosen.

[34] *See, e.g. Floyd v. Filson*, 949 F.3d. 1128, 1152 (9th Cir.), *cert. den. Sub. Nom. Floyd v. Gitterre,* 141 S. Ct. 660 (2020) (citing *Alvogen v. Nevada*, No. A-18777312-B (Nev. Dist. Ct. Sept. 28, 2018), *vacated on appeal,* 2019 WL 539049 (Nev. 2019)).

**V.      Conclusion**

The State must have the ability to have confidential discussions without subjecting those discussions to public scrutiny. The deliberative process privilege recognizes this important governmental function. The information is not needed.

Respectfully, on behalf of the State of Nevada, NDOC Defendants respectfully request that a protective order be entered, prior to the testimony at the evidentiary hearing, prohibiting information regarding the discussions and other confidential information.

Respectfully submitted on this 4th day of May, by:

>AARON D. FORD
>Attorney General
>
>By:    /s/ *D. Randall Gilmer*
>          D. Randall Gilmer (Bar No. 14001)
>          Chief Deputy Attorney General
>          *Attorneys for NDOC Defendants*