RENE L. VALLADARES
Federal Public Defender
Nevada Bar No. 11479
DAVID ANTHONY
Assistant Federal Public Defender
Nevada Bar No. 7978
David_Anthony@fd.org
BRAD D. LEVENSON
Assistant Federal Public Defender
California Bar No. 166073
Brad_Levenson@fd.org
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577
(702) 388-5819 (fax)

Attorneys for Zane M. Floyd

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| ZANE M. FLOYD, | Case No. 3:21-cv-00176-RFB-CLB |
|---|---|
| Plaintiff, | **RESPONSE TO NOTICE OF SUPPLEMENTAL AUTHORITY** |
| v. | **(DEATH PENALTY CASE)** |
| CHARLES DANIELS, Director, Nevada Department of Corrections, et al., | **EXECUTION WARRANT SOUGHT BY THE STATE FOR THE WEEK OF JULY 26, 2021** |
| Defendants. | |

On May 14, 2021, defendants Nevada Department of Corrections (NDOC) filed a notice of supplemental authority related to plaintiff Zane Floyd's pending motions and NDOC's motion for protective order. ECF No. 67. Floyd hereby responds to the State's notice.

NDOC cites to *United States Fish and Wildlife Service v. Sierra Club, Inc.*, 141 S. Ct. 777 (2021), but it does not explain how this case supports its position with respect to the deliberative process privilege. ECF No. 67 at 2. *Fish and Wildlife Service* does not address issues such as waiver of the privilege or apply the substantial need exception that exists when a party seeks critical information that can only be obtained from the opposing party.[1] To the contrary, *Fish and Wildlife Service* concerns a litigant's Freedom of Information Act request for agency documents. Floyd already acknowledged the deliberative process privilege applies with the greatest force during public records act litigation for document discovery. ECF No. 45 at 3.

Moreover, *Fish and Wildlife Service* supports Floyd's argument that he should be permitted to obtain discovery of Dr. Azzam's opinion regarding the drugs used in NDOC's execution protocol. The relevant statute and federal regulations required the United States Fish and Wildlife Service to consult with the EPA and render an opinion before the EPA proceeds with a proposed rule. *Fish and Wildlife Service*, 141 S. Ct. at 783-84 (citing 16 U.S.C. § 1536(a)(2); 50 CFR §§ 402.01-402.17

---

[1] The decision only concerns the scope of the deliberative process privilege. *See id.* at 786-89.

(2019)). As the dissent noted, "We all agree, I believe, that a Final Biological Opinion is not deliberative and that Exemption 5 of the Freedom of Information Act (FOIA) does not protect it from disclosure." *Id.* at 789 (Breyer, J., dissenting, joined by Sotomayor, J.). Similarly, Dr. Azzam's final opinion with respect to NDOC's protocol (both the 2018 Dozier protocol and the current one) is not covered by the deliberative process privilege, which means it should be disclosed without engaging in a balancing test.

NDOC also cites *Pizzuto v. Tewalt*, __ F.3d __, 2021 WL 1904595 (9th Cir. May 12, 2021), which supports Floyd's position with respect to ripeness of his method of execution challenge and is factually distinguishable as it concerns his procedural due process right to notice of NDOC's execution protocol.

With respect to ripeness, NDOC asserts *Pizzuto* "may have some bearing on NDOC Defendants' opposition to Floyd's Motion for Temporary Restraining Order and Preliminary Injunction." ECF No. 67 at 2. NDOC does not explain how *Pizzuto* applies to its ripeness arguments. *Pizzuto* rejects NDOC's argument that Floyd's challenge to the method of his execution is not ripe because he has other pending litigation challenging his death sentence. 2021 WL 1904595, at *3-4. As noted by the court, "we have not applied the ripeness rule advanced by the district court and have instead decided § 1983 claims similar to the ones here on the merits, even though plaintiffs had pending post-conviction proceedings." *Id.* at *4. *Pizzuto* also rejects NDOC's argument that Floyd's claims are unripe because an execution warrant has not been issued. *Id.* at *4-5. To the contrary, when a plaintiff's claims

concern access to information with respect to his upcoming execution, and where an execution is effectuated in 30 days from issuance of the warrant, the claims are undoubtedly ripe. *Id.* at *4-5 & n.7.

*Pizzuto* acknowledges "that the *absence* of an extent protocol is sometimes, but not always helpful for determining ripeness." 2021 WL 1904594 at *6 (emphasis in original). The caveat acknowledged in *Pizzuto* is particularly relevant here. "We are wary of assigning dispositive weight to the absence of an extant protocol, because to do so would encourage states to withhold their protocols until the last moment to minimize judicial scrutiny." *Id.* Floyd has argued that NDOC's failure to disclose the drugs that it intends to use in his execution falls in this bad faith category given NDOC's argument that it is waiting for a signed execution warrant before it will disclose the execution protocol.[2] This argument is also supported by the Director's testimony that he had concerns about releasing the execution protocol early as it might encourage litigation with respect to the drugs being used in the execution. ECF No. 49 at 76-77. The upshot of *Pizzuto* is that the path charted by this Court to proceed in a careful fashion by permitting discovery of what is known by NDOC now while respecting the Director's need for more time to finalize the protocol will separate the good from the bad motives while also allowing Floyd the time needed to litigate his claims.

---

[2] *E.g.*, ECF No. 25 at 13 ("NDOC is awaiting the issuance of a valid execution warrant and order."); 22 at 16 ("NDOC cannot proceed without the state court issuing a valid execution warrant and order.").

