Margaret A. McLetchie, Nevada Bar No. 10931
Alina M. Shell, Nevada Bar No. 11711
**MCLETCHIE LAW**
701 East Bridger Ave., Suite 520
Las Vegas, NV 89101
Telephone: (702) 728-5300; Facsimile: (702) 425-8220
Email: maggie@nvlitigation.com
*Counsel for Intervenor, Las Vegas Review-Journal, Inc.*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ZANE M. FLOYD,<br><br>   Plaintiff,<br>vs.<br><br>CHARLES DANIELS, DIRECTOR, NEVADA DEPARTMENT OF CORRECTIONS; ET AL.,<br><br>   Defendants. | Case. No.: 3:21-cv-00176-RFB-CLB<br><br>**LAS VEGAS REVIEW-JOURNAL, INC.'S REPLY TO NDOC'S RESPONSE TO EMERGENCY MOTION TO INTERVENE AND MOTION TO UNSEAL** |

Intervenor Las Vegas Review-Journal, Inc. hereby submits this reply in support of its emergency motion to intervene and its motion to unseal.

DATED this 19th day of May, 2021.

          */s/ Margaret A. McLetchie*
          Margaret A. McLetchie, Nevada Bar No. 10931
          Alina M. Shell, Nevada Bar No. 11711
          **MCLETCHIE LAW**
          701 East Bridger Ave., Suite 520
          Las Vegas, NV 89101
          Telephone: (702) 728-5300; Facsimile: (702) 425-8220
          Email: maggie@nvlitigation.com
          *Counsel for Intervenor, Las Vegas Review-Journal, Inc.*

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On May 7, 2021, Las Vegas Review-Journal, Inc. ("Review-Journal) filed a motion to intervene and proposed motion to unseal the unredacted privilege log the defendants ("NDOC") filed under seal. (ECF Nos. 55 and 55-2.). The Review-Journal does not waive the right to seek at some future time, but is not now seeking, access to materials not submitted to the Court nor material submitted to the Court for *in camera* review, but not provided to Plaintiff or his counsel. The Review-Journal merely seeks access to NDOC's unredacted privilege log, and of course, also seeks to ensure that any hearings in this matter not be sealed without providing the Review-Journal the opportunity to object to sealing. Neither Mr. Floyd nor NDOC has opposed the Review-Journal's limited intervention.

Some of the issues related to NDOC's privilege log have been resolved by NDOC appending a redacted version of the privilege log to its response. (*See* ECF No. 72-1.) However, NDOC's redactions still deprive the public of access to an unredacted version of the privilege log. NDOC bases its efforts to hide the redacted information on assertions that there is a mere possibility that information contained within the unredacted log could lead to criticism of the NDOC and/or its public employees. This is not a valid basis for sealing this information from the public (under either the first amendment compelling reason or good cause standard). Criticism of governmental agencies and officials is a bedrock public right.

NDOC incorrectly asserts that the "good cause" standard for sealing applies to the filed privilege log. NDOC ignores, however, that the privilege log, because it is neither a document that is "not part of the judicial record," nor is it "previously sealed discovery" attached to a non-dispositive motion. Thus, the "compelling reasons" standard must apply. However, NDOC cannot satisfy the lower "good cause" standard, in any event, because it has failed to demonstrate a particular need for the protection sought. *Beckman Indus., Inc., v. Int'l. Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). Thus, the Court should unseal the unredacted version of NDOC's privilege log.

/ / /

NDOC does not present any genuine opposition to the Review-Journal's request that this Court not seal any hearings in this matter without allowing the Review-Journal the opportunity to object. Instead, it only argues that Court should ignore the request because it has not indicated it would seal hearings. To the extent the Court does contemplate sealing hearings in this matter, it must permit the Review-Journal to present objections to sealing.

