Margaret A. McLetchie, Nevada Bar No. 10931
Alina M. Shell, Nevada Bar No. 11711
**MCLETCHIE LAW**
701 East Bridger Ave., Suite 520
Las Vegas, NV 89101
Telephone: (702) 728-5300; Facsimile: (702) 425-8220
Email: maggie@nvlitigation.com
*Counsel for Intervenor, Las Vegas Review-Journal, Inc.*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ZANE M. FLOYD,<br><br>            Plaintiff,<br>       vs.<br><br>CHARLES DANIELS, DIRECTOR, NEVADA DEPARTMENT OF CORRECTIONS; ET AL.,<br><br>            Defendants. | Case. No.: 3:21-cv-00176-RFB-CLB<br><br>**LAS VEGAS REVIEW-JOURNAL, INC.'S MOTION TO UNSEAL** |

Intervenor Las Vegas Review-Journal, Inc. hereby moves this Court for an order unsealing documents and court records that this Court ordered be submitted under seal. This motion is supported by the attached memorandum of points and authorities.

DATED this 7th day of May, 2021.

/s/ Margaret A. McLetchie
Margaret A. McLetchie, Nevada Bar No. 10931
Alina M. Shell, Nevada Bar No. 11711
**MCLETCHIE LAW**
701 East Bridger Ave., Suite 520
Las Vegas, NV 89101
Telephone: (702) 728-5300; Facsimile: (702) 425-8220
Email: maggie@nvlitigation.com
*Counsel for Intervenor, Las Vegas Review-Journal, Inc.*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

There is a First Amendment right of access possessed by all members of the public, including Intervenor Las Vegas Review-Journal, Inc. (Review-Journal") to court proceedings and to documents filed with courts as part of those proceedings. The United States Supreme Court explicitly recognized the constitutional right of access in cases involving access to criminal proceedings. The logic applied by the Supreme Court in those cases, as well as dicta by the Supreme Court and the weight of authority from lower courts has found a first amendment right of access in civil cases, as well. Additionally, the Supreme Court has found a common law right to access to court documents.

Permitting the Nevada Department of Corrections ("NDOC") to file a privilege log under seal thwarts the public's clearly established right of access to materials filed in court. Indeed, sealing a privilege log—which, by definition, is not a secret document as it is shared with the opposing party to facilitate meaningful litigation over what should be withheld— undermines the public's efforts to fairly evaluate NDOC's efforts to keep information about executions secret, and prohibits the public from understanding and evaluating the court's decisions on these matters. Moreover, permitting NDOC to submit a privilege log under seal without making particular findings as to why the sealing of a routine litigation document violates the first amendment standards governing the sealing of court records. Accordingly, the Review-Journal now moves this Court to unseal any privilege log NDOC submits to support its assertions that information pertaining to NDOC's execution protocol in this matter are protected from disclosure by the deliberative process privilege.

Further, to the extent that this Court is entertaining the possibility of sealing other records or hearings in this matter, the Court should not do so unless and until both the substantive and procedural requirements for sealing are met.

## II. RELEVANT FACTS AND PROCEDURAL HISTORY

On May 6, 2021, during a hearing on Defendants' Motion for Protective Order, this Court directed NDOC to submit to the Court under seal both copies of documents and

2

1  communications it asserts are entitled to protection pursuant to the deliberative process
2  privilege, as well as a privilege log detailing the bases for NODC's privilege assertions. Upon
3  information and belief, the Court agreed to allow NDOC to submit these documents under
4  seal and directed NDOC to do so by not later than Monday, May 10, 2021. Today, by letter
5  to the Court (ECF No. 54), counsel for NDOC requested until Tuesday, May 11, 2021, to do
6  so.

**III.   ARGUMENT**

    **A.   Legal Standard**

In *Richmond Newspapers v. Virginia*, 448 U.S. 555, 564-75 (1980), the Supreme Court, applying the First Amendment, examined at great length the history of openness in trials and its importance to the public. The Court held, "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing. When a criminal trial is conducted in the open, there is at least an opportunity both for understanding the system in general and its workings in a particular case." *Id.* at 572. Therefore, the Supreme Court held, "the right to attend criminal trials is implicit in the guarantees of the First Amendment; without the freedom to attend such trials, which people have exercised for centuries, important aspects of freedom of speech and 'of the press could be eviscerated.' [Internal citations omitted.]" *Id.* at 556-557. As a result, "the First Amendment guarantees of speech and press, standing alone, prohibit government from summarily closing courtroom doors which had long been open to the public at the time that amendment was adopted." *Id.* at 576.

