AARON D. FORD
 Attorney General
D. Randall Gilmer (Bar No. 14001)
 Chief Deputy Attorney General
State of Nevada
Office of the Attorney Generals
555 E. Washington Ave., Ste. 3900
Las Vegas, Nevada 89101
Telephone: (702) 486-3427
Facsimile:  (702) 486-3773
Email: DGilmer@ag.nv.gov

*Attorneys for Defendants Daniels,*
*Wickham, Gittere, Reubart, Drummond,*
*Minev, Green and Fox (NDOC Defendants)*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ZANE M. FLOYD,<br><br>                    Plaintiff,<br><br>v.<br><br>CHARLES DANIELS, DIRECTOR, NEVADA DEPARTMENT OF CORRECTIONS, ET AL.,<br><br>                    Defendants. | Case No. 3:21-cv-00176-RFB-CLB<br><br>**NDOC DEFENDANTS' OPPOSITION TO PLAINTIFF'S SUPPLEMENTAL MOTION FOR PRELIMINARY INJUNCTION AND STAY OF EXECUTION (ECF NO. 98)[1]** |

Defendants, Charles Daniels, Harold Wickham, William Gittere, William Reubart, David Drummond, Dr. Michael Minev, Dr. David Green, and Linda Fox (collectively, "NDOC"), by and through counsel, Aaron D. Ford, Attorney General for the State of Nevada, and D. Randall Gilmer, Chief Deputy Attorney General, hereby provide their opposition to Plaintiff's Supplemental *Motion for Preliminary Injunction and Stay of Execution* (Floyd's Motion).

## I.    INTRODUCTION

Plaintiff, Zane Floyd (Floyd), continues to seek to stay the enforcement of his jury-issued and legally valid death sentence without reliance on any medical expert declaration or affidavit, or even

---

[1] NDOC continues to reserve the right to challenge the Federal Public Defender's Office representation of Plaintiff, Zane Floyd, in this 42 U.S.C. § 1983 action. *See* 18 U.S.C. § 3006A; Guide to Judicial Policy, Vol. 7A, at 5–6 § 210.20.20  (failing to indicate Congressional authority to represent an individual in a *civil* action bringing 42 U.S.C. § 1983 claims); Guide at 7–8, § 210.20.50(c) which provides that "[p]risoners bringing civil rights actions under 42 U.S.C. § 1983" are not "[c]ases or proceedings . . . *covered by* or *compensable* under the CJA" (emphasis added). A copy of this document is located at https://www.uscourts.gov/sites/default/files/vol_07.pdf, last accessed on April 27, 2021.

citations to any medical or scientifically-reliable journals or articles. Although NDOC understands his desire to stave off this sentence if possible, he has provided no medical support for his conclusory statements that the protocol chosen by Director Daniels (NDOC Protocol) will violate his Eighth Amendment rights. More specifically, he has provided no declarations, affidavits, or even citations to medical or scientific journals for his proposition that the use of chosen drug options would result in any pain, let alone pain that rises to the level of cruel and unusual punishment. To the contrary, NDOC has attached declarations from medical and pharmacological experts opining to the efficacy and humane manner in which the NDOC Protocol will bring about death. Floyd's lack of contrary opinion on this point means that, for purposes of his request for an injunction or stay, NDOC's experts' opinions are undisputed.

The lack of any medical evidence rebutting the appropriateness of the NDOC Protocol also ends any inquiry into Floyd's two proposed alternative means to carry out the execution. Without any medical evidence as to what, if any, pain Floyd may feel during the process, Floyd provides no foundation for the Court to conduct a comparison between NDOC's protocol and either a firing squad or the one-drug alternative of pentobarbital or sodium thiopental. In addition to Floyd's inability that his alternative methods would substantially reduce the risk of serve pain as required under the Eighth Amendment, given that the firing squad is not a statutorily available option in Nevada and that pentobarbital or sodium thiopental are not available for purchase by the NDOC under ordinary transactional means, Floyd cannot establish that either alternative is a reasonable and readily available alternative to the NDOC Protocol.

Floyd therefore cannot establish any of the for necessary legal elements necessary before this Court takes the extraordinary step of staying a lawfully scheduled execution.

The motions for injunctive relief and a stay must be denied.

## II.     STATEMENT OF FACTS[2]

### A.     The NDOC Protocol

On June 9, 2021, Director Daniels finalized and approved the NDOC Protocol as it relates to the executions of condemned inmates. Specifically, NDOC will use either a three- or four-drug protocol

---

[2] Floyd spends a great deal of time discussing the State of Nevada's efforts to carry out the legally imposed sentence of Scott Dozier in 2018. *See* ECF No. 4:15-6:3. As those issues have nothing to do with this lawsuit, NDOC will not address these issues in this opposition.

consisting of (1) either fentanyl or alfentanil; (2) ketamine, (3) cisatracuriam (if a paralytic is used in the four-drug protocol) and (4) potassium chloride or potassium acetate, in the following dosages:

- 2,500 micrograms of fentanyl or 25,000 micrograms of alfentanil;[3]

- 1,000 milligrams[4] of ketamine;

- 200 milligrams of cisatracuriam;[5] and

- 240 milliequivalents of either potassium chloride or potassium acetate.[6]

The NDOC Protocol also requires the availability of additional amounts of each drug should they be needed.[7]   The NDOC Protocol further provides that the contents of each of these drugs, with the exception of cisatracuriam, will be injected within at a rate of two minutes or less, and that the cisatracuriam will be injected over the course of one minute.[8] There is also a two minute waiting period before proceeding from the injection of fentanyl/alfentanil to ketamine, followed by a one minute waiting period before proceeding to cisatracuriam (or potassium chloride/acetate if not using cisatracuriam) and a two minute waiting period between the injection of cisatracuriam and potassium chloride/acetate.[9]

Assuming no additional medication is called for, the time from the first injection of fentanyl/alfentanil to the final drug will be approximately twelve (12) minutes or nine (9) minutes depending on whether the four- or three-drug protocol is used,[10] plus the amount of time the medical personnel need to perform any necessary consciousness checks between each injection.[11]

---

[3] ECF No. 93-1 at 24; ECF No. 99-1 at 5.

[4] ECF No. 93-1 at 25; ECF No. 99-1 at 6.

[5] ECF No. 93-1 at 25, 60; ECF No. 99-1 at 6.

[6] ECF No. 93-1 at 25, 61; ECF No. 99-1 at 7.

[7] ECF No. 93-1 at 24-25.

[8] *Id*. at 59-60; ECF No. 99-1 at 5-7.

[9] *Id*.

[10] *Id*.

[11] *Id*.

