RENE L. VALLADARES
Federal Public Defender
Nevada Bar No. 11479
DAVID ANTHONY
Assistant Federal Public Defender
Nevada Bar No. 7978
david_anthony@fd.org
BRAD D. LEVENSON
Assistant Federal Public Defender
California Bar No. 166073
brad_levenson@fd.org
TIMOTHY R. PAYNE
Assistant Federal Public Defender
Ohio Bar No. 0069329
tim_payne@fd.org
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577
(702) 388-5819 (Fax)

Attorneys for Zane M. Floyd

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| ZANE M. FLOYD, | Case No. 3:21-cv-00176-RFB-CLB |
| Plaintiff, | |
| v. | **REPLY TO OPPOSITION TO MOTION FOR STAY OF EXECUTION** |
| CHARLES DANIELS, Director, Nevada Department of Corrections, et al., | **(DEATH PENALTY CASE)** |
| Defendants. | **EXECUTION WARRANT SOUGHT FOR THE WEEK OF JULY 26, 2021** |

1    I.    INTRODUCTION

2            The Nevada Department of Corrections (NDOC) spent months delaying

3    litigation and discovery on Zane Floyd's Section 1983 complaint, arguing that

4    nothing could happen until their execution protocol was "finalized." NDOC refused

5    to provide even the names of the drugs under consideration, let alone the dosages

6    and sequencing of those drugs. NDOC has finally released the protocol, along with

7    drug invoices, and a declaration from pharmacy director Linda Fox. The documents

8    make clear that NDOC has been considering these same drugs for years. Yet, only

9    two weeks after their disclosures, NDOC is opposing a stay, maintaining that

10   Floyd's execution must now proceed as quickly as possible. Incredibly, NDOC insists

11   that this Court "must deny Floyd's Motion without providing additional time or any

12   further hearings," and complains that Floyd has failed to gather enough evidence to

13   support the unconstitutionality of the execution protocol. ECF No. 106.[1] Floyd has

14   not had years to gather evidence. He has had days. In that short time, Floyd's

15   experts have opined that Nevada's protocol presents a substantial risk of

16   unconstitutional pain and suffering. But a stay is necessary to allow Floyd to

17   memorialize his expert's opinions in reports, present his experts to this Court, and

18   receive full consideration of the constitutionality of Nevada's novel execution

19   protocol.[2]

20   _____

21            [1] Defendant Ihsan Azzam maintains an injunction is inappropriate as to him
     but otherwise takes no position on Floyd's motion. ECF No. 105.

22            [2] Floyd proposes an expedited schedule, which aligns with litigation
23   schedules over novel protocols in other jurisdictions, along with the defendants' own

## II.   ARGUMENT

NDOC challenges Floyd's arguments concerning a stay of execution, the All Writs Act,[3] and judicial estoppel. But their arguments, in addition to being unpersuasive, highlight the imbalance at the heart of Floyd's motion—NDOC for years has known about these drugs, withheld that information from Floyd for months (and perhaps years) after the State started the process of purchasing execution drugs,[4] and now it complains that Floyd has less information than they do. A stay of execution is an equitable remedy, *see Towery v. Brewer*, 672 F.3d 650, 657 (9th Cir. 2012); *Nooner v. Norris*, 491 F.3d 804, 807–08 (8th Cir. 2007), and Floyd has satisfied each of the factors required.

### A.   Floyd has satisfied the requirements for a preliminary injunction and stay of execution.

NDOC first argues that Floyd has not established the requirements for a preliminary injunction and stay of execution. ECF No. 107 at 9. As an initial note, NDOC ignores Floyd's crucial interest in not being executed in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. *See Wainwright v. Booker*, 473 U.S. 935, 935 n.1 (1985) (Powell, J., concurring);

---

proposal. *See* ECF No. 31-1, 31-2, 31-3, 31-4, 31-5; *see also* ECF No. 92 (defendants' proposal of 125 days for discovery, disclosures, and pretrial motions).

[3] Due to page limitations, Floyd is not addressing the All Writs Act argument in this reply but stands by the argument found in the motion.

[4] NDOC faults Floyd for not waiting for final release of the protocol to file his Section 1983 complaint. ECF No. 107 at 8 n.47. Until NDOC informed Floyd of the unavailability of midazolam, ECF No. 22 at 7–10; ECF No. 23 at 7–10; ECF No. 28, Floyd was operating under the assumption that the State would not seek his execution without an execution protocol or execution drugs.

