AARON D. FORD
 Attorney General
D. Randall Gilmer (Bar No. 14001)
 Chief Deputy Attorney General
State of Nevada
Office of the Attorney General
555 E. Washington Ave., Ste. 3900
Las Vegas, Nevada 89101
Telephone: (702) 486-3427
Facsimile:  (702) 486-3773
Email: DGilmer@ag.nv.gov

*Attorneys for Defendants Daniels,
Wickham, Gittere, Reubart, Drummond,
Minev, Green and Fox (NDOC Defendants)*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ZANE M. FLOYD,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES DANIELS, DIRECTOR, NEVADA DEPARTMENT OF CORRECTIONS, ET AL.,<br><br>Defendants. | Case No. 3:21-cv-00176-RFB-CLB<br><br>**NDOC DEFENDANTS' RESPONSE IN OPPOSITION TO INTERVENER JOSEPH W. SMITH'S MOTION TO INTERVENE (ECF NO. 140)**[1] |

Defendants, Charles Daniels, Harold Wickham, William Gittere, William Reubart, David Drummond, Dr. Michael Minev, Dr. David Green, and Linda Fox (collectively, "NDOC"), by and through counsel, Aaron D. Ford, Attorney General for the State of Nevada, and D. Randall Gilmer, Chief Deputy Attorney General, hereby provide their opposition to proposed intervener Joseph Smith's *Motion to Intervene* (Smith's Motion).

**I.      INTRODUCTION**

Smith has every right bring a § 1983 claim to challenge NDOC's execution protocol. However, he does not have the right to intervene in this case. Smith's proposed complaint contains significant

---

[1] As with Plaintiff Zane Floyd, NDOC reserves the right to challenge the Federal Public Defender's Office representation of Joseph Smith in any 42 U.S.C. § 1983 action. *See* 18 U.S.C. § 3006A; Guide to Judicial Policy, Vol. 7A, at 5–6 § 210.20.20  (failing to indicate Congressional authority to represent an individual in a *civil* action bringing 42 U.S.C. § 1983 claims); Guide at 7–8, § 210.20.50(c) which provides that "[p]risoners bringing civil rights actions under 42 U.S.C. § 1983" are not "[c]ases or proceedings . . . *covered by* or *compensable* under the CJA" (emphasis added). A copy of this document is located at https://www.uscourts.gov/sites/default/files/vol_07.pdf, last accessed on April 27, 2021.

different factual allegations than Floyd as it relates to his physical conditions. These significantly different factual allegations are evident from a cursory review of Floyd's operative complaint, Smith's Motion, and Smith's proposed complaint.

Adding Smith to the current litigation is improper given that Floyd brings only a facial challenge to the constitutionality of the execution protocol. If Floyd were to succeed in this case, the execution protocol would be invalidated as to all condemned inmates, including Smith. Thus, Smith's interests are adequately represented, not impaired or impeded. Additionally, intervention will result in unnecessary delay because further discovery will be necessary as to Smith's unique health conditions as well as admitted necessary further amendment of Smith's proposed complaint.[2]

Because Smith's proposed complaint contains substantially different factual allegations, an "as applied" argument to the protocol, and—as currently drafted—fails to state a claim upon which relief can be granted, intervention is not appropriate. Instead, Smith should pursue his own constitutional challenge once he amends the complaint he admits is necessary.

Smith's Motion must be denied.

## II.  STATEMENT OF FACTS

### A.  Significant Differences Exist Between the Underlying Facts of Smith and Floyd's Cases

Smith, like Floyd, was sentenced to be executed based on his criminal conviction. This is where the similarities end.  To be sure, and by way of example only:

- Smith awaits a decision on his pending Supreme Court certiorari petition,[3] whereas Floyd has no such pending legal challenge;

- Smith is housed at Northern Nevada Correctional Center (NNCC) due to failing health,

