Rene L. Valladares
Federal Public Defender
Nevada Bar No. 11479
David Anthony
Assistant Federal Public Defender
Nevada State Bar No.7978
David_Anthony@fd.org
Brad D. Levenson
Assistant Federal Public Defender
California State Bar No. 166073
Brad_Levenson@fd.org
411 E. Bonneville Ave., Ste. 250
Las Vegas, NV 89101
(702) 388-6577
(702) 388-5819 (fax)

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Zane M. Floyd, | Case No. 3:21-cv-00176-RFB-CLB |
| Plaintiff | |
| v. | **Post Hearing Brief** |
| Charles Daniels, Director, Nevada Department of Corrections, *et al.*, | DEATH PENALTY CASE |
| Defendants. | |

The Nevada Department of Corrections (NDOC) has proffered a novel, experimental protocol to execute Zane Floyd, containing: (1) an opioid drug with serious side effects that will not reliably induce unconsciousness; (2) an enormous dose of ketamine, much larger than anything anesthesiologists would intentionally use; (3) an optional paralytic that risks conscious paralysis and suffocation; and (4) the killing agent, potassium chloride or potassium acetate, which causes excruciating pain if the inmate is not adequately anesthetized. ECF No. 93-1 at 23–25. Despite no state ever executing anyone with ketamine—and Nevada not executing an inmate since 2006 (a volunteer)—NDOC has treated the medical implementation of this protocol as an afterthought. After hearing all of the expert testimony, NDOC Director Charles Daniels agreed there were problems with some medical aspects of the protocol—yet no changes occurred. ECF No. 294 at 6–8; ECF No. 292 at 6–7, 12; ECF No. 291 at 33–34, 43–50, 53, 62–63, 70, 77–79. Proceeding with Zane Floyd's execution under this novel protocol would violate his Eighth and Fourteenth Amendments right to be free from cruel and unusual punishment. *See Glossip v. Gross*, 576 U.S. 863, 877 (2015). As a result, Floyd is entitled to a permanent injunction.[1]

    **A.    The drugs in NDOC's execution protocol present a substantial risk of serious harm.**

The six potential drugs in NDOC's execution protocol are largely untested in executions, and completely untested in the sequence and dosages provided in the protocol. Alone, each drug causes serious side effects. In combination, the sequence of drugs cannot reliably produce unawareness sufficient to prevent unconstitutional harm.

---

[1] Solely for the sake of brevity, this brief will focus on the underlying merits of Count I. Floyd rests on his complaint, previous pleadings, and the exhibits and testimony from the evidentiary hearing to support his remaining counts and arguments, which undersigned counsel are prepared to address at oral argument.

1

**1. Fentanyl and alfentanil cannot reliably block awareness and carry a significant risk of conscious suffocation.**

The protocol provides for an opioid as the initial drug, either fentanyl or alfentanil. But opioids cannot reliably block awareness, even at the high loading doses provided in NDOC's execution protocol. ECF No. 260 at 64–65, 120–28, 167–74; ECF No. 263 at 12–13, 30, 119; *see* Plaintiff's Ex. 2 at PEX-16–18; Plaintiff's Ex. 3 at PEX-28; Plaintiff's Ex. 16 at PEX-245; Plaintiff's Exs. 142, 250–53; NDOC's Exs. 523–25. In addition, fentanyl and alfentanil cause chest wall rigidity, where the brain "sends signals to the muscles to kind of clench up and tighten up," impacting respiration. ECF No. 260 at 125, 178–79; *see* ECF No. 263 at 32, 115–16; Plaintiff's Ex. 2 at PEX-18; Plaintiff's Ex. 17 at PEX-250–51; Plaintiff's Ex. 127 at PEX-3921–22. And opioids also depress breathing and respiratory drive, separate from but enhancing the effect of chest wall rigidity. ECF No. 260 at 117–18, 159–64; ECF No. 263 at 64–65, 171–75. Further, many patients feel dysphoric after taking an opioid. ECF No. 260 at 117; *see* Plaintiff's Ex. 2 at PEX-16–18. Finally, nausea and vomiting can occur even at low doses. ECF No. 260 at 116–17; *see* Plaintiff's Ex. 2 at PEX-18. Dr. Buffington estimated that "early exposure to a new opioid can be north of 50 percent nausea and GI discomfort." ECF No. 282 at 131.

