AARON D. FORD
  Attorney General
D. Randall Gilmer (Bar No. 14001)
  Chief Deputy Attorney General
Douglas R. Rands (Bar No. 3572)
  Senior Deputy Attorney General
Ian Carr (Bar No. 13840)
  Deputy Attorney General
State of Nevada
Office of the Attorney General
555 E. Washington Ave., Ste. 3900
Las Vegas, Nevada 89101
Telephone: (702) 486-3427
Facsimile:  (702) 486-3773
Email: DGilmer@ag.nv.gov
Email: DRands@ag.nv.gov
Email: ICarr@ag.nv.gov

*Attorneys for Defendants Daniels,
Wickham, Gittere, Reubart, Drummond,
Minev, Green, and Fox (NDOC Defendants)*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ZANE M. FLOYD, | Case No. 3:21-cv-00176-RFB-CLB |
| Plaintiff, | |
| v. | **NDOC DEFENDANTS' SUPPLEMENT BRIEF IN SUPPORT OF WHY NO ADDITONAL INFORMATION REGARDING ATTENDING PHYSICIAN, EMTs, OR DRUG ADMINISTRATORS IS LEGALLY REQUIRED TO BE PROVIDED** |
| CHARLES DANIELS, DIRECTOR, NEVADA DEPARTMENT OF CORRECTIONS, ET AL., | |
| Defendants. | |

Defendants Charles Daniels, Harold Wickham, William Gittere, William Reubart, David Drummond, Dr. Michael Minev, Dr. David Green, and Linda Fox (collectively, "NDOC Defendants"), by and through counsel, Aaron D. Ford, Attorney General for the State of Nevada, D. Randall Gilmer, Chief Deputy Attorney General, Douglas R. Rands, Senior Deputy Attorney General, and Ian Carr, Deputy Attorney General, based on the Court's invitation at the July 26, 2022 hearing, hereby provide this brief supplemental briefing detailing again what NDOC has stated since the inception of this case: neither Plaintiff, Plaintiff's counsel, or the public is entitled to know either the identity, or further

credentials, of individuals that will serve as the attending physician, emergency medical technicians (EMTs) or drug administrators.

The Supreme Court has definitively answered the question of whether an execution can be enjoined because a state did not provide credentials and identifying information relating to individuals intimately involved in the carrying out an execution, such as the attending physician, EMTs, and drug administrators.

In *Ryan v. Wood*, 573 U.S. 976 (2014) the Supreme Court vacated the Ninth Circuit's preliminary injunction and reversal of the district court's opinion in a three-sentence order without any published dissent, which permitted the execution to proceed.

The district court's opinion states that the plaintiff sought "an injunction requiring Defendants to disclose certain information about the . . . personnel that [would] be involved in his execution." *Wood v. Ryan*, No. CV.-14-1447-PHX-NVW (JFM), 2014 WL 3385115, at *1 (D. Ariz. July 10, 2014), *rev'd,* 759 F.3d. 1076 (9th Cir. 2014), *vacated by Ryan*, 573 U.S. 976. The plaintiff sought information regarding "the qualifications of the medical professionals who would participate in Wood's execution, as well as evidence demonstrating that the Department of Corrections had verified those qualifications." *Id.* at *2. The state had informed the plaintiff at the time of his initial request that "the Inspector General had verified the qualifications of the medical professionals on the IV team" and further assured the plaintiff that "a person currently licensed or certified" would be used should a "central formal line [be] used." *Id.*

Not satisfied with the state's response to this and other questions, the plaintiff sought an injunction seeking, among other things, "non-personally-identifying information detailing the medical, professional, and controlled-substances qualifications and certifications of the personnel Defendants intend to use in execution." *Id.* at *. In rejecting the plaintiff's claim, the district court held

> the specific qualifications of the execution personnel is of little signification because the protocol states the levels of qualification needed and there is no challenge to the Defendants' assertions that those qualifications have been met. Also, the detail of information [the plaintiff] requests might in fact become

> "identifying" information. That result is only a possibility on this sparse record. *But the possibility along weighs against disclosure when nothing specific weights in favor.*

*Id.* at *7 (emphasis added).

