# EXHIBIT A – DECLARATION OF WILIAM GITTERE, DEPUTY DIRECTOR OF OPERATIONS FOR THE NEVADA DEPARTMENT OF CORRECTIONS

AARON D. FORD
  Attorney General
D. Randall Gilmer (Bar No. 14001)
  Chief Deputy Attorney General
Douglas R. Rands (Bar No. 3572)
  Senior Deputy Attorney General
Ian Carr (Bar No. 13840)
  Deputy Attorney General
State of Nevada
Office of the Attorney Generals
555 E. Washington Ave., Ste. 3900
Las Vegas, Nevada 89101
Telephone: (702) 486-3427
Facsimile: (702) 486-3773
Email: DGilmer@ag.nv.gov

*Attorneys for Defendants Daniels,*
*Wickham, Gittere, Reubart, Drummond,*
*Minev, Green and Fox (NDOC Defendants)*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ZANE M. FLOYD, | Case No. 3:21-cv-00176-RFB-CLB |
| Plaintiff, | |
| v. | **DECLARATION OF WILLIAM GITTERE, DEPUTY DIRECTOR OF OPERATIONS FOR THE NEVADA DEPARTMENT OF CORRECTIONS** |
| CHARLES DANIELS, DIRECTOR, NEVADA DEPARTMENT OF CORRECTIONS, ET AL., | |
| Defendants. | |

I, William Gittere, hereby declare based on personal knowledge and/or information and belief, that the following assertions are true.

1.      As of November 10, 2021, I have served as the Deputy Director of Operations for the Nevada Department of Corrections (NDOC). Prior to that date, I served as the Warden at Ely State Prison (ESP).

2.      I have worked in corrections for over fourteen (14) years. I also served in the U.S. Army.  I received extensive medical training throughout my career which began in or around 1985. I also studied at St. Anthony's Institute of Emergency Medicine to receive paramedic training. I had further medical training through the U.S. Army during my

military service.  I also received a Bachelor of Science in 2005.

3.      During the hearing on January 26, 2022, the Court requested specific information relating to the candidates being considered for: (1) the attending physician; (2) the two (2) EMTs; and (3) the drug administrators.  This declaration will focus on the attending physician and EMT information, as Deputy Director Williams is tasked with selecting the drug administrators.

4.      At the hearing I advised the Court that I believed the attending physicians and EMTs I have contacted would likely not want any of their information shared without assurances that the information would remain confidential.  This is due to the fact that providing information such as specialty or education would be identifiable factors in the small community of Ely, Nevada.  Nonetheless, I communicated to the Court that I would reach out to the individuals to ascertain what information I could regarding the credentials, and to also inform them that the Court has instructed the NDOC to provide the information to the Court, and possibly, to Plaintiff's counsel, Plaintiff and others.  I also was to communicate with the attending physician that the Court may wish to hear testimony from him or her on February 4, 2022, but that the Court had not made a final decision as to whether testimony would be necessary, or under what conditions testimony would be provided if the Court determined it was necessary.

5.      Based on the hearing, I initiated contact with candidate number one for the attending physician position ("AP Candidate 1").  AP Candidate 1 advised me that based on me simply requesting the information, the individual was no longer willing to consider being the attending physician. AP Candidate 1 informed me that he or she was concerned with providing any information to the Court knowing there was no guarantee the information would not be kept solely with the Court.  According to the Candidate No. 1, the thought of any portion of the individual's information being released, or for the potential to appear for testimony, was tantamount to risking the life and safety of the candidate, the candidate's family, and the good citizens of Nevada.

/././

6. AP Candidate 1's objection to providing any information to the Court was so strong that the individual specifically informed me that neither I nor anyone associated with the NDOC should ever contact him or her again.

7. Given AP Candidate 1's express desire to no longer be considered, and expressed concerns for safety and security, I am concerned about sharing any information to this Court regarding this individual at this time. I would also state, that given AP Candidate 1 no longer willing to be considered, any information the Court would wish to obtain from the individual is no longer necessary given the individual's non-involvement in the execution.

8. After attempting to reach AP Candidate 2 on Wednesday, July 26, 2022, I was eventually able to communicate with AP Candidate 2 on Thursday, July 27, 2022. While explaining to AP Candidate 2 the Court's request regarding providing information regarding the individual's credentialing information as well as the possibility of testimony of February 4, 2022, AP Candidate 2 did not immediately withdraw from consideration, as the individual was at least willing to discuss continued involvement in the execution with me and possibly counsel for NDOC as it related to taking steps to ensure confidentiality. However, prior to AP Candidate 2 deciding whether he or she would remain committed to serving in the role of attending physician, additional information regarding the individual was made known to me. Based on the information learned regarding AP Candidate 2, I concluded that I must recommend to Director Daniels that AP Candidate 2 no longer be considered for the position. Following additional due diligence and discussions with Director Daniels, Director Daniels agreed with my recommendation that AP Candidate 2 should be eliminated from consideration.