4

With respect to procedural due process, NDOC fails to mention the critical facts that distinguish *Pizzuto* from Floyd's case. In *Pizzuto*, the state disclosed its execution protocol. 2021 WL 1904595 at *6. In such circumstances, the "injunctive relief that plaintiffs seek – enjoinment of executions until IDOC issues a revised protocol – is no longer necessary." *Id*. *Pizzuto* also acknowledged "we have no basis to think that IDOC would create a situation where there is no execution protocol in place for these plaintiffs." *Id*. As explained above, Floyd's assertions of bad faith by NDOC in failing to disclose its intentions with respect to his upcoming execution implicate this caveat noted in *Pizzuto*.

*Pizzuto* is also distinguishable from Floyd's case because it did not involve a challenge to Idaho's method of execution. To the contrary, the plaintiffs' claims were limited to obtaining information concerning the various options available to the department of corrections to effectuate their executions. As the court noted, the "four methods of execution have not changed significantly from the 2012 version of the SOP." *Id*. at *3 n.5. Of critical importance, the first drug in the protocol used to induce anesthesia, a barbiturate, would either consist of sodium pentothal, the drug used in the traditional lethal injection protocol uniformly used by the states from the 1970s to 2008, ECF No. 2 at 7, 19 or pentobarbital, the barbiturate used by the most active death penalty states, and the one advanced by Floyd as an alternative to NDOC's unknown and experimental protocol. ECF No. 2 at 50-53. That Idaho has had substantially the same protocol since 2012, one that uses anesthetic drugs with

1  a reliable track record, and has posted it to their website is a critical distinction

2  between the facts in *Pizzuto* and those before this Court in Floyd's case.

3  Floyd's complaint does not seek information solely for informative purposes. Instead, his request for information is sought specifically for the purposes of challenging the method of his execution. As noted above, the procedural due process claim in *Pizzuto* was "mostly moot because plaintiffs are now on notice of the revised SOP and can challenge its legality." 2021 WL 1904595, at *7. *Pizzuto's* discussion of the residual information plaintiffs still sought after the disclosure of the execution protocol must be understood in this specific context. It was precisely this factual scenario that prompted the court to state, "Even if such a due process right exists, we find it hard to imagine that it applies in this situation." *Id.* at *9.

*Pizzuto* and the cases cited from other circuits did not involve the extreme situation present in Floyd's case where basic information regarding the drugs to be used in the execution protocol are still not disclosed by NDOC only a short time before the execution. To the contrary, even NDOC notes that the Ninth Circuit acknowledged circumstances existed in Arizona that implicated the procedural due process rights of condemned inmates. ECF No. 67 at 3. For example, in prior executions in Arizona, there were "last-minute changes to the protocol, an extraordinary degree of secrecy during and after the execution, and a record of troubling executions." *Id.* at *9.[3]

---

[3] Citing *First Amendment Coalition, Inc. v. Ryan*, 938 F.3d 1069, 1080 (9th Cir. 2019); *Lopez v. Brewer*, 680 F.3d 1068, 1083 (9th Cir. 2012) (Berzon, J., concurring in part).

6

1    The historical record in Nevada reveals even more cause for concern than
2    those before the Ninth Circuit with respect to Arizona. NDOC has not conducted an
3    execution since 2006. NDOC engages in extraordinary secrecy with respect to its
4    execution protocol, only disclosing it after issuance of an execution warrant and
5    under compulsion by the court. After disclosure of a novel and experimental protocol
6    in 2017, NDOC made major errors with respect to the dosage of the drugs that it did
7    not address until it was pointed out by an expert for the condemned inmate. ECF
8    No. 4-3 at 3-15; 4-4 at 6 (concession by NDOC). And even then, the execution
9    protocol was not adopted by the Director until the week before the execution and
10   the protocol was ultimately found to violate the Eighth Amendment by the only
11   court that reviewed it. ECF No. 4-7 at 2-18.

12   Here, Floyd faces an imminent execution in the face of extraordinary secrecy
13   by NDOC. It appears the execution protocol may yet again involve experimental
14   drugs never used before in any prior execution, ECF No. 46-1, which will likely
15   again give rise to major problems with respect to dosage and drug interactions. And
16   the Director who is making the critical decisions with respect to the protocol is in
17   apparent disagreement with the Chief Medical Officer, ECF No. 41 at 2, the only
18   medical official he is statutorily required to consult, and he has expressed
19   confidence in NDOC's prior protocol even though he claims to know it was found to
20   be unconstitutional. ECF No. 49 at 57.

21   In summary, if ever a procedural due process right to know the details of an
22   execution protocol exist, it must surely exist in the circumstances of Floyd's case,

and he is entitled to the discovery he seeks to support a method of execution challenge that he intends to prosecute.

DATED this 17th day of May, 2021.

Respectfully submitted
RENE L. VALLADARES
Federal Public Defender

*/s/ David Anthony*
DAVID ANTHONY
Assistant Federal Public Defender

*/s/ Brad D. Levenson*
BRAD D. LEVENSON
Assistant Federal Public Defender

# CERTIFICATE OF SERVICE

In accordance with the LR IC 4-1(a) of the Local Rules of Practice, the undersigned hereby certifies that on this 17th day of May, 2021, a true and correct copy of the foregoing RESPONSE TO NOTICE OF SUPPLEMENTAL AUTHORITY, was filed electronically with the United States District Court. Electronic service of the foregoing document shall be made in accordance with the master service list as follows:

D. Randall Gilmer
Chief Deputy Attorney General
Office of the Nevada Attorney General
drgilmer@ag.nv.gov
Crane Pomerantz, Esq.
Nadia Ahmed, Esq.
SKLAR WILLIAMS PLLC
cpomerantz@sklar-law.com
nahmed@sklar-law.com

*/s/ Sara Jelinek*
An Employee of the Federal Public Defenders Office, District of Nevada