Finally, during the May 12, 2021, hearing in this matter, the Court suggested it would like further analysis of the interplay between the deliberative process privilege and the public's presumptive right to access court filings. As discussed below, before sealing filings that are part of the court record, the Court must make specific findings on the record that establish that compelling reasons merit sealing—and that those compelling reasons clearly outweigh the interest in access. Here, particularly because the underlying records are public records and because of the public interest in access to this proceeding (and information about the death penalty), even if a document is subject to the deliberative process privilege, that would not mean the document is automatically sealed. Instead, as discussed below, the Court would have to find that NDOC's interests in keeping the documents secret outweigh the significant interests the public has in accessing information about the State's exercise of its power to put people to death.

## II.  ARGUMENT

### A. The Review-Journal Should Be Permitted to Intervene in this Matter.

NDOC states it "does not oppose the Review-Journal's limited intervention" for the purposes of seeking the unsealing of the privilege log (ECF No. 72, p.1:23-26), and Mr. Floyd has taken no position regarding intervention. In light of this lack of opposition, the Court should grant the Review-Journal's motion to intervene.

### B. The "Compelling Reasons" Standard Applies, and NDOC Cannot Meet It.

The First Amendment guarantees the public the right of access to court filings and court proceedings, and any efforts to limit access to court records must be "based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 829 (9th

3

Cir. 2020) (quoting *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 9 (1986) ("*Press-Enterprise II*")).

In responding to the Review-Journal's motion to unseal, NDOC asserts that the Review-Journal applied the "wrong legal standard" and that NDOC need only establish good cause to file the privilege log under seal. (ECF No. 72, p. 3:2-4.) NDOC's argument, however, is self-defeating. As NDOC notes, the "less exacting 'good cause' standard" applies to "documents that are not part of the judicial record" and "previously sealed discovery attached to non-dispositive motions." (*Id.*, p. 3:16-18) (citations omitted). The privilege log, however, is neither a document that is "not part of the judicial record," nor is it "previously sealed discovery" attached to a non-dispositive motion. Instead, the privilege log is a judicial document that NDOC filed and served at the direction of this Court. (*See* ECF No. 59.) Here, NDOC is seeking to seal off information pertaining directly to the exercise of the State's singular ability to put people to death—information which is of paramount public interest and which the public has a right to access. *Cf. Schad v. Brewer*, No. CV-13-2001-PHX-ROS, 2013 U.S. Dist. LEXIS 145387, at *15 (D. Ariz. Oct. 7, 2013) (holding that "the public enjoys a First Amendment right of access to specific information about the drugs that are 'inextricably intertwined with the process of putting condemned inmates to death'") (quoting *California First Amendment Coalition v. Woodford*, 299 F.3d 868, 876 (9th Cir. 2002)). Thus, the "compelling reasons" standard was and is the appropriate standard NDOC must satisfy to justify the sealing of its privilege log.

NDOC cites to the Ninth Circuit's decision in *United States v. Sleugh*, 896 F.3d 1077 (9th Cir. 2018) to support its theory that the lower "good cause" standard applies to the privilege log it filed with this Court, arguing that the presumptive right of access guaranteed by the First Amendment and the common law does not attach to its privilege log. (ECF No. 72, p. 4:11-16.) NDOC further relies on *Sleugh* to insinuate that because the Review-Journal "lacks a First Amendment right of access," it must establish a "special need" for access to the privilege log. (*Id.* at pp. 7:26-8:7.)

/ / /

4

NDOC's reliance on *United States v. Sleugh* is misplaced, as that case pertained to access to a subpoena issued pursuant to Fed. R. Crim. P. 17(c)—a type of record to which the presumptive right of access does not attach (unlike the court filing at issue here). As the *Sleugh* court explained, a Rule 17(c) subpoena is a discovery tool that a party can use to obtain evidence in a criminal case, and requires the party seeking a subpoena to provide detailed information about their theory of the case and establish that the evidence sought is both relevant and admissible. *See id.* at 1012 (citing *United States v. Nixon*, 418 U.S. 683, 700, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974)). A Rule 17(c) subpoena is a type of record to which no presumptive right of public access attaches. *Sleugh*, 896 F.3d at 1015. Because no presumptive right of access attaches to a Rule 17(c) subpoena, a party seeking to unseal it must establish a "special need" to access a Rule 17(c) subpoena and its supporting documentation. *Id.*[1]