The public right of access to court proceedings dates back to England and colonial America. *See Richmond Newspapers*, 448 U.S. at 564 ("throughout its evolution, the trial has been open to all who care to observe"). New Jersey's colonial charter, for instance, allowed "any person or persons" to "freely come" to civil or criminal trials. *Id.* at 567 (citation omitted).

The First Amendment right of access is based on the historic openness of criminal proceedings, and the same rationale leads to the conclusion that the right applies to civil

3

cases, as well. The Supreme Court, itself, has suggested civil and criminal cases are indistinguishable in this regard. *Richmond Newspapers*, 448 U.S. at 580, n.17 ("Whether the public has a right to attend trials of civil cases is a question not raised by his case, but we note that historically both civil and criminal trials have been presumptively open.") Once again, not surprisingly, the vast majority of Circuits have found the public has a First Amendment right of access in civil cases. *See, e.g., Courthouse News Serv. v. Planet*, 947 F.3d 581, 591 (9th Cir. 2020) (holding "both our common experience and the logical extension of First Amendment principles lead to the conclusion that [t]he press's right of access to civil proceedings and documents fits squarely within the First Amendment's protections") (quotation omitted; alteration in original);*N.Y. Civil Liberties Union v. NYC Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2011); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984); *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 700 (6th Cir. 2002).

In addition, it is firmly established that once a First Amendment right of access attaches to a judicial proceeding or judicial records, the public enjoys a right of contemporaneous access. *See, e.g., Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126-27 (2d Cir. 2006) ("Our public access cases and those in other circuits emphasize the importance of immediate access where a right of access is found." (emphasis added) (citations omitted)); *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) (public access to documents in court's file "should be immediate and contemporaneous"). This tradition of openness "serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp" for law enforcement. *In re Application of New York Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 90 (D. D.C. 2008). As the Supreme Court has observed, "[d]elays imposed by governmental authority" are inconsistent with the press' "traditional function of bringing news to the public promptly." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 560-61 (1976).

Even apart from the First Amendment, the federal common law provides independent grounds for the public's right to access judicial records. *See Nixon v. Warner*

*Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) ("the courts of this country recognize a general right to inspect and copy . . . judicial records and documents"); *In re NBC*, 653 F.2d 609, 612 (D.C. Cir. 1981) ("existence of the common law right to inspect and copy judicial records is indisputable"); *Phoenix Newspapers v. United States Dist. Court*, 156 F.3d 940, 946 (9th Cir. 1998) (holding that the common law creates "a strong presumption" in favor of general public access to records). The common law access right "is not some arcane relic of ancient English law," but rather "is fundamental to a democratic state." *United States v. Mitchell*, 551 F.2d 1252, 1258(D.C. Cir. 1976), *rev'd on other grounds sub nom. Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589. The common law right of access to judicial records exists to ensure that courts "have a measure of accountability" and to promote "confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).

This presumed right of access to court records can be overcome only by an overriding right or interest "based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 829 (9th Cir. 2020) (quoting *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 9 (1986) ("*Press-Enterprise II*")).  "The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510, 78 L. Ed. 2d 629, 104 S. Ct. 819 (1985) ("*Press-Enterprise I*"). Any order denying access to documents and proceedings in this case must satisfy both the procedural and substantive requirements of the First Amendment. *Oregonian Pub. Co. v. U.S. Dist. Court for Dist. of Oregon*, 920 F.2d 1462, 1466 (9th Cir. 1990). The Ninth Circuit has articulated a two-part test to determine whether the procedural requirements for depriving the public of access to criminal proceedings or documents has been met:

> (1) those excluded from the proceeding must be afforded a reasonable opportunity to state their objections; and (2) the reasons supporting closure must be articulated in findings. *See [United States v.] Brooklier,* 685 F.2d [1162] at 1167–68 (9th Cir. 1982); *In re Washington Post,* 807 F.2d at 390–91 (test applicable to sealed records of a plea hearing). An order of closure should include a discussion of the interests at stake, the applicable

constitutional principles and the reasons for rejecting alternatives, if any, to closure. *See Brooklier,* 685 F.2d at 1168.