**B. Nebraska Used Similar Dosages and Concentrations of Three of These Four Drugs To Complete a Successful Execution**

While Floyd's Motion notes these drug names and concedes that the NDOC Protocol "additionally specifies dosages, concentrations, and preparation instructions,"[12] it is devoid of any discussion of those dosages, sequencing, or concentrations. Rather, Floyd focuses solely on the conclusory and unsupported statement that "these drugs combined create a substantial risk that [his] execution will involve unconstitutional pain and suffering."[13]

Floyd also fails to point out that the State of Nebraska used three of these four drugs, in substantially similar dosages amounts to execute inmate Carey Moore in August of 2018.[14] There, Nebraska used a then "untried drug cocktail of diazepam, fentanyl, cisatracuriam, and potassium chloride."[15] Yet, it was successful.[16]

On March 7, 2018, the United States Department of Justice (USDOJ) issued a Memorandum entitled "Use of Fentanyl in Executions."[17] Pursuant to the USDOJ, Nebraska's protocol called for the use of fentanyl in the amount of "25 micrograms of fentanyl per kilogram of body weight," cisatracuriam in the amount of "1.6 milligrams per kilogram of body weight," and "240 milliequivalents of potassium chloride."[18] Floyd's current weight is listed as 185 lbs., or 83.9146 kilograms.[19]  Based on this weight, Nebraska (per the USDOJ) would have injected Floyd with 2,097.865 micrograms[20] of fentanyl and 134.26336 milligrams[21] of cisatracuriam—both lower than the amount called for under the Nevada

---

[12] ECF No. 98 at 11:4–5.

[13] *Id.* at 14:17–18.

[14] *See* https://www.bbc.com/news/world-us-canada-45185687, *Nebraska first in US to use opiod fentanyl in execution*, August 14, 2018, last accessed June 21, 2021, attached hereto as **Exhibit A at APP00002-5**.

[15] *Id.*

[16] *Id.*

[17] *See* March 7, 2018 Memorandum for the Attorney General, publicly available at https://www.documentcloud.org/documents/20425408-admin-record-bop-protocol#document/p867, last accessed June 19, 2021, attached hereto as **Exhibit B at APP00007-10**.

[18] *Id.*

[19] Inmate Search for Zane Floyd, attached as **Exhibit C at APP00012-13**, publicly accessible at https://ofdsearch.doc.nv.gov/, last accessed June 19, 2021.

[20] 25 x 83.9146 = 2,097.865.

[21] 1.6 x 83.9146 = 134.26336.

Protocol. The amount of potassium chloride would have been the same—240 milliequivalents.

Therefore, while Floyd is correct the Nevada Protocol has not been used before, given the similarity between the successful Nebraska protocol and the Nevada Protocol, these are crucial and undisputed facts Floyd should have addressed in his Motion. He did not. Instead, he avoided any mention of the Nebraska execution.

### C.   Neither Firing Squad nor Pentobarbital Are Available to NDOC[22]

NDOC provides two crucially important undisputed facts here:

- The State of Nevada allows only lethal injection as the method for carrying out a death sentence under NEV. REV. STAT. (NRS) 176.355 *et seq*; and

- NDOC does not have the ability to obtain either pentobarbital or sodium thiopental by using ordinary transactional means.

As to this first undisputed fact, the statutory language speaks for itself.

As to the second, Cardinal Health is the ordinary means in which NDOC purchases its medications.[23]  Director Daniels is committed to purchasing the drugs for the Nevada Protocol consistent with NDOC's ordinary transactional means for purchasing medications.[24]  Because of this commitment, Director Daniels previously represented that midazolam would not be available for the NDOC Protocol because he had "investigated and determined that the NDOC does not have the ability to purchase or otherwise obtain midazolam."[25]

The same is true for both pentobarbital and sodium thiopental.[26]

The inability to purchase these medications through ordinary transactional efforts is summed up by two screenshots from the Cardinal Health order portal that NDOC ordinarily utilizes to purchases medications.[27]  Those screenshots, attached as Attachment 2 to Chief Fox's declaration, state the

---

[22] NDOC will address why Floyd has not met his burden that either firing squad or a single dose pentobarbital or sodium thiopental would meet the legal and medical requirement of "significantly reduc[ing] a substantial risk of several pain" over the NDOC Protocol in Section IV.A.2.a.(3), *infra*.

[23] Declaration of Linda Fox at 2, ¶ 5, attached as **Exhibit D at APP00016.**

[24] Declaration of Charles Daniels at 3, ¶ 10, **attached as Exhibit E at APP00031**.

[25] ECF No. 22–10 at 4, ¶¶ 9–12.

[26] **Ex. E at 3, ¶¶ 9, 11-14 at APP00031;** *see also* **Ex. D at 3-4, ¶¶ 11-18 at APP00017-18 and Attachment 2 at APP00024-26**.

[27] **Ex. E at 3, ¶ 15 and Attachment 2 at APP00024-26**.

following in clear and unambiguous terms for both drugs: "this product(s) is ineligible to order."[28]  Chief Fox attests that this has been the case since before NDOC's attempts to obtain mediations for Scott Dozier's execution through the present day.[29]

Unlike pentobarbital and sodium thiopental, each drug contained in the NDOC Protocol either is or was eligible for purchase at the time NDOC made the orders and purchases.[30] Director Daniels therefore instructed Chief Fox to purchase alfentanil, ketamine, cisatracuriam, and potassium acetate after he concluded those medications were appropriate to carry out the sentence without causing cruel or unusual punishment and after he confirmed with Chief Fox that those drugs were available for purchase through the ordinary means by which NDOC purchases medications.[31] Indeed, each of these four medications are still available for purchase—though to varying degrees.[32]

Director Daniels also authorized Chief Fox to purchase additional fentanyl and potassium chloride.[33] However, neither fentanyl nor potassium chloride were available for purchase at that time.[34] Therefore, Chief Fox ordered the stock of fentanyl and potassium chloride in NDOC's possession after former Director James Dzurenda authorized the purchase.[35] NDOC purchased ketamine under both Director Dzurenda and Director Daniels.[36]

The invoices confirming the purchases for each of these medications have been provided to Floyd and the public.

---

[28] *Id.*

[29] **Ex. D at 3, ¶¶ 11-12 at APP00017.**

[30] *Id.* at 2-3, ¶¶ 7-10 at APP00016-17 and Attachment 1 at APP00019-23, APP00027 (inadvertently numbered incorrectly when being bates; in proper order in Appendix).