1    *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982); *Towery*, 672 F.3d at 661.

2    Floyd has additionally satisfied the remaining factors.

3                    1.    **Likelihood of success on the merits**

4           Under Supreme Court precedent, Floyd must make two showings to succeed

5    on his Eighth Amendment claim: (1) the execution protocol entails a "substantial

6    risk of serious harm"; and (2) there are "feasible, readily implemented" alternatives

7    that "significantly reduce a substantial risk of severe pain." *Glossip v. Gross*, 576

8    U.S. 863, 877 (2015) (cleaned up). NDOC challenges both aspects of the test. ECF

9    No. 107 at 9–21.[5]  But NDOC is incorrect on both the facts and the law underlying

10   Floyd's argument.[6]

11                   a.    **Floyd has shown the execution protocol entails a**
                           **substantial risk of causing serious harm.**

12          NDOC first challenges Floyd's argument that the drugs in the execution

13   protocol, separately and together, present an unconstitutional risk of harm. ECF

14   No. 107 at 9–21. That argument boils down to two contentions: (1) Floyd has

15   introduced insufficient evidence; and (2) this Court should accept without question

16   NDOC's expert's opinions. Each contention is faulty.

17

18          [5] NDOC notes that three of the six potential drugs were used in a recent
     execution in Nebraska (fentanyl, potassium chloride, and cisatracurium). Because
19   that execution was of a volunteer, there was no litigation concerning the
     constitutionality of Nebraska's protocol. And, critically, that protocol did not include
20   ketamine as the anesthetic.
            [6] NDOC additionally ignores that the factors governing stays and preliminary
21   injunctions are flexible, and "where the balance of hardships tips sharply towards
     the plaintiff, a plaintiff need only show serious questions going to the merits, rather
22   than likelihood of success on the merits, to warrant preliminary injunctive relief."
     *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020) (cleaned up); *see Towery*, 672 F.3d
23   at 657; *Beardslee v. Woodford*, 395 F.3d 1064, 1068 (9th Cir. 2005).

Turning first the evidence underlying Floyd's motion, NDOC relies on the absence of any declarations from medical experts or citations to medical journals. ECF No. 107 at 9–11. Floyd, in accordance with this Court's scheduling order, filed his renewed motion for a stay *nine days* after NDOC provided the final protocol.[7] This was insufficient time to complete all the steps necessary to obtain final expert reports. *See* Fed. R. Civ. P. 26(a)(2) (distinguishing expert reports from initial disclosures under discovery rules). But Floyd was able to begin that process, learning sufficient information to show an unconstitutional risk of harm from Nevada's protocol. Specifically, fentanyl and alfentanil carry known risks of chest wall rigidity, especially at the high doses stated in the execution protocol. Both drugs are too short acting to effectively prevent pain from the other drugs in the protocol. Fentanyl, alfentanil, and ketamine all interfere with consciousness checks, leading to continuation of the execution despite Floyd's awareness. Ketamine also carries significant side effects: psychosis, laryngospasms, excessive secretions, and vomiting. And ketamine as an anesthetic risks incomplete unawareness, leading to excruciating pain from the following two drugs, cisatracurium and potassium chloride (or potassium acetate). *See Baze v. Rees*, 553 U.S. 35, 53 (2008) ("It is

---

[7] NDOC contends Floyd should have started investigating ketamine at the merest suggestion that it was under consideration. ECF No. 107 at 11. But NDOC is incorrect that Floyd knew about ketamine "for several years." *Id.* It was Floyd's understanding that ketamine was *excluded* as a potential drug for Scott Dozier's execution, and, through the hearing on May 20, 2021, counsel for NDOC was still asserting in court that the final drugs had not been determined. ECF No. 81 at 21. In the face of NDOC's refusal to confirm or deny that they planned to include ketamine in the final protocol, *see* ECF No. 49 at 92, their position that Floyd should investigate based on hints and conjecture is untenable.

uncontested that, failing a proper dose of sodium thiopental that would render the prisoner unconscious, there is a substantial, constitutionally unacceptable risk of suffocation from the administration of [the paralytic] and pain from the injection of potassium chloride."). These risks were detailed in Floyd's motion. ECF No. 98 at 13–17. And, with these drugs combined, NDOC's protocol presents a substantial risk that Floyd will be aware and in extreme pain during his execution.