---

[2] Smith's proposed complaint would be ripe for dismissal because it fails to state a claim under *Glossip v. Gross*, 576 U.S. 863, 869 (2015), which requires him to identify an alternative method of execution he believes is both readily available to NDOC and "significantly reduce[s] a substantial risk of severe pain." *Id*. at 877 (quoting *Baze v. Rees*, 553 U.S. 35, 52 (2008)). Further, the pleading raises serious ethical questions concerning counsel's failure to consult with Smith on the propriety of the claims and legal contentions prior to submitting the pleading. Smith's counsel expressly acknowledged *Glossip*'s requirement to plead an alternative means of execution, ECF No. 140-1 at 45-46 & n.75, yet they are admittedly moving forward with a motion to intervene *before* conferring with Smith on the need to plead a known and readily available alternative. *Id*. at 46:11-15 ("because the Supreme Court has made it a *prerequisite* to a successful Eighth Amendment method-of-execution challenge, counsel for Smith, *after conferring with their client*, will identify in a *later filed amended complaint* alternative methods of execution. . ." (emphasis added)). The motion to intervene is counsel's latest attempt to delay and increase the cost of Floyd's protocol challenge.

[3] ECF No. 140 at 3:6–8 (¶ 4).

1   whereas Floyd is housed at Ely State Prison (ESP);[4]

2   • Smith alleges his failing health would make his execution unconstitutional, whereas Floyd's allegations are devoid of any issues relating to his health as being a reason the existing execution protocol would unconstitutional;[5] and

• While Smith was sentenced to death, he does not allege that the Clark County District Attorney's Office (the prosecuting agency) plans to seek an execution order and execution warrant,[6] whereas the CCDA has already sought and secured an execution order for Floyd,[7] with the CCDA now seeking reissuance based on the State Court's subsequent decision to vacate the order.

### B. Smith Did Not Agree to Any Alternative Method of Execution

The most glaring factual (and legal) difference between Smith's proposed complaint and Floyd's amended complaint is Smith's failure to provide a readily available alternative method of execution as required under *Glossip*.[8] Smith failed to include any alternative despite counsel acknowledging the need to do so. In contrast, Floyd pleaded two alternatives he (incorrectly) asserts are readily available and likely "significantly reduce[s] a substantial risk of severe pain" as required by the Supreme Court.[9]

### C. Smith Seeks to Name Additional Defendants

In addition to the above factual differences, Smith names three defendants in his proposed complaint that Floyd does not name. Specifically, Smith intends to name Warden Russell, Associate Warden Walsh, and Associate Warden Hartman as each of these individuals are involved in the supervision of NNCC.[10]

### D. The Execution Protocol

#### 1. Smith's Medical Situation May Require Revisions to the Protocol

NDOC created the current execution protocol to ensure the constitutional administration of Floyd's sentence, while stating that "the combination of drugs and doses listed below are lethal for most

---

[4] *Compare* ECF No. 140 at 10:16-17 (¶ 11) with ECF No. 120 at 10:14-15 (¶ 11).
[5] *Compare* ECF No. 140 at 10:22-23 n. 5, 47:14-22 (¶¶ 5-6) (health concerns associated with protocol) with ECF No. 120 at 53-55 (no health concerns raised as reason to challenge protocol).
[6] *See generally* ECF No. 140-1.
[7] ECF No. 125–1.
[8] ECF No. 140-1 at 46, Count I, ¶ 31.
[9] ECF No. 120 at 45:11-52:14, Count I, ¶¶ 31-45; *Glossip*, 576 U.S. at 869.
[10] ECF No. 140-1 at 11:15-12:3 (¶¶ 14-15).

individuals, individual differences do exist."[11] The protocol also requires the Director "to ensure that the selected legal drugs or combination of drugs and their dosages . . . are sufficient to cause death."[12] This will require Director Daniels (or his successor) to decide whether the current protocol would be appropriate for Smith given his health situation at the time a state court issues an execution order and warrant—if and when that may occur.

### 2. The Potential for Expiration of Drugs May Require a Different Protocol

The protocol is also contingent on NDOC's ability to obtain the required drugs. If those drugs are unavailable, then NDOC will not be able to proceed under the protocol regardless of any individual differences between Floyd, Smith, or any other condemned inmate. As of today's date, NDOC has already lost the ability to use potassium chloride as its only supply expired on July 31, 2021.[13] NDOC may also lose the ability to use either fentanyl or alfentanil by May 31, 2022, and ketamine by February 28, 2022.[14] These expiration dates mean there is a real possibility the drugs listed in the protocol will expire—and be unavailable for NDOC to purchase—before an execution warrant or execution order is issued for Smith following the Supreme Court's resolution of the pending certiorari petition.