**2. Ketamine induces a dissociative state and is completely untested at the dose provided in NDOC's protocol.**

Ketamine has never been used in an execution or intentionally used in clinical practice at the dose provided in NDOC's protocol. ECF No. 260 at 130; ECF No. 263 at 126, 143; Plaintiff's Ex. 2 at PEX-19. In lower clinical doses, ketamine is used as a dissociative anesthetic, which is likely to cause excitation instead of the "profound depression" caused by other anesthetic agents. ECF No. 263 at 143; Plaintiff's Ex. 2 at PEX-19–20; Plaintiff's Ex. 16 at PEX-246–47. In addition, like fentanyl and alfentanil, ketamine can produce serious side effects,

including dysphoria, hypersalivation, disorientation, and paranoid or confused thoughts. ECF No. 260 at 131–32; ECF No. 263 at 144; Plaintiff's Ex. 2 at PEX-20–22; Plaintiff's Ex. 16 at PEX-246–47; Plaintiff's Ex. 17 at PEX-251. And ketamine also causes laryngospasm, a life-threatening situation where the vocal cords "snap shut," preventing breathing and potentially causing pulmonary edema. ECF No. 263 at 107, 119–25, 144–50; ECF No. 288 at 87–90; Plaintiff's Ex. 16 at PEX-246.

Using a dose of ketamine ten times that used in clinical practice also presents a significant risk of harm. ECF No. 260 at 134–36, 183–84; ECF No. 263 at 63, 148–49; *see* Plaintiff's Ex. 16 at PEX-246. Because of the novelty of this dose, Floyd cannot point to previous executions or studies where 1,000 milligrams of ketamine was administered. But certainty is not required; Floyd must show only a "substantial *risk* of severe pain." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1125 (2019) (emphasis added); *see Glossip*, 576 U.S. at 877. Such risk exists here. *See* Seema Shah, *Experimental Execution*, 90 Wash. L. Rev. 147 (2015). Ignoring that risk would incentivize departments of correction to continue experimenting with novel execution drugs to evade judicial review. *Cf. Pizzuto v. Tewalt*, 997 F.3d 893, 902 (9th Cir. 2021); *Zagorski v. Parker*, 139 S. Ct. 11, 13–14 (2018) (Sotomayor, J., dissenting from denial of application for stay and denial of certiorari).

### 3. Cisatracurium presents an unnecessary risk of conscious paralysis and suffocation.

Cisatracurium is a paralytic drug. ECF No. 260 at 138; Plaintiff's Ex. 2 at PEX-22. Because it paralyzes the muscles that control breathing, using the paralytic risks conscious suffocation. ECF No. 260 at 138, 140–43; Plaintiff's Ex. 2 at PEX-14, 22; Plaintiff's Ex. 16 at PEX-247–48. Cisatracurium will also mask any complications that arise after its administration

3

in NDOC's protocol. ECF No. 260 at 142; ECF No. 263 at 155; Plaintiff's Ex. 2 at PEX-14–15.[2] There are no benefits to outweigh these substantial risks. And the fact that cisatracurium is optional in NDOC's protocol demonstrates that its use constitutes a substantial and *unnecessary* risk of causing suffering. *See Atkins v. Virginia*, 536 U.S. 304, 319 (2002); *Gregg v. Georgia*, 428 U.S. 153, 183 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.); *Louisiana ex rel. Francis v. Resweber*, 329 US 459, 463 (1947).

    **4.    Potassium chloride and potassium acetate produce excruciating pain before stopping the heart.**

The last drug, either potassium chloride or potassium acetate, will induce cardiac arrest, killing Floyd. ECF No. 260 at 146; Plaintiff's Ex. 2 at PEX-22–23. It is widely accepted that potassium is "an extraordinarily painful chemical." *Beardslee v. Woodford*, 395 F.3d 1068, 1071, 1074 (9th Cir. 2005); *see Glossip*, 576 U.S. at 949 (Sotomayor, J., dissenting); *Baze v. Rees*, 553 U.S. 35, 114 (2008) (Ginsburg, J., dissenting); *see also* Plaintiff's Ex. 2 at PEX-23; ECF No. 260 at 60, 146; ECF No. 263 at 60–61; Plaintiff's Ex. 16 at PEX-248.