Similarly, here, NDOC has provided the Court, Plaintiff's counsel, Plaintiff, and the public significant information regarding the credentials that will be required for attending physician, the EMTs, and the drug administrators. This information is first included in the Protocol. Later, upon a request from the Court, additional information regarding the minimum credentials was provided with the filing of *NDOC Defendants' Notice Regarding Minimum Requirement for Attending Physician and Emergency Medical Technicians as Requested by this Court During the November 5, 2021 Hearing* (Notice). ECF No. 244. This Notice was referred to by Plaintiff during the evidentiary hearing on several occasions. ECF No. 246.[1] In addition to the Protocol and the Notice, both Director Daniels and Deputy Director Gittere confirmed that it was the information set forth in the Protocol and Notice that would, at a minimum, be required of the individuals chosen to participate in the execution. ECF Nos. 291 and 292.[2]

NDOC stands on those minimum credentials as it relates to this Court's decision regarding the constitutionality of the Protocol and its implementation. In other words, while the attending physician and EMTs may be *more qualified*, due to safety and security concerns relating to the possibility that the individuals may be identified, NDOC is confident that the information previously provided to the Court, the parties, and the public in the Protocol, Notice, and testimony establishes the constitutionality of the individual's involvement. In short, this Court has sufficient information to determine whether the Protocol, as drafted and as intended to be implemented, is constitutional. Providing any additional information—and reopening the already closed eight-day evidentiary hearing to add additional evidence and potential testimony—is not legally or factually necessary.

---

[1] ECF No. 246 at 37:11-12, 16-18; 38:14-19; 39:2-3, 6-10; 42:1-4; 67:10-13.
[2] ECF No. 292 at 5:1-17; 47:8-13, 51:10-11, 14-15; 95:14-17, 96:5-6; ECF No. 291 at 21:19-23; 25:16-17; 26:17-19, 25, 27:1, 12-13; 28:5-6, 15-17; 33:13-15; 34:22-23; 39:19-22.

Should this Court not be persuaded by the Supreme Court's clear and decisive affirmation of the district court's reasoning in *Wood*, NDOC Defendants reiterate the additional binding case law previously provided to this Court and the parties over the past nine months.

In *Baze v. Rees*, 553 U.S. 35 (2008), the Supreme Court held that the risk of an improper administration of a lethal injection drug was not inherently unconstitutional. At 5In that case, a condemned inmate hypothesized that theoretical error in the delivery of drugs could lead to a cascading series of failures that could botch the execution. *Id.* at 54 ("Petitioners contend that there is a risk of improper administration . . . which could lead to a failure of the IV; because it is possible that the IV catheters will infiltrate into surrounding tissue"). The Supreme Court rejected these conjectures as inadequate in establishing an Eighth Amendment violation, holding that "the asserted problems related to the IV lines d[id] not establish a sufficiently substantial risk of harm." *Id.* at 55.

Just as in *Baze,* NDOC has developed and implemented safeguards, such as a written protocol and training regimen for participants, to mitigate risks that could arise during an execution. *See id.* at 55–56. Likewise, NDOC has provided significant testimony regarding the minimum requirements it will require of the attending physician, EMTs, and drug administrators. This was done in the Protocol, the Notice, and the testimony of Director Daniels and Deputy Director Gittere. Providing any additional information relating to the education, training, credentials, or identity of these individuals will have no bearing upon the possible risks that may arise during an execution. The "opportunity for error" can arise under the best of circumstances, regardless of the execution team members' identities, because the participants are human. Or, as succinctly stated in *Baze* and provided to this Court in NDOC's closing brief following the close of the evidentiary hearing, "accidents happen for which no man is to blame" and such accidents, without malice do "not give rise to an Eighth Amendment violation." ECF No. 300 at 9:2-3 (quoting in part *Baze*, 553 U.S. at 50).

Requiring any additional information, even in an anonymized format, would only prove correct the dissenting judge's concerns regarding the Ninth Circuit's erroneous decision. Specifically, as noted there,

> [t]he only way such information could meaningfully contribute… is if specific information about the qualifications of the personnel allowed for members of the public to identify them. The names of the individuals who take part in the execution . . . would certainly contribute to public debate. Members of the public could ... protest outside their homes or offices. Reporters could call and ask them about why they decided to participate in an execution. The problem, of course, is that this kind of public discourse would not "play[] a significant *positive* role in the functioning of this particular process in question." Rather, **it would severely inhibit Arizona's ability to conduct lawful executions by making it difficult to find qualified personnel willing to risk their privacy and their careers to participate in an execution.**

*Wood v. Ryan,* 759 at 1099 (Bybee, J., dissenting) (citation omitted, bold emphasis added).