9. As with the two attending physicians, I also reached out to the two EMTs that had previously indicated they would be willing to be participate in the execution depending the timing of the executions and the circumstances surrounding their involvement in the execution—particularly as it relates to the possibility of their identify remaining anonymous and confidential at all times. These two individuals will be referred to as EMT-

1 and EMT-2 throughout the remainder of this declaration.

10.     Upon communicating with EMT-1, I was informed that EMT-1 would no longer consider participating in the execution. The stated reason given by EMT-1 was, similar to AP Candidate 1, that the individual was concerned with providing any information to the Court with the possibility that said information, whether in whole or in part, could be released to Plaintiff, Plaintiff's counsel, or the public. In fact, the individual specifically stated that discussion of even a minor possibility of limited information being provided to anyone was too much of a safety risk for the individual as well as the individual's family.

11.     I specifically asked both AP Candidate 1 and EMT-1 if they would speak to NDOC's counsel in this matter. By making that offer to them, I was hopeful counsel may be able to speak with them regarding their concerns in an attempt to alleviate their concerns and to explain potential steps that could be sought to protect their identity in the hopes that they would reconsider. Neither individual was even willing to consider the request to speak to counsel.

12.     I also was able to communicate with EMT-2. This individual, while originally considering further discussions with counsel in an attempt to alleviate concerns, also was a "hard no" after being informed of the Court's request that information regarding their licensing, credentialing, education, and work history be provided to the Court. EMT-2, like AP Candidate 1 and EMT-1, was also extremely concerned with the possibility that any of his or her information would be made available to the Court with the possibility that said information, whether in whole or in part, could be released to anyone.  EMT-2 informed me that the thought of any portion of the individual's information being released to anyone prior to the execution occurring was not something the individual was willing to risk. EMT-2 acknowledged that while it would be hoped that his or her involvement would remain anonymous and confidential even after the execution was completed, he or she was willing to participate on the presumption the information may be released following the event despite efforts to keep it confidential. However, the risk of the information becoming known

prior to the event, given safety concerns for both EMT-2 and EMT-2's family was too great a risk.

13.     Unlike AP Candidate 1 and EMT-1, EMT-2 did indicate to me that if the Court were to "guarantee" no information would be required to be provided to the Court or anyone else prior to the actual event taking place, he or she would reconsider being involved. However, without such assurances, EMT-2 is also no longer willing to be a part of the execution.

14.     Accordingly, with the possible exception of AP Candidate 2, who NDOC has eliminated from consideration, none of the candidates contacted and considered would provide me with any additional information regarding their education, training, certificates or practice nor would they agree to allow me to provide any information I already know about these individuals to the Court. As noted above previously, given that these individuals are not willing to participate any longer, and since each of them expressed specific safety and security concerns regarding providing any information to the Court, I do not feel comfortable providing any such information to the Court. In addition, since none of the individuals are willing to proceed in the execution any longer, the reason the Court sought this information no longer seems to apply.

15.     Based on the above information, at this time, NDOC no longer has an attending physician or EMTs willing to participate in the execution. I will continue to attempt to locate qualified individuals consistent with my testimony during the trial, and as also previously provided to this Court throughout various filings. If I am able to locate any individuals willing to fill these critical roles—and assuming there is sufficient time— for training to take place, I will inform NDOC's counsel immediately. Given this Court's latest instructions, when reaching to others for consideration, unless and until I am instructed otherwise by further clarification from the Court, I will ensure that each individual is made aware of the information this Court has ordered be provided to it so that

/././

/././

the individuals know what is being asked of them prior to providing NDOC with a commitment to proceed.

16.     I declare under penalty of perjury pursuant to 28 U.S.C. section 1746 that the foregoing is true and correct.

EXECUTED this 27th day of January, 2022.

/s/ *William Gittere**

William Gittere
Deputy Director of Operations,
Nevada Department of Corrections

* Pursuant to Temporary General Order 2020-05, entered by Chief Judge Du on March 30, 2020, https://www.nvd.uscourts.gov/wp-content/uploads/2020/03/GO-2020-05-re-COVID-19-Remote-Hearings.pdf, and as extended on most recently on December 17, 2021, https://www.nvd.uscourts.gov/wp-content/uploads/2021/12/General-Order-2020-05-7th-Extension.pdf, last accessed January 26, 2022, DD Gittere has authorized counsel to affix his electronic signature to this Declaration. Should counsel have misconstrued these Temporary Orders in any way, or if the Court wishes to have a hand-signed copy of this Declaration, one will be provided to the Court upon request.