The *Sleugh* court determined that Rule 17(c) subpoenas have not historically been presumptively open to the public. Documents filed as part of court hearings (and the hearings themselves) in proceedings challenging aspects of a death penalty have been historically open to the public. Documents and proceedings that have been historically open to the public can only be sealed if the compelling reasons standard is overcome. *Richmond Newspapers v. Virginia*, 448 U.S. 555, 572 (1980) ("the First Amendment guarantees of speech and press, standing alone, prohibit government from summarily closing courtroom doors which had long been open to the public"). Thus, NDOC must overcome the compelling reasons

---

[1] The document at issue here is radically different than a Rule 17(c) subpoena. The privilege log is not, like a Rule 17(c) subpoena, a document which lays bare NDOC's theory of a case or otherwise contains information which would impact its ability to pursue its interests in this matter. Instead, the log contains basic information regarding communications between public employees made in furtherance of the provision of a public service by the NDOC— communications which would, under Nevada law, be presumptively public unless otherwise explicitly declared by law to be confidential. *See* Nev. Rev. Stat. § 239.010(1); *see also Comstock Residents Ass'n v. Lyon Cty. B. of Comm'rs*, 414 P.3d 318 (Nev. 2018) (holding that emails and cell phone records regarding the provision of a public service are public records); *Nev. Policy Research Inst., Inc. v. Clark Cty. Sch. Dist.*, 131 Nev. 1326 (2015) (unpublished) (holding that a directory of teachers' email addresses "is a public record within the plain meaning of the NPRA").

5

standard, and there is no need for the Review-Journal to establish a "special need" for access to the privilege log.

### C. NDOC Cannot Established Good Cause to Seal the Privilege Log, In Any Event.

Good cause is not the proper standard in this case, but NDOC cannot meet the good cause standard, in any event. In its effort to overcome the good cause standard NDOC cites to the Ninth's Circuit's recent decision in *Pizzuto v. Tewalt*, ___ F.3d ___, 2021 U.S. App. LEXIS 14077 (9th Cir. 2021) for the proposition that "neither the First Amendment right to access to governmental proceedings nor the right of access to courts 'entitle[] [individuals] to information regarding execution drugs and personnel.'" (ECF No. 72, p. 5:3-6 (quoting *Pizzuto*, 2021 U.S. App. LEXIS 14077, *27).) This is a distraction.

As the Review-Journal noted in its Motion to Unseal and above, the Review-Journal is not seeking access to the documents NDOC asserts are privileged—the Review-Journal simply seeks access to the privilege log NDOC filed with the Court. Thus, whether the public has a right of access to documents regarding NDOC's execution protocol is irrelevant to the instant request to unseal the privilege log, which merely provides non-privileged information provided to the opposing party and filed as part of the Court proceeding.

Under Fed. R. Civ. P. 26(c), a court may grant a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The party seeking the protective order bears the burden of persuasion. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). To meet that burden of persuasion, the party seeking the protective order must show good cause by demonstrating a particular need for the protection sought. *Beckman Indus., Inc., v. Int'l. Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). Rule 26(c) requires more than "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning." *Id.* (citing *Cipollone*, 785 F.2d at 1121). "A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that prejudice or harm will result if no protective order is granted." *Foltz v. State Farm*, 331 F.3d 1122, 1130 (9th Cir. 2003) (citing *San Jose Mercury News, Inc., v. Dist. Ct.*,

6

187 F.3d 1096, 1102 (9th Cir. 1999)).

This "good cause" standard also applies when a party seeks access to previously sealed discovery attached to a nondispositive motion. *See Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002). As discussed above, the privilege log is not "previously sealed discovery attached to a nondispositive motion." However, even assuming that it is, NDOC's articulation of its "good cause" reason to deny the public access to a privilege log (which does not reveal any privileged information) falls woefully short.