*Id.*; *see also Phoenix Newspapers,* 156 F.3d at 949 (". . . if a court contemplates sealing a document or transcript, it must provide sufficient notice to the public and press to afford them the opportunity to object or offer alternatives").

A party seeking to seal a judicial record "bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard." *Kamakana*, 447 F.3d at 1178. This presumption "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 9 (quotation omitted). Under this stringent standard, a court may seal records only when it finds "a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* at 1179. The court must then "conscientiously balance[] the competing interests of the public and the party who seeks to keep certain judicial records secret." *Kamanka*, 447 F.3d at 1178 (quoting *Foltz*, 331 F.3d at 1135) (alteration in original) (internal quotation marks omitted).

**B.    The State Has Not and Cannot Demonstrate a Compelling Reasons Justify the Sealing of its Privilege Log.**

Under the First Amendment, the press and the public have a presumed right of access to court proceedings and documents. *See generally Press-Enterprise I*, 464 U.S. at 510. The law of this circuit and the common law also "start with a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1134 (9th Cir. 2003); *see also Kamakana v. City and County of Honolulu,* 447 F.3d 1172, 1178 (9th Cir. 2006) ("Historically, courts have recognized a general right to inspect and copy public records and documents, including judicial records and documents.") "The presumption of access is "based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quotation omitted).

Accordingly, "[a] party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the 'compelling reasons' standard." *Kamakana*, 447 F.3d at 1178. Under that standard, a party seeking to seal a court record must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure. *Id.* (quotations omitted).

The Ninth Circuit has rejected efforts to seal documents under the "compelling reasons" standard based on "conclusory statements about the contents of the documents—that they are confidential" and that, in general, their disclosure would be harmful to the movant. *Id.* at 1182; *see also Vaccine Ctr. LLC v. GlaxoSmithKline LLC*, 2013 U.S. Dist Lexis 68298, *5-6 (D. Nev. May 14, 2013) (finding insufficient general assertions regarding confidential nature of documents). Such "conclusory offerings do not rise to the level of 'compelling reasons' sufficiently specific to bar the public access to the documents." *Kamakana*, 447 F.3d at 1182. "Lastly, any request to seal documents must be 'narrowly tailored' to remove from the public sphere only the material that warrants secrecy." *Florence v. Cenlar Fed. Sav. & Loan*, No. 2:16-cv-00587-GMN-NJK, 2017 U.S. Dist. LEXIS 40489, at *5 (D. Nev. Mar. 20, 2017)

The factors relevant to a determination of whether the strong presumption of access is overcome include the "public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *EEOC v. Erection Co., Inc.*, 900 F.2d 168, 170 (9th Cir. 1990) (citing *Valley Broadcasting Co. v. United States Dist. Court*, 798 F.2d 1289, 1294 (9th Cir. 1986)). In sealing a judicial records, the court must "conscientiously balance[] the competing interests of the public and the party who seeks to keep certain judicial records secret." *Kamanka*, 447 F.3d at 1179 (quoting *Foltz*, 331 F.3d at 1135) (alteration in original) (internal quotation marks omitted). After taking all relevant factors into consideration, a court must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture. *Valley Broadcasting*, 798 F.2d at 1295.

1. The sealing of the privilege log ordered by the Court in this matter does not comport with this precedent. In its motion for a protective order (ECF No. 37), NDOC sought a protective order limiting Mr. Floyd's ability to question NDOC Director Charles Daniels about the execution protocol NDOC intends to use in executing him on the grounds that such questioning would "necessarily require delving into predecisional information" that is protected by the deliberative process privilege. (ECF No. 37, p. 7:14-16.) At the hearing on May 6, 2021, this Court ordered NDOC to submit under seal a privilege log regarding the documents and information it has in its possession pertaining to the protocol NDOC intended to use in executing Mr. Floyd.