[31] *Id.* at 2-3, ¶¶ 8, 10 at APP00016-17; **Ex. E at 3, ¶¶ 14-15 at APP00031.**

[32] **Ex. D at 3, ¶ 10 and Att. 1 (screenshots noting drugs eligible for purchase).**

[33] **Ex. D at 2, ¶ 8 at APP00016; Ex. E at 3, ¶ 14 at APP00031.**

[34] **Ex. D at 2, ¶ 9 at APP00016; Ex. E at 3, ¶ 16 at APP00032.**

[35] **Ex. D at 2, ¶ 7 at APP00016; Ex. E at 3, ¶ 16 at APP00032.**

[36] **Ex. D at 2, ¶¶ 7, 9 at APP00016; Ex. E at 2-3, ¶¶ 15-16 at APP00031-32.**

## III.   FLOYD CANNOT MEET THE HIGH BURDEN FOR EITHER AN INJUNCTION OR STAY

As permitted by this Court,[37] NDOC specifically incorporates by reference the standards for injunctive relief and a stay previously provided to this Court in NDOC's filings on April 30, 2021, at ECF Nos. 22 at 4:18–6:10 and ECF No. 25 at 7:1–7:20 as if fully set forth herein.  In short, those factors require Floyd to show (1) a likelihood of success on the merits, (2) irreparable harm, (3) a balancing of the equities, and (4) whether a stay or injunction is in the public interest.[38] Floyd must make "*a clear showing* that [he] is entitled to such [extraordinary] relief."[39] It is never awarded by right[40]—and an impending execution date does not change this legal fact.[41]

Floyd has not made, and cannot make, this clear showing.

## IV.   NEITHER A STAY NOR INJUNCTION IS APPROPRIATE

Floyd glosses over his inability to make the required clear showing, asking this Court to "consider the parties' conduct in the litigation."[42] NDOC welcomes such a consideration. It has acted ethically, above board, and, to the extent possible without waiving crucially important, and well-established privileges, in an open and public manner. But reviewing those considerations does not relieve Floyd from his heavy legal burden to show he is entitled to a stay or injunction.

Floyd attempts to support this argument by referencing *Towery v. Brewer*[43] where the Ninth Circuit expressed frustration with the Arizona Department of Corrections' last minute change from a three-drug to a one-drug protocol less than 48 hours before the scheduled execution.[44] Arizona's actions there are wholly distinguishable from NDOC's here, using sufficient time to ensure its protocol is

---

[37] ECF No. 96 at 11:21–12:4. Despite this Court's clear intent and instruction, Floyd failed to incorporate anything by reference into his Motion.

[38] *Winter v. Natural Resources*, 555 U.S. 7, 24 (2008) (injunctive relief factors); *United States v. Mitchell*, 971 F.3d 993, 996 (9th Cir. 2020) (citing *Nken v. Holder*, 556 U.S. 418, 433 (2009)) (stay factors).

[39] *Tandon v. Newsom*, 992 F.3d 916, 917 (9th Cir. 2021) (quoting *Winters*, 555 U.S. at 22) (emphasis added).

[40] *Winter*, 555 U.S. at 24.

[41] *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004).

[42] ECF No. 98 at 11:9–10.

[43] 672 F.3d 650 (9th Cir. 2012).

[44] *Towery*, 672 F.3d at 652.

constitutional, correct, and available for public dissemination to the extent possible without jeopardizing safety and security of individual employees and inmates. Further, even though the actions frustrating the Ninth Circuit in *Towery* are dissimilar, even there, the Circuit concluded the District Court properly denied a preliminary injunction even though Arizona amended its protocol less than 48 hours before scheduled execution, after the appeal was filed, and mere hours before oral argument before the Ninth Circuit.[45]

Here, NDOC completed its protocol and provided it to Floyd as soon as it was finalized – more than 6 weeks before the putative execution week of July 26, 2021 – assuming the warrant is issued. NDOC also informed Floyd's counsel of the drugs that would be used in the protocol before the protocol was officially finalized. This is a far cry from the facts of *Towery*—and the Ninth Circuit still denied a stay on those facts.[46]

### A.   Floyd Is Not Entitled to A Stay or Injunction[47]

The *Towery* plaintiff was not entitled to a stay or injunction; nor is Floyd.

#### 1.   Floyd Still Has Not Sought Administrative Remedies

While Floyd now has standing to challenge the NDOC Protocol, he still failed to exhaust administrative remedies. That was true on April 16, 2021—when Floyd filed his Complaint for Injunctive and Declaratory Relief—and it remains true today.  The Supreme Court has made clear that the administrative exhaustion requirement is textually required and cannot be excused by the courts.[48]

---

[45] *Id.* at 652-53.

[46] *Id.* at 661.

[47] NDOC acknowledges that Floyd's Motion for Stay and Injunction is now ripe for consideration, given that the NDOC Protocol was finalized on June 9, 2021. However, Floyd moved too soon when he sought a stay and injunction before the protocol was finalized as he could not take issue with drugs or combination of drugs that had not yet been chosen, i.e., he had no way of knowing if his alternative method would be "substantially better." Thus, while NDOC concedes Floyd sought the stay as early as possible, his decision to seek relief before knowing the protocol drugs evidences his true motivation is an attack on the underlying legally and constitutionally imposed sentence, and not on the drug cocktail which is to be used to carry out the sentence.  Since Floyd has invited this Court to look at "the parties' conduct," NDOC believes Floyd's actions are also relevant to the availability of equitable relief. To be sure, NDOC understands and sympathizes with Floyd's position, but the circumstances do not render the usual understanding of equity and clean hands obsolete.

[48] *Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1856-57 (2016); *see also Swain v. Junior*, 958 F.3d 1081, 1091–92 (11th Cir. 2020); *Valentine v. Collier*, 956 F.3d 797, 804 (5th Cir. 2020).

Accordingly, NDOC incorporates the legal arguments set forth on pages 10–12 of its previous responses located at ECF No. 22 and ECF No. 23 as if fully set forth herein.

### 2. Floyd Cannot Establish the Four Necessary Factors

NDOC incorporates by reference its previous argument as to why neither an injunction or stay are appropriate in this case.[49] That being said, NDOC will now show why what was true remains true, if not to a greater extent, now.

#### a. Floyd Cannot Show A Likelihood of Success on the Merits

##### (1) The "Novel" Use of Ketamine Does Not Support A Stay

Floyd first claims a likelihood of success on the merits given the previous lack of any litigation pertaining to the use of ketamine in an execution protocol.[50] However, the lack of litigation does not establish a likelihood of success. This is especially true when Floyd failed to provide this Court with any declarations or affidavits from any medical or scientific expert pertaining to the use of ketamine in general, or as part of the NDOC Protocol specifically. Not only did Floyd fail to provide declarations or affidavits, but he has also not provided citations to medical or scientific journals, research, studies, or other documents that would support his conclusory statements. Floyd's counsel have not demonstrated that they are duly licensed and authorized medical practitioners qualified to reach such conclusions without appropriate documentation and support.

Floyd relies on the Fifth Circuit case of *Whitaker v. Livingston* for the proposition that because ketamine is not pentobarbital or some other oft-used medication in an execution protocol, a stay is appropriate.[51] *Whitaker* is not that broad.

*Whitaker* notes that "the case *might* be different" if a state was "using a drug never before used or unheard of"—it does not say it *would* be different.[52] More to the point, even if *Whitaker* would permit a stay in those instances, *Whitaker* still requires a plaintiff to "point to *some* likelihood that such pain will

---

[49] ECF No. 22 at 13:1–17:3; ECF No. 23 at 13:1–17:3; ECF No. 25 at 9:13–13:16 (The only exception to this incorporation is to the extent the previous arguments in those sections refer to the lack of any execution order, as that the execution order has now been issued).