NDOC ignores these risks, instead asking Floyd and this Court to accept its expert declarations as proven fact. ECF No. 108 at 11–21.[8] But there is good reason to doubt those expert declarations.[9] Daniel Buffington is a clinical pharmacologist and toxicologist, not a medical doctor. ECF No. 108-8 at 3. To the extent he opines on the medical aspects of Nevada's protocol, he is operating outside his area of expertise.[10]

Jeffrey Petersohn agrees that fentanyl and alfentanil cause chest wall rigidity, "which may make it more difficult for an individual to breathe." ECF No. 108-6 at 6. As for ketamine, he does not address the fact that ketamine's side effects are lessened in clinical settings because of the administration of other drugs, not

---

[8] It is unclear from the expert declarations whether NDOC began its consultations with these experts before disclosing the final execution drugs to Floyd. What is clear, however, is that NDOC has been considering these same execution drugs for years. *See* ECF No. 108-4.

[9] NDOC additionally asserts that ketamine is equivalent or better than other alternatives. ECF No. 107 at 10. Ketamine, a dissociative anesthetic, is not in the same class of drugs as barbiturates like pentobarbital.

[10] It is Floyd's understanding that Mr. Buffington was excluded from testifying in Ohio on lethal injunction matters. *See In re Ohio Execution Protocol Litigation*, 2:11-cv-1016, ECF No. 2408.

included in Nevada's protocol. *Id.* at 8–9. And he ignores the concerns with consciousness checks after fentanyl, alfentanil, and ketamine, *Id.* at 9–10, which substantially increase the risk of unconstitutional pain and suffering. He concludes by asserting "it is not medically foreseeable that the NDOC Protocol would be nonlethal." *Id.* at 10. But this misses the point. There are many ways to execute an inmate; not all of those ways are constitutional.

Finally, Steve Yun, who specializes in pediatric dentistry, agrees chest wall rigidity occurs with fentanyl and alfentanil, but he asserts that occurs after unconsciousness. ECF No. 108-7 at 3. He bases that assertion, however, only on his clinical practice and one study. *Id.* Floyd's experts dispute this assertion, along with the assertion that even high doses of fentanyl will reliably produce unawareness. And, like Petersohn, Yun ignores that fentanyl, alfentanil, and ketamine interfere with consciousness checks.[11]

In sum, NDOC insists this Court deprive Floyd of any opportunity to challenge their experts' conclusions and instead accept those conclusions as fact. However, their disputed conclusions do not undermine the risks Floyd presented in his motion for a stay, which show a substantial risk of unconstitutional pain and suffering.

---

[11] It is Floyd's understanding that Dr. Yun was likewise excluded from testifying in Ohio on lethal injunction matters. *See In re Ohio Execution Protocol Litigation*, 2:11-cv-1016, ECF No. 2353.

6

### b.   Floyd has presented adequate alternatives under Supreme Court precedent.

In his motion for a stay, Floyd presented two alternatives: (1) a firing squad; and (2) a one-drug protocol using a barbiturate. NDOC opposes these alternatives because Nevada law provides only for lethal injection, and NDOC has been unable to procure a barbiturate. ECF No. 107 at 19–20.[12] Neither of these facts matter—the Supreme Court has made clear that "[a]n inmate seeking to identify an alternative method of execution is not limited to choosing among those presently authorized by a particular State's law. … So, for example, a prisoner may point to a well-established protocol in another State as a potentially viable option." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1128 (2019).[13] Both of Floyd's proposed alternatives are well-established in other jurisdictions. Four states currently authorize execution by firing squad, Mississippi, Oklahoma, South Carolina, and Utah. And several jurisdictions, including Texas, Georgia, and the federal government, have recently used pentobarbital in carrying out executions.[14]

---

[12] NDOC adds that, because a firing squad is unavailable in Nevada, Floyd's challenge is properly brought in a habeas action, not a Section 1983 lawsuit. That area of law is unsettled, *see Nance v. Comm'r, Georgia Dep't of Corr.*, 981 F.3d 1201, 1205–11 (11th Cir. 2020), but, out of an abundance of caution, Floyd has challenged Nevada's protocol in his habeas proceedings, *Floyd v. Gittere*, No. 2:06-cv-00471 (D. Nev.). The Attorney General's office argued in response to Floyd's habeas filings that the habeas case was inappropriate for this challenge.