### III. LEGAL STANDARD FOR INTERVENTION IS NOT MET

Pursuant to Rule 24 of the Federal Rules of Civil Procedure,[15] the Court may allow intervention of right or permissive intervention. Smith is entitled to neither.

#### A. Smith Is Not Entitled to Intervention of Right Under Rule 24(a)(2)

The right to intervene is mandatory if: (1) the motion to intervene is timely; (2) the proposed intervener has a "significantly protectable interest" in the action; (3) the proposed intervener is situated such "that the disposition of the action may impair or impede" his "ability to protect" his "interest;" and (4) that the proposed intervener's interests will not be adequately represented by the existing party.[16] But

---

[11] ECF No. 93-1 at 22 (RP0001, EM 103.01(A)).
[12] *Id*.
[13] ECF No. 112-2 at 3, ¶¶ 7,9-10; ECF No. 112-3 at 2.
[14] ECF No. 118-1.
[15] All references to a "Rule" or the "Rules" in this response refer to the Federal Rules of Civil Procedures unless otherwise stated.
[16] *Allied Concrete & Supp. Co. v. Baker*, 904 F.3d 1053, 1067 (9th Cir. 2018); *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003); *Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1061 (9th Cir. 1997).

intervention, either by right or permissibly by leave of the court, "is not intended to allow the creation of whole new lawsuits by the intervenors."[17]

Smith has the burden to establish all four of these requirements.[18] Here, assuming Smith has a "significantly protectable interest," Smith cannot establish timeliness, that the instant action brought by Floyd would either impair or impede Smith's ability to protect his interests, or that his interests will not be adequately represented by Floyd and counsel even without his intervention.

### 1. Smith's Motion is Not Timely as NDOC Defendants Will Be Prejudiced

Smith has certainly moved quickly to intervene in the instant action, and at first blush it would appear as if this element should be conceded by the NDOC Defendants. But the Ninth Circuit has noted that the timeliness analysis must account for "prejudice to other parties" resulting from intervention.[19]

Effective February 28, 2022, NDOC's current stock of ketamine will expire. If NDOC is unable to replenish that stock, NDOC loses its ability to carry out a lawsuit execution under its current protocol due to the expiration of the last supplies of ketamine. Given this fast-approaching date, adding another plaintiff to this case, especially one that intends to raise a facial challenge *and* an "as applied" challenge to the protocol (based on his individual health condition), would unduly prejudice NDOC Defendants. In addition, Smith also seeks to add three additional NDOC employees as defendants (i.e., Russell, Walsh, Hartman). The additional defendants will also complicate factors regarding the speedy resolution of the current lawsuit. Further, as Smith is housed at NNCC and Floyd is housed at ESP, the coordination of video capability for trials will be greatly complicated resulting in additional delays.

Smith brings this motion relatively early in this case, but the parties' expert reports are due on August 19, 2021.[20] Initial disclosures a week earlier on August 12, 2021.[21] Given Smith's allegations of chronic health conditions and his desire to make an "as applied" argument based on his health, adding Smith into this lawsuit will necessarily result in another round of disclosures and expert reports. It is best that this be done in a separate lawsuit.

---

[17] *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998) (quoting *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994)).
[18] *United States. v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).
[19] *Orange Co. v. Air California*, 799 F.2d 535, 538 (9th Cir. 1986).
[20] ECF No. 150 at 2, Proposed Discovery Plan and Scheduling Order.
[21] *Id*.

Despite Smith moving quickly to intervene, the current NDOC Defendants will be prejudiced if Smith is permitted to intervene in this case. Thus, Smith cannot meet his burden on this prong.

### 2. Floyd's Lawsuit Will Not Impair or Impede Smith's Interest

The present litigation brought by Floyd in no way precludes Smith from protecting his own interests. Indeed, if Floyd's facial challenge is successful, then the protocol would necessarily be unconstitutional for use against any prisoner, including Floyd and Smith. If Floyd's challenge is unsuccessful, Smith would still be free to challenge the constitutionality of the protocol, especially to the extent he seeks to bring an "as applied" argument based on his age, health, and place of imprisonment. In addition, as Smith also wishes to name three new defendants, only he—not Floyd—can bring those claims.