    **B.    The lack of necessary safeguards in Nevada's protocol increases the substantial risk of harm.**

The Supreme Court and Ninth Circuit have made clear that safeguards in execution procedures are important considerations when examining Eighth Amendment lethal injection claims. *See Glossip*, 576 U.S. at 872–73, 886; *Baze*, 553 U.S. at 55–56; *Rhoades v. Reinke*, 671 F.3d 856, 859–62 (9th Cir. 2011); *Morales v. Tilton*, 465 F. Supp. 2d 972, 979–80 (N.D. Cal. 2006). Safeguards are important not just for administration of the drugs, but also for resuscitation efforts. These safeguards are constitutionally-deficient in NDOC's protocol.

---

[2] The use of a paralytic drug makes it even more important to have the electrocardiogram working during the procedure, ECF No. 292 at 67-68, something NDOC refuses to do.

4

### 1. The protocol provides insufficient guidance for the selection of execution team members.

The execution team consists of: (1) drug administrators; (2) emergency medical technicians (EMTs); and (3) an attending physician. ECF No. 93-1 at 23, 31. The protocol provides only limited guidance on the selection of these team members, and absolutely no guidance on their medical experience or the expertise of those that train them.[3] Drug administrators are chosen from NDOC correctional staff, not medical staff.[4] ECF No. 93-1 at 23; *see* ECF No. 294 at 12–13. And the attending physician and EMTs are chosen from personal contacts of Deputy Director Gittere, with no requirements that the physician practice in a relevant area, have a related specialty, or have recent experience assessing consciousness or resuscitating patients. ECF No. 292 at 46–47, 50–51, 104; ECF No. 93-1 at 31; ECF No. 244 at 2–4; ECF No. 260 at 89. This is completely insufficient, particularly when compared to protocols approved by federal courts in other jurisdictions. *See, e.g.*, *Rhoades*, 671 F.3d at 861; *Dickens v. Brewer*, 631 F.3d 1139, 1142–43 (9th Cir. 2011).

### 2. The protocol provides insufficient guidance on training and rehearsals.

Executions are "complicated, high-stakes, tense affair[s] where there are things that can go wrong, and if they do, it's a terrible, disastrous thing." ECF No. 260 at 93. To prevent disastrous results, rehearsals and training are essential. *Id.*; ECF No. 260 at 93–95; Plaintiff's Ex. 2 at PEX-27; Plaintiff's Ex. 4 at PEX-38; *see, e.g.*, *Glossip*, 576 U.S. at 873; *Baze*, 553 U.S. at 55; *Rhoades*, 671 F.3d at 861; *Dickens*, 631 F.3d at 1142–43. But there has been no medical

---

[3] None of these individuals have been officially selected. ECF No. 291 at 24; ECF No. 292 at 48–49, 74, 100; ECF No. 294 at 13–14.
[4] NDOC does not consider the drug administrators to be part of the "medical team." ECF No. 291 at 17; *see* ECF No. 292 at 93–94.

5

training yet to prepare for Floyd's execution, ECF No. 292 at 74, and NDOC's protocol only vaguely references training and says nothing about rehearsals, *see* ECF No. 93-1 at 34; ECF No. 260 at 96–97; ECF No. 99-1 at 4.

Testimony during the evidentiary hearing did little to further illuminate matters. Although Director Daniels is ultimately responsible for the execution protocol and he makes the critical decisions during the procedure itself, he has a limited role in designing and implementing training. ECF No. 291 at 18–20. He has instead delegated that task to Deputy Director Gittere. *Id.* at 19–21; ECF No. 292 at 79–80. As for the training itself, the yet-to-be selected attending physician is responsible for training the EMTs, at least twice. ECF No. 291 at 21–22; ECF No. 292 at 78–81. Deputy Director Brian Williams is separately responsible for coordinating training for the drug administrators, which will be performed by an unspecified (and yet to be selected) "medical professional." *Id.* at 22–23; ECF No. 292 at 87–90, 95–96; ECF No. 294 at 12. The first time the drug administrators will work with the attending physician and EMTs will be on the execution day. ECF No. 292 at 92–94.

### 3. The consciousness checks in NDOC's protocol are insufficient to ensure an unaware inmate.

NDOC's execution protocol entails a consciousness check after each drug is administered, consisting of a verbal stimulus and a "medical grade pinch." ECF No. 99-1 at 5–8. But "medical grade pinch" is "unacceptably vague" and has no established medical meaning.[5] ECF No. 260 at 147–48; ECF No. 263 at 38–39, 150; Plaintiff's Ex. 2 at PEX-26. And a person under the influence of an opioid, ketamine, or cisatracurium might not respond to the verbal or

---

[5] Unlike a medical grade pinch, a sternal rub is actually a medically accepted way of conducting a consciousness check. ECF No. 289 at 22. Director Daniels testified that he would modify the protocol to include a sternal rub, ECF No. 292 at 12, but he failed to do so.