The declarations of Deputy Director Gittere and Deputy Director Williams make clear that the concerns raised by Judge Bybee in *Wood* are just as true now, see attached hereto as "**Exhibit A**" and "**Exhibit B.**" When NDOC sought to obtain information regarding the individuals backgrounds, credentialing, licensing, and other information as required by the Court, both EMTs and the attending physician withdrew from further consideration out of fears for their safety and security. Ex.A, DD Gittere's Decl. at 5, ¶ 14; Ex. B, Williams' Decl. at 3, ¶¶ 10-12. Thus, just as predicted in *Wood,* "the mere possibility" that individuals' identities may be discovered based on the disclosure of qualifications has "dissuade[d] qualified individuals from performing a lawful task on behalf of the State and its citizens." 759 F.3d at 1100.

In short, providing additional information regarding the attending physician, EMTs, and drug administrators is not legally required, and has now, as confirmed in the attached declarations, "interfere[ed] with the legitimate operation of [Nevada's] execution protocol without meaningfully contributing to the public discourse surrounding [Floyd's] execution." *Id.*

The facts in this case have proven the prophetic words of the *Wood* dissent. Moreover, the Supreme Court implicitly agreed with the dissent's forewarning when it vacated the majority's ruling and reinstated the district court's denial of the preliminary injunction.

Yet, this Court need not only look to *Ryan*, the Eighth Circuit has also noted that providing the type of information the Court seeks—while leaving open the possibility that the information will be provided to Plaintiff, Plaintiff's counsel, and potentially the public—"serve[s] as a back-door means to frustrate the State's ability to carry out executions by lethal injection." *Zink v. Lombardi*, 783 F.3d 1089, 1105-06 (8th Cir. 2015). Similar rulings have been made in the Eleventh Circuit, where the court noted that a plaintiff has no constitutional right know who will place the catheters that will act as the conduit for the lethal injection drugs. *Wellons v. v. Commissioner, Ga. Dept of Corrections*, 754 F.3d 1260, 1267 (11th Cir. 2014). The Nevada Supreme Court held similarly nearly a century ago in *State v. Gee Jon*, 46 Nev. 418, 424, 211 P. 676, 682 (1923).

Finally, the legal precedent establishing why this information is not legally necessary is buttressed by another overarching bedrock principle: NDOC, as a government entity, is entitled to a presumption that it will act in a constitutional and good faith manner in carrying out Floyd's execution. *Wellons*, 754 F.3d at 1265 (citing *Alas. Dep't. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 507 (2004) ("state government officials are presumed to carry out their duties in a good-faith manner and in compliance with federal laws")). The Ninth Circuit has also confirmed that, even in the context of a lethal injection challenge, raising "the ambiguity of the procedure and . . . risks attendant to the improper administration of drugs," state officials are presumed to "have acted 'in a careful and humane manner.'" *Beardslee v. Woodford*, 395 F.3d 1064, 1075 (9th Cir. 2005) (citing *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 462 (1947)). Lest there be any doubt on this point, DD Gittere's declaration makes clear that NDOC eliminates from consideration individuals based on information learned about them during the due diligence process. Ex. A at 3, ¶ 8.

For these reasons, as well as the reasons argued throughout this litigation in multiple filings,[3] NDOC Defendants respectfully argue that no additional information regarding the attending physician, EMTs, or drug administrators is legally or factually required. This is especially true given the conclusion of the eight-day evidentiary hearing and the parties' submission of closing briefs. Accordingly, just as this Court implicitly denied Plaintiff's previous motion (ECF No. 182) seeking similar information by not ruling on the motion at the hearing on November 5, 2021 (ECF No. 245) or at anytime prior to the close of proofs in the evidentiary hearing, this Court should, consistent with both binding and persuasive authority, refrain from requiring any additional information be provided to this Court as it relates to the credentials of the attending physician, EMTs, or drug administrators.

Respectfully submitted on this 27th day of January 2022, by:

AARON D. FORD
Attorney General

By: /s/ *D. Randall Gilmer*
D. Randall Gilmer (Bar No. 14001)
Chief Deputy Attorney General
Douglas R. Rands (Bar No. 3572)
Senior Deputy Attorney General
Ian Carr (Bar No. 13840)
Deputy Attorney General
*Attorneys for NDOC Defendants*

---

[3] *See, e.g.*, ECF No. 24 at 5:9 n. 15; ECF No. 37 at 10:22-11:12; ECF No. 195 at 3:4-5, 18-20; 4:1-3, 13-15 n. 1; 4:20-5:17; 6:4-17; 7:11-8:2; 8:16-9:2; ECF No. 199 at 4:1-8; 7:8-8:8; 8:9-11; 9:8-14; 10:27-11:3; ECF No. 235 at 2:2-7, 3:9-15; 3:21-4:10; 8:7-9; 9:13-19; 10:14-24; 11:8-10; 11:20-12:6; 13:16-20; 13:23-14:3; 14:6-8.