NDOC's "good cause" can be boiled down to a single, self-serving goal. According to NDOC, its interest in sealing the unredacted privilege log is protecting public employees involved in the execution protocol from public criticism. According to NDOC, if the privilege log is unsealed, "any NDOC employee whose email address, title, or name appears within it could be subject to . . . harassment and abuse by member of the media, anti-death penalty organizations, or the public." (ECF No. 72, p. 6:3-5.) This is both offensive and insufficient to justify keeping the privilege log under seal.

NDOC is a governmental entity tasked with supervising thousands of citizens in various forms of custody, or in this case, with exercising the most significant power a state possesses: to put condemned citizens to death. Because of this unique role NDOC plays in Nevada, the public has a particularly strong interest in access to information about how NDOC carries out its functions of supervising and executing Nevada's citizens so that it can assess how well NDOC is fulfilling this role. The notion that the public cannot access that information solely because NDOC is afraid of possible criticism is simply not enough to justify sealing court records. *See Baxley v. Jividen*, No. 3:18-1526, 2020 U.S. Dist. LEXIS 71881, at *12 (S.D. W. Va. Apr. 23, 2020) (rejecting the West Virginia Division of Corrections and Rehabilitation's argument that unsealing of court records pertaining to the Division's response to COVID-19 could result in criticism of the Division). "Criticism of government is at the very center of the constitutionally protected area of free discussion. Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized." *Rosenblatt v. Baer*, 383 U.S. 75, 85, 86 S. Ct. 669, 675-76

(1966). NDOC's insinuation that it should be shielded from possible critique of its execution protocol and the roles of those involved with the protocol runs contrary to the First Amendment and runs contrary to the basic notion that public employees are public servants accountable to the public for their official acts.

The cases NDOC cites to do not justify denying the public access to the unredacted privilege log. In *United States v. Bundy*, 2:16-cr-46-GMN-PAL, the district court entered a protective order limiting access to discovery. *See Bundy*, ECF No. 609. However, unlike NDOC, the government in *Bundy* made a substantial evidentiary showing that access to certain discovery in that high-profile case could result in harm to federal agents, including evidence that supporters of the defendants in that matter doxed federal agents and witnesses by posting personal identifying information on social media; evidence that the chief BLM ranger who participated in the cattle roundup that ultimately led to the standoff between the BLM and the Bundy's received over 500 threatening calls; evidence that the judge presiding over the *Bundy* trial was threatened; and evidence that government counsel prosecuting the case had received threats. (*See Bundy*, ECF No. 608, pp. 6:19-8:13.) In other words, the government provided particularized examples of concrete harms that could occur in the event of disclosure. NDOC has provided nothing of the sort.

Similarly, in *Flynt v. Lombardi*, 885 F.3d 508 (8th Cir. 2018), the state of Missouri came forward with evidence regarding how disclosure of documents pertaining to Missouri's execution protocol could jeopardize the personal and professional safety of members of the execution team. *Flynt*, 885 F.3d at 511-12. NDOC doesn't even come close to making a similar showing here. Instead, it baldly speculates that harassment *could* occur. This sort of speculation, untethered to any evidence or articulation of the specific harms that would result from disclosure of the identities of public employees who sent and received putatively privileged communications, falls far short of even the more permissive "good cause" sealing standard.

/ / /

/ / /

NDOC's citation to *Jordan v. Comm'r*, 947 F.3d 1322 (11th Cir. 2020) (cited at ECF No. 72, p. 5:23-24) is likewise inapposite. Unlike the privilege log at issue here (which again, is just a listing of documents), in *Jordan* the plaintiffs had served the Georgia Department of Corrections with a subpoena calling for GDC to testify at a Fed. R. Civ. P. 30(b)(6) deposition and to produce documents concerning Georgia's lethal injection protocol. *Id.* at 1324. On appeal, the Eleventh Circuit was tasked with determining whether the district court had properly quashed that subpoena pursuant to Fed. R. Civ. P. 45 on the grounds that production of the documents would impose on undue burden on GDC. *Id.* at 1329; *see also id.* at 1341. Likewise, in *Va. Dep't of Corr. v. Jordan*, 2017 U.S. Dist. LEXIS 183014 (E.D. Va. Nov. 3, 2017), the same individuals who were the plaintiffs in the *Jordan v. Comm'r* case had served a subpoena on Virginia Department of Corrections also seeking 30(b)(6) testimony and the production of documents pertaining to Virginia's execution protocol. *Jordan*, 2017 U.S. Dist. LEXIS 183014 at *3-4. As in *Jordan*, the district court quashed the subpoena on the grounds that compliance would impose an "undue burden" on the state. *Id.* at *60.