The privilege log itself does not merit sealing because it does not contain privilege information. Rather, the purpose of a privilege log is to provide non-privileged information as part of the process of determining whether allegedly privileged information should be withheld. Such a log is critical here to the public's ability to assess the merits of NDOC's assertions that these documents are protected by the deliberative process privilege. "The very purpose of a privilege log is to allow a fair way to test a claim of privilege." *Redeker v. Cox*, No. 2:15-cv-00927-RFB-VCF, 2017 U.S. Dist. LEXIS 97288, at *24 n.4 (D. Nev. June 22, 2017). But the public cannot test NDOC's assertions in this case if NDOC is permitted to conceal basic information about the withheld records, "thereby relegating it to advocating from a nebulous position where it is powerless to contest a claim of confidentiality." *Reno Newspapers, Inc. v. Gibbons*, 127 Nev. 873, 882, 266 P.3d 623, 629 (2011) (citing *Vaughn v. Rosen*, 484 F.3d 820, 823 (D.C. Cir. 1973).)

Further, the Court's informal in-court directive granting NDOC permission to submit the privilege log under seal does not suffice. As noted above, in order to seal a court record, a court must, *inter alia*, articulate the factual basis for its ruling. *Valley Broadcasting*, 798 F.2d at 1295. In this case, the court did not make any factual findings that justify the extraordinary action of permitting NDOC to seal its privilege log.

///

///

**C.     The Court Should Not Seal Any Hearing in This Matter Without Allowing the Review-Journal an Opportunity to be Heard.**

"The presumption of access to judicial proceedings flows from an unbroken, uncontradicted history rooted in the common law notion that justice must satisfy the appearance of justice." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573-74 (1980) (quotation omitted) *accord Courthouse News Serv. v. Planet*, 947 F.3d 581, 589 (9th Cir. 2020) "The right of access is thus an essential part of the First Amendment's purpose to ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 785 (9th Cir. 2014) (quotation omitted).

Though the Supreme Court originally recognized the First Amendment right of access in the context of criminal trials, *see Richmond Newspapers*, 448 U.S. 555[1], federal courts widely agreed that it extends to civil proceedings. *See, e.g.*, *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth*., 684 F.3d 286, 305 (2d Cir. 2011) (finding a right of access to administrative civil infraction hearings); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1061 (3d Cir. 1984) ("We hold that the First Amendment does secure a right of access to civil proceedings."); *In re Cont'l Ill. Sec. Litig*., 732 F.2d 1302, 1308 (7th Cir. 1984) (finding a right of access to litigation committee reports in shareholder derivative suits); *Westmoreland v. Columbia Broadcasting System, Inc*., 752 F.2d 16  (2d Cir. 1984) (public and press have First Amendment right to attend, but not to televise, civil trial); *Newman v. Graddick*, 696 F.2d 796 (11th Cir. 1983); *cf. Del Papa v. Steffen*, 112 Nev. 369, 915 P.2d 245 (1996) (First Amendment right of access applies to state high court's review of judicial disciplinary proceedings).

In the context of criminal proceedings, the Ninth Circuit has established three procedural requirements that must be met. First, the court must hold a hearing on any closure

---

[1] Although the *Richmond* Court did not consider the public's right to attend trials of civil cases, it did "note that historically both civil and criminal trials have been presumptively open." *Richmond Newspapers*, 448 U.S. at 580 n.17.

9

1 motion. *United States v. Sherlock*, 962 F.2d 1349, 1358 (9th Cir. 1992). Second, the court must make factual findings to support the closure. *Id.* (citations omitted). Finally, the court must consider reasonable alternatives to closing the courtroom. *Id.*

Because the public has a presumptive right of access to proceedings in civil matters and criminal matters, this Court cannot exclude the public from any hearings in this matter without first permitting the Review-Journal an opportunity to present objections to the closure of court proceedings. Accordingly, if the Court intends to limit public access to any hearing in this matter, the Review-Journal requests that it first conduct a hearing to permit the Review-Journal to present its objections.

## IV.   CONCLUSION

For the foregoing reasons, the Review-Journal requests that this Court unseal any privilege log submitted by NDOC. Further, to the extent the Court intends to limit public access to any hearing in this matter, the Review-Journal is entitled to an opportunity to object.

DATED this 7th day of May, 2021.

/s/ Margaret A. McLetchie
Margaret A. McLetchie, Nevada Bar No. 10931
Alina M. Shell, Nevada Bar No. 11711
**MCLETCHIE LAW**
701 East Bridger Ave., Suite 520
Las Vegas, NV 89101
Telephone: (702) 728-5300; Facsimile: (702) 425-8220
Email: maggie@nvlitigation.com
*Counsel for Intervenor, Las Vegas Review-Journal, Inc.*