[50] *See*, *e.g.*, ECF No. 98 at 11:11-12:14.

[51] 732 F.3d 465, 468 (5th Cir. 2013).

[52] *Whitaker*, 732 F.3d at 468 (emphasis added).

be severe and that some alternative may exist" before agreement to provide additional time.[53] *Whitaker* plainly states "[i]t is unacceptable to claim that some unspecified amount of time is required, just in case *they might happen to be able to show that there might be some risk of potentially excessive pain*."[54] To be sure, Floyd claims he does not seek "to prevent the State from ever carrying out his sentence"[55] (although the inclusion of firing squad as an alternative makes this statement ring hollow). Unfortunately, the lack of any medical support or proffer of medical evidence that supports Floyd's contention leaves this Court with no evidence upon which it can rely to grant his motion. Consequently, this Court must deny Floyd's Motion without providing additional time or any further hearings.

In addition, while the protocol in the plethora of litigation styled *In re Ohio Execution Protocol* did not involve ketamine, its potential use as an anesthetic on par with thiopental (one of Floyd's requested alternative medications that remains unavailable to NDOC) has been discussed in the context of that case since at least 2017. Specifically, the United States District Court for the Southern District of Ohio noted a study that "found [] midazolam or a mixture of midazolam and ketamine were 'safe and effective induction agents for emergency surgery' which may have had advantages over thiopental, which is a complete anesthetic."[56] The court also referenced ketamine in the same litigation two years prior on January 26, 2017, when it noted the expert's statement that "thiopental, propofol, etomidate, or ketamine" were all preferred over midazolam in the context of intubation procedures.[57] In other words, NDOC has replaced midazolam—the drug at the center of the Dozier Protocol–with ketamine, which, like Floyd's requested alternative is viewed by certain experts as a preferred alternative to midazolam.

Further, Floyd's citations to several cases for the proposition that "cases denying stays" generally do so because they involve "an established protocol"[58] does not assist him. Indeed, in several of those

---

[53] *Id.* (emphasis in original).

[54] *Id.* (emphasis added).

[55] ECF No. 98 at 21:17–18.

[56] *In re Ohio Execution Protocol Litigation*, Case No. 2:11-cv-1016, 2019 WL 244488, * 56 (S.D. Ohio Jan. 14, 2019).

[57] *In re Ohio Execution Protocol Litigation*, 235 F. Supp.3d 892, 928 (S.D. Ohio 2017), *vacated on other grounds*, *In re Ohio Execution Protocol*, 860 F.3d 881 (6th Cir. 2017) (noting "inmates did not show that . . . pentobarbital was feasible and could be readily implemented).

[58] ECF No. 98 at 13:15–21 (collecting cases).

cases, courts denied stays (either originally or on appeal) even though there was a "battle of experts" present.[59]

Finally, while Floyd correctly states he was first informed ketamine would be in the NDOC Protocol on June 3, 2021,[60] Floyd informed this Court as early as May 5, 2021, that he believed ketamine may be under consideration, stating he had "reason to believe that one of the crucial drugs NDOC may disclose for the protocol was in its possession at the time [Dr.] Azzam consulted with former NDOC Director James Dzurenda regarding the lethal injection drugs to be used in the execution of Scott Dozier in *July of 2018*."[61]

Accordingly, while Floyd did not know the NDOC would use ketamine in the protocol, he was on notice that it might be under consideration—and his counsel presumably knew this for several years. He therefore cannot now claim he needs "more time" to locate an expert to opine on such issues. And this Court cannot overlook such failure when Floyd fails to provide any medical journals, articles, research, or other scientifically reliable evidence for his conclusory statements regarding the alleged unconstitutional nature of the use of ketamine. His time to challenge the efficacy of ketamine is now. And he did so based only on legal argument and conclusory statements with absolutely no factual support.

### (2)   Floyd Cannot Establish the Chosen Drugs Violate the Constitution

Floyd next attempts to establish a likelihood of success by challenging the use of all the drugs contained in the NDOC Protocol. Before providing a point-by-point rebuttal of Floyd's unsupported assertions, NDOC again notes Floyd's total lack of declarations, affidavits, or citations to medical or scientific articles, journals, studies, research, or other generally acceptable documentation in support of his medical conclusions. Floyd's failure to provide reliable, admissible evidence for his conclusory medical statements are not appropriate or legally sufficient, and this Court must therefore ignore the unsupported medical conclusions without further inquiry.

---

[59] *See*, e.g., *Barr v. Lee*, 140 S. Ct. 2590, 91-92 (contrary expert opinions about pulmonary edema being caused by pentobarbital).

[60] ECF No. 98 at 10:13 (emphasis added).

[61] ECF No. 45 at 5:18–6:3 (emphasis added); *see also* ECF Nos. 48 and 48–1 (invoice for ketamine dated May 23, 2017).

Nonetheless, given the serious and time-sensitive nature of this proceeding, NDOC provides this Court with reliable, admissible, medical evidence rebutting or contradicting Floyd's unsupported medical conclusions. This undisputed evidence makes clear that neither a stay nor injunction is appropriate.

### (a)   Fentanyl or Alfentanil Is Appropriate

Floyd challenges the use of fentanyl and alfentanil by claiming they "are very likely to cause chest wall rigidity, which prevents breathing and movement."[62] Floyd asserts this would likely make him feel as if there was "a heavy object on [his] chest."[63] He also asserts it is likely to make him have "the anguish of the sensation of being unable to breath."[64]

With regard to the "heavy object" sensation, Floyd fails to suggest this would be a painful stimulus. And even if it were, that does not establish an Eighth Amendment violation. To be sure, the Supreme Court has repeatedly held that "the Eighth Amendment does not guarantee a prisoner a painless death—something that, of course, isn't guaranteed to many people, including most victims of capital crimes."[65] Rather, the question is whether the use of fentanyl or alfentanil is designed to "intensif[y] the sentence of death" by "seeking to superadd terror, pain or disgrace."[66] There is simply no evidence of that.

On the contrary, as the declarations of NDOC's experts opine, the use of fentanyl or alfentanil is likely to "produce profound sedation, euphoria and analgesia."[67]  This is a far cry from including the drugs for the purposes of adding pain.

Assuming chest rigidity occurs, Floyd provided no medical evidence of what the severity of the pain or anguish would be or how it would rise to the level of a constitutional violation.[68]

---

[62] ECF No. 98 at 13:1-2.

[63] *Id*. at 13:2–3.

[64] *Id*. at 13:4–5.

[65] *Bucklew v. Precythe*, ___ U.S. ___, 139 S. Ct. 1112, 1123 (2019) (citing *Glossip v. Gross*, 576 U.S. 863, 869 (2015)).

[66] *Bucklew*, 139 S.Ct. at 1125.