[13] NDOC relies on *In re Ohio Execution Protocol*, 860 F.3d 881, 891 (6th Cir. 2017), ECF No. 107 at 20, a decision released two years before *Bucklew*.

[14] NDOC argues that pentobarbital is unavailable through purchase by Cardinal Health. ECF Nos. 108-04 at 4; 108-5 at 4. However, compounding pentobarbital is relatively easy, a fact even NDOC's own expert, Mr. Buffington, testified to in recent litigation in the South.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

NDOC additionally complains that "Floyd fails to present any medical or scientific evidence comparing the Nevada Protocol to either firing squad or the one-drug alternative." ECF No. 107 at 20.[15]  Again, Floyd, because of the defendants' actions, had less than ten days after the protocol's disclosure to file his renewed motion for a stay. But that was sufficient time to learn of significant, serious risks inherent in Nevada's protocol, which are significantly reduced by Floyd's proposed alternatives.

### 2.    Balance of the equities

NDOC next argues that the balance of the equities weigh in its favor, not Floyd's. ECF No. 107 at 21–22. This is incorrect. The public has an interest in executions proceeding constitutionally, not in a rushed manner designed to deprive condemned inmates of any meaningful litigation. *See In re Ohio Execution Protocol Litig.*, 840 F. Supp. 2d 1044, 1059 (S.D. Ohio 2012), *case dismissed* (Mar. 20, 2012); *Coe v. Bell*, 89 F. Supp. 2d 962, 966 (M.D. Tenn. 2000), *vacated on mootness grounds*, 230 F.3d 1357 (6th Cir. 2000) (unpublished table disposition); *see also Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights."), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). And although NDOC correctly points out that it did not seek the execution order in

---

[15] That other plaintiffs in other states challenge one-drug protocols, *see* ECF No. 107 at 20, does not mean it does not present a significantly improved alternative over Nevada's current protocol. Floyd reiterates that he presents alternatives because they significantly reduce the risk of pain as required by Supreme Court precedent, not because those alternatives are completely free from risk.

this case, ECF No. 107 at 22, Floyd's point remains the same: NDOC, not Floyd and not the Clark County District Attorney's office, delayed litigation and discovery in this case, undermining any interest they have in a speedy execution. *See Towery*, 672 F.3d at 661; *see also Landrigan v. Brewer*, No. 10-02246, 2010 WL 4269559, at *9 (D. Ariz. Oct. 25, 2010) (criticizing defendants for "withholding all evidence regarding the drug," while at the same time opposing stay of execution), *aff'd*, 625 F.3d 1144 (9th Cir. 2010), *rev'd on other grounds*, 131 S. Ct. 455 (2010)); *cf. Pizzuto v. Tewalt*, 997 F.3d 893, 902 (9th Cir. 2021) (expressing concern with states withholding information about execution protocol "to minimize judicial scrutiny").

### B.   Judicial estoppel is appropriate in this case.

NDOC next argues that judicial estoppel is inappropriate because they have consistently argued against a stay. ECF No. 107 at 23. But its response itself reinforces why judicial estoppel is appropriate here. While "NDOC has consistently maintained that Floyd is not entitled to stay or injunction," *id.*, they *at the same time* have unnecessarily delayed this case. NDOC has had the drugs for Floyd's execution for years. It ordered those drugs for the specific purpose of using them in an execution. Meanwhile, it averred in this Court that the protocol was not final, and the drugs were unknown. It was only after releasing the protocol—containing those same drugs—that NDOC changed its mind about delay. It should not be permitted to benefit from this change at the expense of Floyd's constitutional rights. *See New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001); *Rissetto v. Plumbers & Steamfitters Loc. 343*, 94 F.3d 597, 600 (9th Cir. 1996).

9

### C.   Exhaustion is not required.

Under the Prison Litigation Reform Act of 1995 (PLRA), "a prisoner need exhaust only available administrative remedies" that challenge prison conditions. *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1856-57 (2016) (internal quotations omitted) (emphasis added). Because Floyd does not challenge a prison condition and NDOC lacks an available exhaustion remedy, he is not required to exhaust.