Simply put, it is not enough that both Smith and Floyd assert similar Eighth Amendment and Fourteenth Amendment claims. In fact, even if they were identical and brought against the same defendants, "[i]ntervention is only permitted when resolution of the Plaintiff's claims will actually effect the applicant."[22]

Smith's three specific reasons for claiming that the NDOC Defendants will impede rights if not permitted to intervene in this lawsuit are without merit.

First, he claims intervention is necessary because if he were executed before the conclusion of Floyd's lawsuit, "Mr. Smith will not be able to benefit from Mr. Floyd's action."[23] This is false both factually and legally. Factually, it is incorrect because Smith will not face execution before Floyd. Smith still has a pending certiorari petition before the Supreme Court. The CCDA seeks an execution order and warrant as to Floyd, whereas Smith does not assert that the CCDA sought an execution order or warrant or will seek one even after the conclusion of his current petition to the Supreme Court, let alone that it could do so before October 2021, the new execution period the CCDA requested for Floyd. Indeed, Floyd concedes the Supreme Court is not likely to rule on his certiorari petition until at least October.[24] Smith's

---

[22] *Baker v. Warner*, No. C15-5298 RJB-KLS, 2015 WL 13730667 (W.D. Wash. Dec. 29, 2015) (intervention not appropriate when both plaintiffs challenged the same prison rule and brought the First Amendment claim against the same defendants).
[23] ECF No. 140 at 3:14-17 (¶ 5(a)).
[24] *Id*. at 3:8 (¶ 4).

assertion is also factually and legally incorrect because, just as Floyd sought a preliminary injunctive relief in this case, Smith could do the same in any case he chooses to file independently.

Smith next claims that intervention is necessary because, if Floyd successfully challenges the protocol, he would "likely be unable to purse the litigation to fruition."[25] To the extent that is true, it would be because there would be no legal reason to continue with the claims as they would be legally moot. If that occurs, Smith, like all condemned inmates, would be entitled to the same injunctive relief Floyd sought—to avoid execution under the current protocol.  Therefore, there would be no need for Smith to "pursue the litigation to fruition" as there would be no case or controversy for the courts to consider. Of course, Smith would still be free to challenge any new protocol adopted and finalized by NDOC.

Finally, Smith argues his rights will be impaired if Floyd is executed before this lawsuit concludes because Smith would be unable to continue Floyd's litigation. However, this reason also fails to assist Smith. Assuming Smith could not continue this litigation, it in no way impairs Smith's right to bring his own lawsuit, or to carry on with his own lawsuit should he decide to file it as an independent action now as opposed to by way of intervening in this case.

Thus, Smith has not met his burden of showing that his ability to protect his interests would be impeded or impaired absent intervention.

### 3. Floyd and the FPD Adequately Protect Smith's Interests

Courts consider three factors when assessing whether a present party will adequately represent the interests of an applicant for intervention:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.[26]

The Ninth Circuit has held that the " 'most important factor' in assessing the adequacy of representation is 'how the interest compares with the interests of existing parties.'"[27]  Although the burden of showing

---

[25] *Id*. at 3:17–19 (¶ 5(b)).
[26] *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).
[27] *Id.* (quoting *Arakaki*, 324 F.3d at 1086).

inadequacy of representation is minimal, when an applicant for intervention and an existing party share "the same ultimate objective, a presumption of adequacy of representation arises."[28] "To rebut the presumption, an applicant must make a 'compelling showing' of inadequacy of representation."[29]

        Smith's Motion fails to provide any argument as to why Floyd and counsel cannot adequately protect his rights in the current litigation. Rather, he simply says in conclusory fashion that he cannot adequately be represented "unless he is allowed to intervene as a plaintiff."[30]  In contrast to this conclusory statement, the same counsel represent both Floyd and Smith. The Federal Public Defender's Office vigorously defends its clients throughout the country. The challenges Floyd brought against the protocol, if successful, will apply to Smith and all other prisoners.  Indeed, the arguments raised by Floyd would apply to Smith and all other prisoners subject to execution under the current protocol. And this is evinced by the identical nature of the claims as it relates to the facial challenge.

        The current lawsuit adequately protects Smith's interests without his intervention.

        Accordingly, for the reasons set forth above, Smith is not entitled to intervention of right.

        **B.**    **Smith is Not Entitled to Permission Intervention Under Rule 24(b)(1)(B)**

        Smith also seeks this Court's discretion to join this case under permissible intervention. This argument also fails.