6

physical stimulus, even if they are aware. ECF No. 260 at 138–42, 149–50; ECF No. 263 at 150–51; Plaintiff's Ex. 2 at PEX-19–22; NDOC Ex. 547 at 109–11. In addition, in a clinical setting, an anesthesiologist would be continuously observing the patient and equipment in the operating room. ECF No. 260 at 150; ECF No. 263 at 151–54; NDOC Ex. 547 at 92–94. But in NDOC's protocol, the cardiac monitor is disconnected before the drugs are administered. ECF No. 260 at 151; ECF No. 99-1 at 4; ECF No. 292 at 75–77.

### C. The setup of the execution chamber increases the unconstitutional risk of harm.

The execution chamber and areas surrounding it increase the risk of unconstitutional pain and suffering. *See Morales*, 465 F. Supp. 2d at 979–80. The execution protocol directs the drug administrators to stand in a separate room, not in the execution chamber with the condemned inmate and attending physician. *See* ECF No. 260 at 42–70; Plaintiff's Exs. 41–43; Plaintiff's Ex. 4 at PEX-34–36. From that separate room, the drug administrators' view of the inmate is obstructed. *See* ECF No. 260 at 43, 50, 67–70; Plaintiff's Ex. 4 at PEX-34–35; *see* Plaintiff's Exs. 41–42. And the drip chamber is in the drug administrators' room, not the execution chamber with the attending physician. ECF No. 260 at 61–63; Plaintiff's Ex. 4 at PEX-34–35.

### D. There are feasible, readily implemented alternative methods of execution that would significantly reduce the substantial risk of harm.

There are two alternatives to Nevada's current protocol.

#### 1. Execution by firing squad

There are two potential methods for execution by firing squad, the traditional method where marksmen aim at the cardiovascular bundle in the center of the chest, and a second method where marksmen aim for the brainstem. ECF No. 266 at 26–27, 37–38, 41; Plaintiff's Ex. 30 at PEX-696–97, 703–04; Plaintiff's Ex. 33; Plaintiff's Ex. 34. Both methods are

"effective" and "very fast." ECF No. 266 at 27; *see* Plaintiff's Ex. 30 at PEX-697–98; Plaintiff's Ex. 31 at PEX-710–11; *see Arthur v. Dunn*, 137 S. Ct. 725, 733–34 (2017) (Sotomayor, J., dissenting). Specifically, with the traditional firing squad method, the inmate stops all purposeful movement within one to three seconds. ECF No. 266 at 29–31. And a gunshot to the brainstem will cause permanent loss of consciousness in less than a second. *Id.* at 27–28. In addition, a gunshot to either the chest or brainstem is unlikely to be painful. *See* ECF No. 266 at 24, 32–33, 39–40; Plaintiff's Ex. 30 at PEX-696–700. And execution by firing squad "is significantly more reliable" than lethal injection. *Glossip*, 576 U.S. at 976 (Sotomayor, J., dissenting); ECF No. 266 at 47–49; Plaintiff's Ex. 30 at PEX-700–01; Plaintiff's Ex. 31 at PEX-710.

A firing squad protocol is also available to NDOC. Four states currently authorize execution by firing squad.[6] ECF No. 266 at 33–35; Plaintiff's Ex. 30 at PEX-701. Nevada could readily join those jurisdictions. *See Bucklew*, 139 S. Ct. at 1128; *see also id.* at 1136 (Kavanaugh, J., concurring); *Zagorski v. Parker*, 139 S. Ct. 11, 13 (2018) (Sotomayor, J., dissenting from denial of application for stay and denial of certiorari). NDOC, like Utah, could easily create a firing squad consisting of correctional personnel who have proficient marksmanship, ECF No. 266 at 35–36, 42; design an execution chamber, like Utah's, using any room at the prison approximately 20 feet by 40 feet, *id.* at 36, 40, 43–44; Plaintiff's Ex. 30 at PEX-705; and acquire the equipment needed for a firing squad execution: common rifles, with common ammunition, ECF No. 266 at 37, 41, 43–44; Plaintiff's Ex. 30 at PEX-701–02, 705–06.[7]

---

[6] *Methods of Execution*, DPIC, https://deathpenaltyinfo.org/executions/methods-of-execution.