Again, the Review-Journal is not seeking access to the underlying documents NDOC asserts are privileged—the Review-Journal solely seeks access to the privilege log NDOC filed with this Court and provided to Plaintiff. Thus, the considerations regarding the undue burden the documents subpoenas imposed on Georgia and Virginia in the related *Jordan* matters are of no moment here.

### D. Any Hearing Regarding NDOC's Privilege Log or Execution Protocol Must Be Open to the Public.

In its motion to unseal, the Review-Journal noted that, to the extent the Court considers sealing any hearing related to NDOC's privilege log or other matters related to Mr. Floyd's claims, it should not do so without first allowing the public to be heard. (ECF No. 55-2, pp. 9:1-10:9.) NDOC responds that the Court "should disregard this argument" because the Court has not indicated it will seal hearings (ECF No. 72, p. 7:10-14), but does not oppose the general principle that court hearings are open to the public. To the extent the Court does

9

contemplate sealing hearings in this matter, it must permit the Review-Journal an opportunity to present objections for the reasons set forth in the Review-Journal's motion to unseal.

### E. The Deliberative Process Privilege is Not Absolute and Must Give Way When Documents Implicate Significant Public Interests.

The issue of whether the records NDOC asserts are privileged should, themselves, be sealed if filed in court is not before this Court. The Review-Journal has not and currently is not seeking access to materials not filed with the court or filed *in camera* and not provided to the opposing side. However, during the May 12, 2021, hearing in this matter, this Court suggested it would like further analysis as to interplay between the deliberative process privilege and the public's presumptive right to access materials filed with courts.

Regardless of the basis for sealing asserted by a party, before a court can seal portions of the record, the court must make specific findings on the record that establish that compelling reasons merit sealing and that those compelling reasons outweigh the presumptive right of public access. Moreover, in this case, the Court is dealing not only with the First Amendment and common law rights of access applicable to all court proceedings and records, but also with records that are, even apart from their use in court, public records. In addition, given the extreme public interest in access to this proceeding because it relates to the death penalty, there is even greater public interest than that which applies to a typical case, and access to even typical cases is constitutionally protected. Thus, even if a document is subject to the deliberative process privilege, that would not mean the document is automatically sealed. Instead, the Court would have to find that NDOC's interests in keeping the documents secret are sufficient to overcome the significant interests the public has in accessing information about the State's exercise of its power to put people to death. Moreover, in balancing the presumptive right of access with a conditional privilege such as the deliberative process privilege,[2] is that "privileges, whether creatures of statute or the common law, should be interpreted and applied narrowly." *DR Partners v. Bd. of Cty.*

---

[2] *DR Partners*, 116 Nev. at 626, 6 P.3d at 471 (citation omitted).

*Comm'rs of Clark Cty.*, 116 Nev. 616, 621, 6 P.3d 465, 468 (2000) (citations omitted); *see also United States v. Nixon*, 418 U.S. 683, (1974 ("Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.")

Here, even assuming NDOC meets its burden here of establishing that the documents at issue are covered by deliberative process privilege, which is a conditional, not an absolute privilege,[3] this Court must still determine whether the public's interest in accessing the documents outweighs NDOC's interest in preventing their disclosure. And, of course, the nature of the record and proceedings would be relevant to the analysis. NDOC's burden is particularly heavy here, as this case implicates a matter of significant public interest—particularly, the significant public interest in being able to review and assess NDOC's exercise of its singular authority to put people to death. As the Ninth Circuit has held, the public has a significant interest in access to information regarding state-run executions. *See generally California First Amendment Coalition v. Woodford*, 299 F.3d 868 (9th Cir. 2002).