**[67]  Declaration of Dr. Petersohn at 4, ¶ 20, attached as Exhibit F at APP00037; *see also* Exhibit G, Declaration of Dr. Yun at 2, ¶¶ 1-3 at APP00059 (opioids "help achieve a state of analgesia, unconsciousness and unresponsiveness to painful stimuli"); Exhibit H, Declaration of Dr. Buffington at 3, ¶ 5 at APP0069 (fentanyl "provides pain relief . . . and sedation").**

[68] *See* ECF No. 98 at 12:19–13:11.

In contrast, one of NDOC's experts, board-certified anesthesiologist Dr. Petersohn, avers that while fentanyl is routinely abused, he is unaware of any individual complaining about chest rigidity or a suffocation sensation as part of the overdose process.[69]  The lack of complaint supports the "profound sedation and analgesia" effect provided by the use fentanyl or alfentanil.[70]  The experience of Dr. Yun, also a board-certified anesthesiologist, is similar. Specifically, in his clinical practice, "any significant opioid-induced rigidity begins after a patient loses consciousness," a "clinical finding []confirmed in a classic study that found subjects who had fentanyl-induced chest wall chest rigidity were apneic, unresponsive and had no recall" of the event.[71]  Finally, NDOC's pharmacology expert notes that this uncommon complication could, if it were to occur "hasten and accelerate" the lethal injection process, and would occur after the "an individual's awareness and level of consciousness" has been abated due to the fentanyl or alfentanil previously injected.[72]

In short, while chest rigidity that makes it harder to breathe *may occur*, there is no evidence Floyd would feel the effects of either or that the effects of either would cause him to suffer severe pain or agony. Instead, the only medical evidence before this Court notes the rendering of a profound sedation and analgesia, with the possibility of Floyd's death being hastened due to respiratory distress—a sensation that, if felt, would only last "seconds."[73]

Likewise, Dr. Yun, declares that "[o]pioids . . . have been reliably used for decades to help achieve a state of analgesia, unconsciousness, and unresponsiveness to pain stimuli" in millions of patients.[74]  He further opines that a dose of 2,500mg of fentanyl or 25,000mg of alfentanil, without medical intervention, would "result in the death of the patient."[75]  He also confirms that the use of opioids such as fentanyl or alfentanil will "produce intense analgesia, cognitive disorientation, and even euphoria."[76]

---

[69] **Ex. F at 5, ¶¶ 23–24 at APP00038.**

[70] *Id*. at ¶ 23 at APP00038.

[71] **Ex. G at 2, 4 ¶ 4 and n. 1 at APP00059, 61, referencing Streisand, JB *et al*., *Fentanyl-induced Rigidity and Unconsciousness in Healthy Volunteers*, Anesthesiology 78:629, 1993**.

[72] **Ex. H at 6, ¶ 6 at APP00072.**

[73] **Ex. F at 5, ¶ 23 at APP00038.**

[74] **Ex. G at 2, ¶ 1 at APP00059.**

[75] *Id*. at 2, ¶ 2 at APP00059.

[76] *Id*. at 2, ¶ 3 at APP00059.

To the extent Floyd claims he may feel "anguish" from feeling as if he cannot breathe, he again fails to support that statement by any expert or other medical evidence, just as Floyd fails to present any evidence as to the combination and dosages of the drugs in the NDOC Protocol. Giving Floyd the benefit of the doubt on this failure, he did include a declaration from Dr. Waisel at the time he filed this lawsuit.[77]

However, that declaration provides him no support. Dr. Waisel addressed a protocol that called for an initial use of 500 micrograms of fentanyl, followed by an additional 500 micrograms if the inmate was still breathing.[78] Fentanyl was also provided second after diazepam and without a dose of ketamine; instead it was followed immediately with cisatracuriam at a much smaller dose than called for in the current Nevada Protocol.[79] This Court cannot draw any conclusions from Dr. Waisel's opinions since the dosages he considered were far less than the current dose of a minimum of 2,500 micrograms of fentanyl, which will then be followed with 1,000 milligrams of ketamine.  Indeed, his opinion was also largely based on his concerns associated with diazepam, which he described as "an older benzodiazepine rarely used for sedation or anesthesia."[80]

Dr. Waisel's declaration also failed to address the use of alfentanil. Further, the declaration was issued before Nebraska's four-drug protocol utilized fentanyl, which also used diazepam.

Unlike Dr. Waisel, NDOC's experts have considered the use of fentanyl or alfentanil in the current NDOC Protocol. And the NDOC's unrefuted medical opinions debunk the concerns raised by Floyd and his counsel, which are wholly devoid of medical support.

To the extent this Court considers the other expert reports provided by Floyd at the time he filed his Complaint, those reports also fail to address the current dosages, sequencing, and drugs, and therefore provide no support for Floyd's assertions. That said, they do support the use of fentanyl as contained in the NDOC Protocol. Specifically, Dr. Stevens declared that fentanyl will "inhibit the activity of pain

---

[77] ECF No. 4-3.

[78] *Id*. at 3, ¶ 4.

[79] *Id*.

[80] *Id*. at 5, ¶ 9.

neurons," which would produce pain relief.[81]   Another one of the generalized expert reports that Floyd provided to this Court noted that fentanyl "can be lethal in minute amounts."[82]

### (b)   Ketamine is Appropriate

Contrary to Floyd's categorical and conclusory statement that "ketamine is disfavored for use as an anesthetic,"[83] unlike diazepam, it is often used as an anesthetic, especially in the treating of "patients with burn injuries."[84]  It is also used to control pain on the battlefield by adding it to opioids.[85] Further, borrowing from Floyd's desire to discuss the use of drugs to euthanize animals,[86] ketamine is also used in veterinary euthanasia.[87]

Floyd's other statements regarding the alleged dangers of ketamine, for example, risks causing psychosis, laryngospasms, secretions from the mouth, or causing extreme pain and pulmonary edema, are called into serious question by the declarations of NDOC's attached experts. Specifically, Dr. Petersohn avers the 1,000 mgs of ketamine, like fentanyl and alfentanil, "will produce deep analgesia and sedation, including 'dissociative awareness'" that "will[,] to a reasonable degree of medical certainty[,] result in a rapid onset of a profound lack of *any pain awareness*."[88] As to Floyd's concerns about "excessive secretions from the mouth," the incident reports for hypersalivation "is less than 1%."[89]

---

[81] ECF No. 4-12 at 16; *see also* **Ex. F at 4–5, ¶ 21 at APP00037-38**.

[82] ECF No. 4-11 at 27, ¶ 71; *see also* **Ex. F. at 5, ¶ 26 at APP0038; Ex. G at 2, ¶ 2 at APP00059; Ex. H at 3, ¶ 5 at APP00069**.

[83] ECF No. 98 at 13:15-16.

[84] **Ex. F at 7, ¶ 32 at APP00040; Ex. G at 2, ¶ 1 at APP00059 (ketamine and opioids used in tens of millions of patients, including in thousands of Dr. Yun's own patients)**; *see also Ketamine: Current applications in anesthesia, pain, and critical care*, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4258981/, last accessed June 19, 2021, attached hereto as **Exhibit I at APP00141-49**; *see id.* 3-4 at APP00143-44 for discussion of use in burn patients.