### 1.   Floyd does not challenge prison conditions

Here, exhaustion does not apply as Floyd does not seek to challenge a prison condition, but rather disputes the constitutionality of lethal drugs. This matter transcends far beyond issues arising within the prison walls, and thus cannot genuinely be characterized as challenging "prison conditions."[16] Moreover, the cases cited by defendants in support of their argument are wholly different than the facts at hand, and thus can be distinguished, as they discuss exhaustion concerns brought under challenges to actual prison conditions. For example, *Ross v. Blake* discussed an inmate's 42 U.S.C. § 1983 suit against prison guards for attacking him while in custody. *Id* at 1855. Similarly, in both *Swain* and *Valentine* courts considered complaints challenging lack of social distancing and safety measures used by prisons to protect inmates during the COVID-19 pandemic. *Swain v. Junior*, 958 F.3d 1081, 1085-87 (11th Cir. 2020); *Valentine v. Collier*, 956 F.3d 797, 799-800 (5th Cir. 2020). Unlike Floyd, the issues in *Ross*, *Swain*, and *Valentine* all

---

[16] Defendants also characterize Floyd's challenge as falling outside the purview of prison conditions. *See* Opp. at 8 fn. 47 (stating Floyd's motion only seeks to challenge "the underlying legally and constitutionally imposed sentence.").

1   evidence an unequivocal challenge to conditions arising out of the prison

2   environment. Floyd, on the other hand, challenges several issues surrounding the

3   adequacy of lethal drugs, a circumstance that is entirely separate from a prison

4   condition and does not arise out of the state of being in the prison. For those

5   reasons, and others detailed below, exhaustion is not required.

6   **2.    No administrative remedy is available to Floyd**

7   Even if Floyd were challenging prison conditions, he still would not be

8   required to exhaust administrative remedies as none are available to him, and any

9   attempt to exhaust would be futile.

10   As an initial matter, noticeably, defendants fail to point to what exact

11   administrative remedy Floyd should have pursued before pursuing litigation. *See*

12   *Ross*, 136 S. Ct. at 1855, 1860 (detailing each step of the administrative process

13   available to inmates with complaints similar to those alleged). This is likely so

14   because no cognizable administrative remedy is available to Floyd.

15   "An administrative procedure is unavailable when (despite what regulations

16   or guidance materials may promise) it operates as a simple dead end—with officers

17   unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at

18   1859. Any attempt by Floyd to exhaust his challenges would have been futile

19   because officers are unable to provide the type of relief Floyd requests, namely a

20   finding that the lethal drugs proposed violate federal law and an injunction to

21   prevent their use. Indeed, in order to adequately litigate his claims Floyd had to

22   name several defendants besides NDOC, further evidencing NDOC's incapability to

23

11

address these issues administratively. Accordingly, because no administrative

remedy is available to Floyd he is not required to exhaust anything.

## III.   CONCLUSION

NDOC concedes Floyd filed his Section 1983 lawsuit at the earliest possible

opportunity. ECF No. 107 at 8 n.47. But it simultaneously maintains Floyd has filed

too late for meaningful litigation. Accepting this position would deprive Floyd of any

opportunity to litigate Nevada's novel execution protocol. That cannot be true.

Because Floyd has shown a likelihood of success on the merits, and the balance of

equities weighs strongly in his favor, Floyd is entitled to a stay of execution to

provide enough time for full litigation, for the first time, of Nevada's execution

protocol.

DATED this 25th day of June, 2021.

Respectfully submitted
RENE L. VALLADARES
Federal Public Defender

*/s/ David Anthony*
DAVID ANTHONY
Assistant Federal Public Defender

*/s/ Brad D. Levenson*
BRAD D. LEVENSON
Assistant Federal Public Defender

*/s/ Timothy R. Payne*
TIMOTHY R. PAYNE
Assistant Federal Public Defender

12

## CERTIFICATE OF SERVICE

In accordance with LR IC 4-1(c) of the Local Rules of Practice, the undersigned hereby certifies that on this 25th day of June, 2021 a true and correct copy of the foregoing REPLY TO OPPOSITION TO MOTION FOR STAY OF EXECUTION, was filed electronically with the United States District Court. Electronic service of the foregoing document shall be made in accordance with the master service list as follows:

D. Randall Gilmer
Chief Deputy Attorney General
Office of the Nevada Attorney General
drgilmer@ag.nv.gov
Crane Pomerantz, Esq.
Nadia Ahmed, Esq.
SKLAR WILLIAMS PLLC
cpomerantz@sklar-law.com
nahmed@sklar-law.com

/s/ Celina Moore
An Employee of the
Federal Public Defenders Office,
District of Nevada