        In seeking permissive intervention, Smith relies solely on Rule 24(b)(1)(B) without providing this Court with any other authority for his proposition as to how he meets his burden for this Court to exercise its discretion.  The Ninth Circuit requires an intervener to establish that there are independent grounds for jurisdiction, that the motion is timely, and that "the applicant's claim or defense, and the main action, have a question of law or a question of fact in common."[31]  However, even if Smith *could meet* each of these three elements, this Court is still permitted to exercise its discretion "to deny permissive intervention."[32]

---

[28] *Id.* (citing *League of United Latin Am. Citizens v. Wilson* ("*LULAC*"), 131 F.3d 1297, 1305 (9th Cir. 1997)).
[29] *Id.* (citing *Arakaki*, 324 F.3d at 1086); *Prete v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006) (a compelling showing is required if the applicant's interest is "identical to that of one of the present parties").
[30] ECF No. 140 at 3:22–23.
[31] *Donnelly*, 159 F.3d at 412; *Northwest Forest Resources Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996) (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993)).
[32] *Donnelly*, 159 F.3d at 412.

Here, denial of permissive intervention is necessary as "intervention [would] unduly delay or prejudice the original parties, [] Smith's "interests are adequately represented by the existing parties," and "judicial economy [does not] favor intervention."[33]

### 1. Significant Questions of Law and Fact Distinguish Floyd and Smith

As noted in the Statement of Facts, Smith and Floyd share the common fact that they are under a sentence of death for their crimes. The rest of the facts may be similar, but important differences prevent intervention.

For example, the CCDA previously sought an execution order and warrant against Floyd. And while it is currently on hold, the CCDA continues to seek the execution order and warrant. There is no allegation by Smith the CCDA intends to seek an execution warrant or order in the near future—indeed Smith assets the Supreme Court will not rule on his certiorari petition until October of 2021. Further, after February 2022, NDOC may lose the ability to proceed under the current execution protocol given the expiration of the drugs in its possession. This procedural difference is crucial in that it shows that time is of the essence as it relates to Floyd's lawsuit, but is not currently as critical for Smith's potential lawsuit.

In addition, Smith's alleged on-going heath issues sharply contrast his situation from Floyd's. Smith spends a great deal of time discussing his underlying health conditions; how those conditions may prevent him from being transported from NNCC to ESP for execution; and how those conditions may impact the ability to place IV lines in his veins for lethal injection. Taking Smith's allegations as true for purposes of this motion, these are significant facts that are not applicable to Floyd. These serious medical allegations will require discovery that is wholly unnecessary in Floyd's lawsuit. For example, the intricacies of Smith's current medical condition—how and whether he can be transferred (and if not, whether the execution can legally take place at NNCC); and what, if any, effect his alleged underlying chronic medical conditions will have on the efficacy of the current drug regiment called for in the protocol, including whether additional or different individuals will be necessary to set IV lines due to Smith's alleged poor medical condition—will require additional, time-consuming analysis from medical experts.

---

[33] *Venegas v. Skaggs*, 867 F.2d 517, 530-31 (9th Cir. 1989).

Indeed, Smith acknowledges his on-going health issues but fails to recognize the significance of such factual distinctions and procedural complications for purposes of intervention. Smith asserts there are common factual and legal questions by stating that he "adopts by reference the allegations" of Floyd.[34] But he then "further asserts that he suffers from chronic health issues which require him to receive dialysis three days a week," and that based on this condition, the "lethal injection protocol presents additional risks of harm and will cause even more severe pain and suffering upon him."[35] As noted, Smith's complex medical allegations will require specific discovery that is unnecessary in Floyd's lawsuit, yet Smith does not explain why an exercise of the Court's discretion allowing intervention and unnecessary discovery would be justified in this instance.

Smith must develop the unique facts and allegations to resolve his claims as they are wholly unrelated to Floyd's claims. Because Smith's factual differences reduce—if not eliminate—commonality with Floyd's facts and will necessarily result in the need for additional discovery, permissive joinder is not justified.

The Court must therefore deny Smith's Motion.