[7] NDOC has argued throughout this litigation that a firing squad is unavailable because it is not currently authorized under state law. But the Supreme Court has made clear Floyd "is not

8

### 2. Execution using a single barbiturate drug

Pentobarbital "is widely conceded to be able to render a person fully insensate and does not carry the risks of pain that some have associated with other lethal injection protocols." *Barr v. Lee*, 140 S. Ct. 2590, 2591 (2020) (cleaned up). In contrast to a drug like fentanyl, a barbiturate drug produces a "lights-out" effect, where the inmate quickly reaches unconsciousness. ECF No. 260 at 127–29; Plaintiff's Ex. 2 at PEX-15, 19; Plaintiff's Ex. 3 at PEX-28; NDOC Ex. 547 at 112, 114–15. And, should the drug not work as intended, there are no additional drugs that can cause pain and suffering. *See* Plaintiff's Ex. 3 at PEX-31. For these reasons, barbiturate drugs are consistently used in executions and physician-assisted suicide, largely without any reported problems. *See* ECF No. 285 at 64, 73–78; Plaintiff's Ex. 102 at PEX-3152; Plaintiff's Exs. 204, 263, 264.

Several states currently have a single-drug barbiturate protocol, and Texas, Georgia, Missouri, and the federal government have recently used pentobarbital in executions.[8] *See Wilson v. Dunn*, 2017 WL 5619427, at *5–6 (M.D. Ala. Nov. 21, 2017). According to William Barr, pentobarbital is "widely available,"[9] and the drug can be compounded.[10] ECF No. 285 at

---

limited" to those alternatives "presently authorized" under Nevada law. *Bucklew*, 139 S. Ct. at 1128. To the extent NDOC argues this challenge should be brought in Floyd's habeas proceedings, the Supreme Court recently granted a petition for writ of certiorari on this issue, *Nance v. Ward*, No. 21-439 (Jan. 14, 2021); *see Nance v. Comm'r, Georgia Dep't of Corr.*, 981 F.3d 1201, 1205–11 (11th Cir. 2020), and Floyd's habeas challenge to NDOC's protocol is pending in this Court, *Floyd v. Gittere*, No. 2:06-cv-00471 (D. Nev.).

[8] *Overview of Lethal Injection Protocols*, DPIC, https://deathpenaltyinfo.org/executions/lethal-injection/overview-of-lethal-injection-protocols.

[9] Katie Benner, *U.S. to Resume Capital Punishment for Federal Inmates on Death Row*, N.Y. Times, https://www.nytimes.com/2019/07/25/us/politics/federal-executions-death-penalty.html.

[10] *Secret sedative: How Missouri uses pentobarbital in executions*, St. Louis Public Radio, https://news.stlpublicradio.org/government-politics-issues/2017-08-18/secret-sedative-how-missouri-uses-pentobarbital-in-executions.

65–69; Plaintiff's Ex. 102 at PEX-3152–54; *see also* ECF No. 285 at 88–89. *See, e.g.*, *Middlebrooks v. Parker*, 15 F.4th 784, 790-93 (6th Cir. 2021) (availability of pentobarbital by states and federal government can show drug is also available to Tennessee).

Since 2017, Nevada has not attempted to obtain compounded pentobarbital or any other barbiturate medication outside its online health care portal, Cardinal Health.[11] ECF No. 266 at 68–69, 109, 140–42; ECF No. 292 at 28–29. Just as "[a]n inmate seeking to identify an alternative method of execution is not limited to choosing among those presently authorized by a particular State's law," *Bucklew*, 139 S. Ct. at 1128, Floyd cannot be limited to choosing among alternatives only "available" under NDOC's informal ordering practices. *See Zagorski*, 139 S. Ct. at 13 (Sotomayor, J., dissenting from denial of application for stay and denial of certiorari); *see Bucklew*, 139 S. Ct. at 1136 (Kavanaugh, J., concurring).

Dated this 25th day of January, 2022.

Respectfully submitted,

Rene L. Valladares
Federal Public Defender

*/s/ David Anthony*
David Anthony
Assistant Federal Public Defender

*/s/ Brad D. Levenson*
Brad D. Levenson
Assistant Federal Public Defender

---

[11] Director Daniels also testified he did not consider pentobarbital for the current protocol for reasons unrelated to its availability. ECF No. 292 at 21.