/ / /

/ / /

/ / /

/ / /

/ / /

---

[3] The deliberative process privilege protects only "materials created by administrative agencies during the decision-making process," *Nat'l Wildlife Fed'n v. United States Forest Serv.*, 861 F.2d 1114, 1116 (9th Cir.1988)., and "should be invoked only in the context of communications designed to directly contribute to the formulation of important public policy." *Clark Cty. Sch. Dist. v. Las Vegas Review-Journal,* 429 P.3d 313, 319 (Nev. 2018) (quotation omitted; emphasis added). The deliberative process privilege is designed to promote the quality of agency decisions by protecting from disclosure internal discussions which, if disclosed, would discourage the free-flow of ideas and "frank discussion of legal or policy matters." *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). The deliberative process privilege, even when applicable, is still conditional; even if a court determines a document is privileged, it must still determine whether the document should be withheld. *DR Partners*, 116 Nev. at 626, 6 P.3d at 471.

11

Moreover, it is noteworthy that the underlying documents NDOC seeks to protect are public records, and are therefore presumptively open to the public pursuant to the Nevada Public Records Act, Nev. Rev. Stat. § 239.001 *et seq.* The central purpose of the NPRA is fostering "democratic principles by providing members of the public with prompt access to… records." As such, the NPRA requires that public records must be open at all times to the public for inspection or copying. Nev. Rev. Stat. § 239.010(1); *Reno Newspapers, Inc. v. Gibbons*, 127 Nev. 873, 882, 266 P.3d 623, 628 (2011). The NPRA must be construed liberally, and any limitation on the public's access to public records must be construed narrowly. Nev. Rev. Stat. § 239.001(2) and (3); *see also Gibbons,* 127 Nev. at 882, 266 P.3d at 629 ("the provisions of the NPRA place an unmistakable emphasis on disclosure"). As explained in *DR Partners*:

> Once the court determines that a document is privileged, it must still determine whether the document should be withheld. Unlike some other branches of the executive privilege, the deliberative process privilege is a qualified privilege. Once the agency demonstrates that documents fit within it, the burden shifts to the party seeking disclosure. It must demonstrate that its need for the information outweighs the regulatory interest in preventing disclosure.

*DR Partners*, 116 Nev. at 626, 6 P.3d at 471 (quoting *Capital Info. Group v. Office of the Governor*, 923 P.2d 29, 36 (Alaska 1996)) (citations omitted). Here, as in the NPRA context, even if the Court determines that the deliberative process indeed attaches to documents filed in this case, that will not end the analysis and NDOC would need to meet a heavy burden.

### III.  CONCLUSION

The privilege log at issue in this motion is not a typical discovery log exchanged between parties in litigation. Nor is it actual discovery. Instead, it is a court record NDOC filed in this case at this Court's direction. As such, the constitutional and common law rights of presumptive access apply to it. To overcome the presumption of access under the "compelling reasons" standard for sealing court records, and even under the inapplicable "good cause" standard, NDOC was required to come forward with particularized articulations of the harms that would result from disclosure of a generalized log. It did not.

Instead, NDOC relied on inapposite cases and bald assertions that disclosure of information contained within the log could lead to public criticism. NDOC has not met its burden. Accordingly, the Review-Journal respectfully requests that this Court grant its motion to unseal the unredacted privilege log.

DATED this 19th day of May, 2021.

/s/ Margaret A. McLetchie
Margaret A. McLetchie, Nevada Bar No. 10931
Alina M. Shell, Nevada Bar No. 11711
**MCLETCHIE LAW**
701 East Bridger Ave., Suite 520
Las Vegas, NV 89101
Telephone: (702) 728-5300; Facsimile: (702) 425-8220
Email: maggie@nvlitigation.com
*Counsel for Intervenor, Las Vegas Review-Journal, Inc.*