[85] *Id*. at 4 at APP00144.

[86] *See* ECF No. 2 at 53:1 n. 112.

[87] **Ex. I at 1, 8 at APP00141, 148**; *Loss of access to ketamine threatens progress in humane euthanasia*, https://www.animals24-7.org/2015/10/28/loss-of-access-to-ketamine-threatens-progress-in-humane-euthanasia/, last accessed June 19, 2021, attached hereto as **Exhibit J at APP00151-54;** *Animal Euthanasia Policy*, Washington University in St. Louis, Last Revised December 15, 2020, https://research.wustl.edu/wp-content/uploads/2017/05/Euthanasia.pdf, last accessed June 19, 2021, attached hereto as **Exhibit K at APP00155-59**.

[88] **Ex. F at 7, ¶ 31 at APP00040 (emphasis added**).

[89] *Id*. at 8, ¶ 34 at APP00041.

Dr. Yun provides additional medical support regarding the use of ketamine in the NDOC Protocol. Specifically, he opines that ketamine "reliably produces analgesia, unconsciousness and can be used solely as a general anesthetic agent."[90] Dr. Yun avers patients in clinical practice are "unconscious, unaware, and unresponsive to painful stimuli" after a dose of ketamine in the range of 140-200mg[91]–five times less than what is called for as a minimum dose in the NDOC Protocol. Dr. Yun further opines that the 1000mg dose of ketamine called for in the NDOC Protocol will "produce a profound, deep state of general anesthesia that with medical intervention" would last for many hours, and without medical intervention, "would be fatal in any subject within minutes."[92] He also declared that the potential side effects associated with ketamine "such as heavy salivary secretions, emergence delirium and other psychotropic effects" are mooted in the context of providing a dose of 1000mg as called for in the NDOC Protocol.[93]

Dr. Buffington also confirms that ketamine is commonly used as an analgesic and that "there is no evidence to support any assertion that [Floyd] would be sensate or aware" of potential side effects, specifically, laryngospasm.[94] Dr. Buffington also avers that ketamine will result in "unconsciousness" and that Floyd's concern about it not producing a "flat-line EEG"[95] "is without merit as it is a known fact within the medical and pharmacologic fields that ketamine is indicated and used routinely for the induction of unconsciousness."[96] Dr. Buffington also concludes, as did Drs. Petersohn and Yun, that "[t]he dose of ketamine utilized in the lethal injection protocol is sufficient to produce a state of general anesthesia."[97]

---

[90] **Ex. G at 3, ¶ 5 at APP00060**.

[91] *Id*.

[92] *Id*.

[93] *Id*.

[94] **Ex. H at 8, ¶ 9 at APP00074**.

[95] ECF No. 98 at 14:3-4.

[96] **Ex. H at 8-9, ¶ 10 at APP00074-75.**

[97] **Ex. H at 9, ¶ 10 at APP00075.**

Further, even if there was a possibility of pulmonary edema associated with ketamine, this is also cited as a reason to not use pentobarbital (including in a case on June 11, 2021)[98]—one of Floyd's stated alternative pharmaceutical choices of lethal injection.[99]

Accordingly, just as with fentanyl and alfentanil, Floyd fails to make the mandatory *clear showing* that the use of ketamine would violate the Eighth Amendment.

### (c)      Cisatracurium Is Appropriate

Floyd likewise cannot show that the use of cisatracurium would cause him any pain, let alone unconstitutional pain and suffering. Instead, Floyd's sole complaint is that its use would paralyze him and therefore "mask any problems from the administration of the other drugs."[100]  Floyd's attack on its use as not medically necessary has also been soundly rejected. The Supreme Court has previously concluded the use of paralytics in execution protocols "does not offend the Eighth Amendment" because States "ha[ve] an interest in preserving the dignity of the procedure."[101] Further, Floyd's reliance on the possibility of improper administration of the other drugs does not raise a cognizable Eighth Amendment challenge.[102]

Finally, while Floyd failed to present any specific medical support for his conclusions pertaining to cisatracurium, should this Court overlook this fact and attempt to find support for his position in Dr. Waisel's declaration, it will find none for at least three reasons: (1) Dr. Waisel considered cisatracurium only as the killing agent[103] (whether true or false), not as a paralytic designed to protect the dignity of the process; (2) the prior protocol involved a much smaller dose (25 mg as opposed to 200 mg); and (3) he did not take into account the successful use of cisatracurium by Nebraska.  Thus, Dr. Waisel's opinions are of no assistance to this Court.

---

[98] *Sigmon v. Stirling*, Civil Action No. 3:21-CV-01651-RBH, 2021 WL 2402279, * 4 (D.S.C. June 11, 2021), *appeal pending* (citing *Barr*, 140 S. Ct. 2591 and *Zink v. Lombardi*, 783 F.3d 1089, 1096 (8th Cir. 2015) (plaintiff inmates allege use of single dose pentobarbital would cause them to experience "flash pulmonary edema" or "painful allergic reactions in the blood or pulmonary embolism").

[99] ECF No. 98 at 19:12–20:3.

[100] *Id.* at 16:11–15.

[101] *Baze v. Rees*, 553 U.S. 35, 57 (2008).

[102] *Id. at* 53-56; *see also id.* at 108 (Thomas, J., *concurring*); *see also Workman v. Bredesen*, 486 F.3d 896, 907-8 (6th Cir. 2007) ("The risk of negligence in implementing a death-penalty procedure . . . does not establish a cognizable Eight Amendment claim").

[103] ECF No. 4-3 at 3, 5, ¶¶ 4,6-7.

Dr. Waisel's opinion is also contradicted by NDOC's experts who, unlike Dr. Waisel, considered cisatracuriam's potential use pursuant to the current NDOC Protocol. That medical review resulted in the following, undisputed medical opinions that because of the injection of fentanyl/alfentanil and ketamine, if NDOC uses cisatracuriam there would be no likelihood of the individual feeling anything, and that its use "will hasten the onset of death by impairing the respiratory functions even more profoundly than the introduction of fentanyl or alfentanil" did on its own.[104]

Dr. Buffington also provides pharmacological support that rebuts Floyd's conclusory concerns that its use will "mask any problems from the administration of the others drugs, while providing no medical benefit."[105] Dr. Buffington notes that given the sufficient safeguards contained in the NDOC Protocol, "and the duration of effect of fentanyl/alfentanil and ketamine," Floyd "will not be aware of or sensate to the clinical effects of" cisatracuriam, potassium chloride, or potassium acetate.[106]

### (d)   Potassium Chloride or Acetate is Appropriate

Finally, Floyd claims that potassium chloride or acetate could possibly cause significant pain.[107] However, Floyd concedes that despite its controversial use, "potassium chloride has been used in several executions."[108] This includes protocol challenges found or acknowledged to be constitutional by the Supreme Court in at least 11 cases, including *Baze*,[109] *Glossip*,[110] *Hill v. McDonough*,[111] *Bucklew*,[112] and *Henness v. DeWine*.[113] As to potassium acetate, this medication has also been used in an execution, albeit by mistake as the protocol there called for the use of potassium chloride.[114]

---

[104] **Ex. F at 8, ¶ 36 at APP00041;** *see also* **Ex G. at 3, ¶ 6 at APP00060 (confirming any painful effects of cisatracuriam [which Dr. Yun has never witnessed in his practice] "would not be felt by the unconscious subject" "given the massive supra-therapeutic of both fentanyl/alfentanil and ketamine").**

[105] ECF No. 98 at 16:12-14.