### 2. Smith Fails to Set Forth a Readily Available Alternative Protocol

Smith's proposed complaint fails to state a viable claim for relief because Smith intentionally and knowingly fails to set forth a readily available alternative method of execution that "significantly reduce[s] a substantial risk of severe pain."[36] Despite knowing of this prerequisite, Smith asserts that he will provide one after counsel confers with him.[37]

By contrast, Floyd presents two alternative methods of execution. Putting aside that Floyd's alternatives fail to meet the *Glossip* requirement, Smith's failure to include any alternative in his complaint means there may be yet additional factual and legal arguments that are not common to Floyd's, and Smith's proposed complaint is currently ripe for dismissal for failure to state a claim. To be clear, and without belaboring the point, Smith's failure to provide an alternative method of execution, in itself, should result in denial of the motion. There is no way to know how many additional factual and legal arguments will fail to meet the commonality requirements for intervention.

---

[34] ECF No. 140 at 4:4-5 (¶ 6).
[35] *Id.* at 4:12-15 (¶ 7).
[36] *Glossip*, 576 U.S. at 869.
[37] ECF No. 140-1 at 46, Count I, ¶ 31.

### 3. Permissive Intervention Will Cause Undue Prejudice

As with intervention of right, permissive intervention will also unduly prejudice the NDOC Defendants.[38] In short, the fast-approaching expiration dates of the drugs, coupled with the straightforward nature of Floyd's facial challenge, as opposed to Smith's much more factually intensive "as applied" argument, shows the resulting undue prejudice to the NDOC Defendants if Smith is permitted to intervene in this action.

### 4. Judicial Economy Weighs Against Intervention

NDOC Defendants also note that judicial economy weighs against intervention. As noted, Smith seeks to argue an "as applied" challenge against the NDOC Defendants plus three additional individuals. The "as applied" argument may require significant discovery into Smith's chronic health conditions that will necessarily require additional work from medical experts.

To the extent there are common issues of fact, the parties may be able to address those issues by way of an agreement between the parties to allow the use of relevant discovery conducted in one case to be used in the other case. This will alleviate any concerns of "duplicate discovery" while also ensuring that Floyd's case proceeds quickly and efficiently. It will also allow Smith to concentrate on the factual distinctions in his case, therefore allowing the streamlining of discovery in Smith's case to focus on the different factual allegations necessary for Smith's "as applied" claims.[39]

## IV. CONCLUSION

Smith seeks to intervene in this case despite his proposed compliant failing to state a prima facie claim for relief. That failure precludes both the NDOC Defendants and this Court from conducting a complete analysis of the common questions of law and fact. Even so, factual distinctions present on the face of Smith's Motion, Floyd's complaint, and Smith's proposed complaint make further inquiry into those yet unknown facts and law unnecessary.

---

[38] *See* Section III.A.1, *supra* at 5:12-6:9.

[39] To this end, NDOC Defendants note that the FPD's office never proposed or sought any agreement as to those issues. Instead, the FPD's office gave NDOC's counsel less than 24 hours to consent to intervention, and that if consent was not provided, a motion would be filed. Thus, NDOC's counsel was unable to state a position within the short time allotted.

In addition, Smith has not shown how his inability to intervene in this case would impair or impede his interests. Floyd, who is represented by the same counsel, is arguing the protocol is facially unconstitutional. That argument, if successful, applies to all condemned inmates that could be executed under the protocol. In other words, while Smith also seeks to bring an unrelated and factually complex "as applied" argument, Floyd and Smith's interests in the current lawsuit are the same—to find the current protocol unconstitutional. Accordingly, Smith cannot overcome the presumption that Floyd and their shared counsel will not adequately represent his interests in this lawsuit.

Nor can he show that not intervening here would impede or impair his ability to protect his rights. Smith can bring his own lawsuit independent of Floyd. In addition, as noted above, Floyd and counsel will adequately represent Smith interests in the underlying lawsuit.

Permitting intervention in this case will result in unnecessary delay of the instant case. That may assist Floyd and Smith in achieving their objective to avoid execution., But it does so, not by allowing their constitutional claims to be litigated on the merits. The motion to intervene is a thinly veiled attempt to delay this proceeding and run out the clock on the current protocol given the expiring drugs.

Judicial economy requires that Smith's Motion be denied.

Respectfully submitted on this 5th day of August, 2021, by:

AARON D. FORD
Attorney General

By: /s/ *D. Randall Gilmer*
D. Randall Gilmer (Bar No. 14001)
Chief Deputy Attorney General
*Attorneys for Defendants*