[106] **Ex. H at 10, ¶ 13 at APP00075.**

[107] ECF No. 98 at 17–18.

[108] *Id*. at 17:12–13.

[109] *Baze*, 553 U.S. at 44.

[110] *Glossip*, 576 U.S. at 869.

[111] 547 U.S. 573, 578 (2006).

[112] 139 U.S. at 1119.

[113] 141 S. Ct. 7 (2020) (Mem).

[114] *See* ECF No. 98 at 17 n. 16.

Although Floyd opposes the use of potassium chloride, he makes no independent argument as to why NDOC should not use potassium acetate, merely stating instead that "potassium acetate is no better" than potassium chloride.[115] As with his argument pertaining to alfentanil and ketamine, he fails to present any medical evidence in support of his position. NDOC's medical experts also opine as to the efficacy of potassium, whether it is potassium chloride or potassium acetate. To this end, NDOC provides medical opinion that "potassium will stop the individual's heart, resulting in cardiac arrest."[116]

The undisputed medical evidence presented to this Court also puts beyond debate that the cardiac arrest brought on by the introduction of either potassium chloride or acetate will be painless "due to the use of both fentanyl/alfentanil and ketamine prior to it being injected," ensuring that the individual "will feel nothing."[117]

The efficacy and constitutionality of the use of these drugs is not debatable.

### (3) Floyd Cannot Establish His Alternative Options Are Either Readily Available or Significantly Reduce the Risk of Severe Pain

Floyd's attempt to satisfy the readily available alternative prong is deficient both factually and legally.

Factually, both alternatives are deficient because the first, firing squad, is not readily available because it is not permitted under Nevada law. In addition, given the Legislature's recent adjournment until 2023 (save for the possibility of special sessions), no discussion of adding it as an alternative—without even considering the likelihood such a discussion would result in passage of a bill—would not take place for nearly two years. This certainly renders a firing squad an unavailable alternative, notwithstanding that *Bucklew* left open the possibility that a plaintiff would be permitted to use other states' execution methods as an alternative.

The second alternative, a single dose of pentobarbital or sodium thiopental, is also not a readily available alternative as it is not available to NDOC for purchase.[118] NDOC's inability to purchase the drug through ordinary sales transactions, even if available to other states or the federal government,

---

[115] *Id.*

[116] **Ex. F at 10, ¶ 42 at APP00043; Ex. G at 4, ¶ 7 at APP00061**.

[117] **Ex F at 10, ¶ 43 at APP00043; *see also* Ex. H at 10, ¶ 14 at APP00076**.

[118] **Ex. D at 3-4, ¶¶ 11-18 at Att. 2 at APP00017-18, 25-26; Ex. E at 3, ¶¶ 11-14 at APP00031**.

means that it is not a readily available alternative for NDOC.  As plainly stated by the Sixth Circuit in *In re Ohio Protocol*: "for [the available and readily implemented] standard to have practical meaning, the State should be able to obtain the drugs with ordinary transactional effort."[119]  As confirmed by Director Daniels, Chief Fox, and the screenshots of Cardinal Health's order portal, neither pentobarbital nor sodium thiopental is readily available to NDOC as neither can be obtained through "ordinary transactional effort." Thus, while Floyd attempted to show that at least pentobarbital is hypothetically available by referencing former Attorney General William Barr's statement that it was "widely available" (no such statement was made regarding sodium thiopental), "[t]o succeed, [Floyd] must prove 'more than just a showing of hypothetical availability.'"[120] Inmate experts have also acknowledged the lack of availability of pentobarbital in a recent method of execution challenge in Arkansas.[121] Dr. Buffington has averred the same here, confirming that "neither of these agents are available for acquisition, purchase, or use by states['] Departments of Corrections due to the collusion and restrictions between pharmaceutical manufacturers and drug wholesalers that openly preclude such access under commercial duress and penalty."[122]

Both alternatives also fail medically and legally. Floyd fails to establish that either alternative "significantly reduce[s] a substantial risk of severe pain"[123] over the execution protocol that NDOC implemented.   Floyd's proposed alternative must be more than "a slight or marginally safer alternative."[124] Indeed, Floyd fails to present *any* medical or scientific evidence comparing the Nevada Protocol to either firing squad or the one-drug alternative. And as noted above, inmates throughout the country have challenged pentobarbital as causing unconstitutional pain, namely pulmonary edema, one of the very allegations Floyd makes as to ketamine.[125]

---

[119] 860 F.3d at 891.

[120] *Sutton v. Parker*, 800 Fed. Appx. 397, 401 (6th Cir. 2020) (also noting that the plaintiff in that case "'offered no direct proof as to availability' . . . and could not identify a single manufacturer of the drug that could have provided it for use in executions").

[121] *McGehee v. Hutchinson*, 463 F. Supp. 3d. 870, 916 (E.D. Ark. 2020) (*appeal pending*).

[122] **Ex. H at 11, ¶ 15 at APP00077**.

[123] *Glossip*, 576 U.S. at 878.

[124] *Id*. (quoting *Baze*, 553 U.S. at 47).

[125] *Sigmon*, 2021 WL 2402279 at * 4.

In contrast to Floyd, NDOC has provided medical and pharmacological evidence that neither firing squad or the one drug alternatives proposed would significantly reduce the risk of severe pain. Specifically, Dr. Petersohn opined that being shot to "death would result in a traumatic injury that, to a reasonable degree of medical certainty, would result in incomparable pain when compared to the drugs the NDOC Protocol will provide the individual intravenously."[126] He also confirmed that there is no medical foundation for Floyd's unsupported position "that either sodium thiopental or pentobarbital are likely to "significantly reduce the substantial risk of pain."[127]  Dr. Buffington also declares that there is no "medical [or] scientific support" for Floyd's claim that pentobarbital or sodium thiopental would result in a substantially reduced amount of pain.[128]

Finally, Floyd's firing squad alternative also faces another legal hurdle. Specifically, since firing squad is not currently legal in the State of Nevada, the appropriate vehicle to challenge it is likely in a habeas petition as opposed to a § 1983 claim.[129]

### b.    Floyd Cannot Establish Irreparable Harm

It is undisputed that Floyd faces a death sentence. Floyd concedes as much.[130] Thus, while his death is irreparable, it is not an irreparable constitutional harm. Rather, to show such a harm, Floyd must show "there is a substantial risk that he will suffer serious pain during the execution."[131] He has not done so. Nor can he.

---

[126] **Ex. F. at 12, ¶ 48 at APP00045;** *see also id*. **¶¶ 49-50 at APP00045**.

[127] **Ex. F. at 11, ¶ 46 at APP00044**.

[128] **Ex. H at 11, ¶ 15 at APP00076.**

[129] *See Nance v. Comm'r Georgia Dep't of Corrs*., 994 F.3d 1335, 1337 (11th Cir. 2021) (Pryor, J., *statement respecting the denial of rehearing en banc*) (citing *Bucklew*, 139 S. Ct. at 1128 (noting that the proper vehicle for an inmate relying on out-of-state alternative execution methods may be to "recharacterize[] [the] complaint as an action for habeas corpus"); *see also Nance v. Comm'r Georgia Dep't of Corrs*., 981 F.3d 1201 (11th Cir. 2020) ("Because the injunction Nance seeks would necessarily imply the invalidity of his death sentence, his complaint must be reconstrued as a habeas petition. And because that petition is second or successive, we vacate and remand with instructions to dismiss for lack of jurisdiction").

[130] ECF No. 98 at 21:17-18 ("Floyd is not seeking to prevent the State from ever carrying out his sentence").

[131] *Creech v. Reinke*, No. 1:12-cv-00173-EJL, 2012 WL 1995085, at *25 (D. Idaho, June 4, 2012); *see also Lambert v. Buss*, 498 F.3d 446, 452 (7th Cir. 2007) ("Lambert has not shown the existence of irreparable harm through the mere possibility that some unforeseen complication will result in a lingering death causing Lambert to suffer unnecessary pain. He cannot rely on this possibility as the grounds for substantial risk of harm"); *Mitchell*, 971 F.3d at 996 (inmate could not establish irreparable harm because

### c.   Balance of Equities and Public Interest Favor NDOC

As argued in NDOC's previous responses, incorporated herein, both factors weigh against the issuance of either a stay or injunction.[132] In short, the State's interest in providing justice to the residents of Nevada and the victims' families tilts these factors in favor of the NDOC. Likewise, these factors favor the NDOC due to Floyd's failure to show any likelihood of success or irreparable harm—meaning this is yet another last-ditch attempt to stave off justice rendered by the jury, state courts, and federal courts.

Floyd tries to shift these two factors in his favor by conflating the Clark County District Attorney's decision regarding the timing of when to seek the execution warrant and order with NDOC's obligations to carry out the sentence of death. The NDOC does not decide when or if to seek an execution warrant or order. It is therefore disingenuous for Floyd to claim that NDOC's actions "offset" the State's actions in obtain swift and speedy justice.

### B.   The All Writs Act Does Not Help Floyd

Floyd again seeks to salvage his request for a stay by relying on the All Writs Act.[133] Just as before, the request cannot be salvaged.  The NDOC incorporates its argument set forth in ECF No. 25 at 13:17-15:9 as to why the All Writs Act does not help Floyd.

Likewise, Floyd's reliance on the additional cases of *Klay v. United Healthgroup, Inc.*[134] and *Hill v. McDonough*[135] does not rescue him.  *Klay* does not assist him as it clearly notes that for courts to use this extraordinary writ, the party seeking the stay or injunction "must [] point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's actions or behavior."[136] Here, the only past order or judgment being threatened is Floyd's lawful sentence of death. And that threat has come about by his own actions in bringing this lawsuit. With regard to any claim that there is an "ongoing proceeding" that is threatened by someone else, the same is true. NDOC

---

"he did not carry his burden of showing that it is more probable than not that he will suffer irreparable harm") (internal citation omitted).

[132] ECF No. 22 at 15:14-17:3; ECF No. 25 at 11:14-13:17.

[133] ECF No. 98 at 23:1-15.

[134] 376 F.3d 1092, 1099 (11th Cir. 2004).

[135] 464 F.3d 1256, 1258 (11th Cir. 2006).

[136] *Klay*, 376 F.3d at 1100.

properly implemented its Protocol. Floyd fails to establish any colorable Eight Amendment violation associated with the NDOC Protocol.

*Hill* is also unhelpful. There, the court concluded the All Writs Act did not help the plaintiff because his own actions were the result of the delay.[137] While the delay here is not due to Floyd's actions, neither can it be said that NDOC did something to cause this predicament. Further, given the lack of any medical or scientific evidence put forth by Floyd as it relates to the NDOC Protocol or comparing the NDOC Protocol to either of his preferred alternative methods of death, nothing in the current litigation is threatened. Thus, the All Writs Act does not provide an appropriate basis for a stay in this case.

### C.     Judicial Estoppel Has No Relevance

Although NDOC has no quarrel with Floyd's general statement of law that "[j]udicial estoppel . . .precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position,"[138] that general statement has no bearing on this case. Here, NDOC has consistently maintained that Floyd is not entitled to stay or injunction. That was true at the onset of this litigation in April; it is true now. Simply put, NDOC is not attempting to "change [its] position" as Floyd suggests. Rather, NDOC states now, as it did in April, that Floyd seeks to delay his inevitable death sentence. However, just as in April, Floyd failed to provide any *clear showing* to support why a stay or injunction is appropriate.

## V.     CONCLUSION

Floyd relies solely on conclusory statements regarding what he or his counsel believe may occur if the NDOC Protocol is used.  On the other hand, NDOC provides this Court with undisputed medical and pharmaceutical evidence establishing that the NDOC Protocol will not result in unconstitutional pain or suffering—indeed, it is likely to result in very minimal to no pain. The undisputed medical evidence before this Court is "that the drugs utilized in the lethal injection protocol "will produce and maintain a sufficient level of analgesia and anesthesia such that [Floyd] will be rendered unconscious and insensate to pain for the duration of the legal injection procedure."[139]

---

[137] *Hill*, 464 F.3d at 1259.

[138] ECF No. 98 at 23.

[139] **Ex. H at 11, ¶ 12 at APP00077**.

Because Floyd fails to provide "a colorable factual basis to support [his] claim on the merits or the contention of irreparable harm,"[140] this Court must deny his requests for a stay and preliminary injunction—and should do so without further evidentiary hearings.[141]

Respectfully submitted on this 24 day of June, 2021, by:

AARON D. FORD
Attorney General

By:    /s/ *D. Randall Gilmer*
D. Randall Gilmer (Bar No. 14001)
Chief Deputy Attorney General
*Attorneys for Defendants*

---

[140] *Creech*, 2012 WL 1995085, at *26 (citing *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1176 (3d Cir. 1990).

[141] *Creech*, *supra* at *26 (quoting *Bradley*, *supra*) (no evidentiary hearing required "when the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm"); *see also Lopez v. Brewer*, 680 .3d 1068, 1078 (9th Cir. 2012).