Rene L. Valladares
Federal Public Defender
Nevada Bar No. 11479
David Anthony
Assistant Federal Public Defender
Nevada Bar No. 7978
David_Anthony@fd.org
Brad D. Levenson
Assistant Federal Public Defender
California Bar No. 166073
Brad_Levenson@fd.org
411 E. Bonneville Ave., Ste. 250
Las Vegas, NV 89101
(702) 388-6577
(702) 388-5819 (fax)

Attorneys for Zane M. Floyd

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Zane M. Floyd,<br><br>      Plaintiff,<br><br>v.<br><br>Charles Daniels, Director, Nevada, Department of Corrections, *et al.*,<br><br>      Defendants. | Case No. 3:21-cv-00176-RFB-CLB<br><br>Plaintiff's Response to NDOC Defendants' Supplemental Brief (ECF No. 301)<br><br>DEATH PENALTY CASE. |

## I. Introduction

At the hearing on January 26, 2022, this Court ordered NDOC to submit information regarding the education, relevant certifications, professional experience, experience with relevant equipment, and upcoming trainings with respect to NDOC's execution protocol of the attending physician, drug administrators, and EMTs. ECF No. 302. The Court also invited NDOC to submit a brief regarding what information about these execution personnel should be provided to Floyd's counsel in redacted form by January 27, 2022. *Id.*

On January 27, 2022, NDOC filed a supplemental brief relitigating this Court's decision and arguing that Floyd's counsel should receive none of the information ordered by the Court. ECF No. 301. In support of its position, the State repeats the same arguments contained in its opposition to Floyd's September 10, 2021, discovery motion. ECF Nos. 182, 195, 206. These arguments are not responsive to this Court's order.

NDOC's supplemental pleading was supposed to identify specific information regarding the qualifications and training of the lethal injection personnel that was so sensitive it could not be submitted to Floyd's counsel under the existing protective order due to the perceived risk that it could lead to their public identification. Instead, NDOC compromised the anonymity of its only candidates by identifying the particular geographical region where the identified medical personnel live in its public filings—something Floyd never raised or requested disclosure of—and argued that a risk of harm exists to the personnel based upon considerations unique to that location. ECF No. 301-1 at 3.

More troubling, NDOC disclosed that the first time Deputy Director Gittere broached the issue of basic qualifications of the identified attending physicians was on January 27, 2022, and the second proposed attending physicians' information was so concerning that he and Director Daniels eliminated that individual from further consideration. ECF No. 301-1 at 4. This litigation has been pending for almost a year, and NDOC has insisted upon expedited resolution of this matter so it can perform the execution before the end of February. Yet NDOC only made an inquiry regarding the qualifications of the individuals one month beforehand, and only in response to this Court's order for that information. ECF No. 301 at 5 (stating issues arose "[w]hen NDOC sought to obtain information regarding the individuals backgrounds, credentialing, licensing, and other information as required by the Court"). NDOC offers no explanation for why this type of due diligence did not occur earlier.

NDOC's admission that it has not previously ascertained the basic qualifications of the personnel it has identified independent of this Court's order of January 26, 2022, shows precisely why such information must be obtained and provided to Floyd's counsel so an adequate inquiry can be made in order to protect Mr. Floyd's constitutional rights.

**II.   Argument**

As explained above, NDOC has failed to comply with this Court's order to brief the types of disclosures of information and personally identifying information that should be redacted from disclosure to Floyd's counsel. ECF No. 302. Moreover, NDOC publicly disclosed geographical information regarding the lethal injection

personnel that Floyd never requested as a justification for its refusal to provide accompanying information concerning the credentials and training of the lethal injection personnel, arguing that the combination of both disclosures could lead to the revelation of their identities. Taking NDOC's information at face value, it does not appear that NDOC currently has the personnel to conduct an execution. And NDOC proffers no justification for its failure to make these inquiries beforehand, given that these issues have been the subject of litigation for months now.

Federal courts adjudicating Eighth Amendment method of execution challenges routinely authorize discovery concerning the personnel involved in the lethal injection procedure and their training for the execution.[1] That discovery usually takes the form of anonymous information regarding the personnel that is sufficient for the plaintiff and the court to assess their relevant qualifications and training. Floyd provided a representative sample of federal court orders authorizing such discovery in his prior motion. ECF Nos. 182 at 4; 207-1 to 207-3.[2] NDOC cites

---

[1] The authorities cited by NDOC are distinguishable as *Wood v. Ryan*, 759 F.3d 1076, 1077-78 (9th Cir. 2014), involved a First Amendment claim, and the other cited authorities involve summary proceedings for stays of execution, not a trial on the merits of an Eighth Amendment challenge.

[2] *See, e.g., De'Kelvin Rafael Martin v. Timothy Ward,* No. 1:18-cv-4617-MLB, ECF No. 73 at 19–20 (N.D. Ga. March 30, 2021) (finding that while Georgia's protocol explains the makeup of the execution staff and that the execution team trains informally throughout the year, "the [p]rotocol does not address potential user error—information Plaintiff could obtain from talking to members of the execution team . . . . The identity of the team members and their training is thus relevant."); *Terry Lynn King v. Tony Parker,* No. 3:18-cv-01234, ECF No. 107 at 18 (M.D. Tenn. July 20, 2020) (finding documentation regarding the execution teams' training to be relevant and that "Defendants cannot avoid revealing … training"); *Richard Cooey v. Ted Strickland,* No. 2:04-cv-1156, ECF No. 413 at 4 (S.D. Ohio

no apposite authority on this point, i.e., cases involving a trial on the merits of an Eighth Amendment method of execution claim, and some of the authorities it cites, *see, e.g.*, *Baze v. Rees*, 553 U.S. 35 (2008), included the very discovery it argues should not be permitted.[3] This Court has already recognized that *Baze* requires disclosure of this information. ECF No. 246 at 31-33.

To summarize, federal law requires that states have sufficient procedural safeguards in place to comply with the Eighth Amendment. *Rhoades v. Reinke*, 671 F.3d 856, 858 (9th Cir. 2011). The execution protocol and any submissions made by

---

Oct. 8, 2008) (finding documents concerning execution team members "training and experience to be on the team, including, but not limited to, documents sufficient to identify courses taken, diplomas or degrees received, certifications obtained, hours logged, etc., and also including complete copies of any relevant certificates, degrees, or diplomas" to be relevant, "admissible," and "discoverable"); *accord Walker v. Johnson*, Case No. 1:05-cv-00934-CMH-TRJ, Order at 1-2, ECF No. 76 (E.D. Va. February 8, 2006), Ex. 79.

[3] For example, NDOC cites the Eighth Circuit's decision in *Zink v. Lombardi*, 783 F.3d 1089, 1105-06 (8th Cir. 2015), wherein the plaintiffs argued they should be able to learn the identity of the company supplying the execution drugs to the prison in order to plead an alternative method of execution. The plaintiffs also argued that they needed the information to report the drug supplier to relevant authorities for sanction and boycott. *Id.* at 1106. Floyd's discovery request bears no resemblance to this situation.

With that said, the very same discovery NDOC argues it is not required to provide was expressly permitted in the protective order submitted by Missouri in *Zink*. Specifically, Missouri's proposed protective order stated: "Nothing in this Order shall be construed to prevent Plaintiff's counsel from inquiring during a deposition or other discovery process into the education, professional background, board certification, licensing or credentialing of members of the execution team, except that the members' names, identifying numbers on licenses and other credentials, and any other uniquely personal identifiers." *Zink v. Lombardi*, Case No. 2:12-CV-4209-NKL, Motion for Protective Order Regarding the Identity of Members of Missouri's Execution Team (filed May 2, 2013), ECF No. 94-1 at 7-8 (proposed protective order). Ex. 78.

The personal identifying information excluded from Missouri's disclosures to plaintiffs' counsel are the same information NDOC was supposed to propose to this Court in its supplemental brief.

5

the prison regarding minimum qualifications are important, but it is also necessary to determine whether the actual personnel are qualified and whether they have received adequate training on the protocol. *See, e.g.*, *Morales v. Tilton*, 485 F. Supp.2d 972, 979-80 (N.D. Cal. 2006). Throughout this litigation, NDOC has failed to acknowledge this point. And NDOC's position in its supplemental brief is so extreme that it appears to believe that this Court could find in its favor even when it acknowledges that no qualified personnel are available to participate in the execution or are even at this point identified. ECF No. 301 at 6-7.

None of the submissions made by NDOC to date provide the type of procedural safeguards required by the federal constitution. NDOC's execution protocol assumes that the attending physician will have expertise regarding venous access and IV administration of medications, PEX 5860 (EM 110.01(D)); knowledge of the particular drugs and their effects, PEX 5861 (EM 110.02(D)(2) (requiring attending physician to determine whether "the condemned inmate's responses to the lethal drugs deviates from as expected")); the ability to perform consciousness assessments, PEX 5861 (EM 110.02(D)(3)); the ability to advise Director Daniels regarding whether to continue with, or stop, the execution after each medication is administered, PEX 5862-5865 (EM 110.02(D)(3)); and the ability to perform resuscitation should such a decision be made, PEX 5861 (EM 110.02(D)(1)(a)). But Deputy Director Gittere testified at the evidentiary hearing that he did not believe the attending physician needed to have these qualifications. ECF No. 292 at 77; *contra* ECF No. 292 at 57, 60-61 (testimony of Dr. Heath). And Deputy Director

Gittere's recent declaration does not state that either AP 1 or AP 2 have these qualifications. ECF No. 301-1.

Similarly, Deputy Director Williams's information regarding the drug administrators is patently deficient. Expert testimony established that the drug administrators would need to have the ability to prepare the medications, know of the tension within the IV lines while pushing the medication, monitor the drip bag, and communicate with the attending physician during the procedure. ECF No. 292 at 57-60 (Dr. Heath).[4] Deputy Director Williams testified that the drug administrators would be registered nurses or higher. ECF No. 294 at 13-14.[5] But his recent declaration contains nothing but law enforcement experience for the three individuals considered for the position with no mention of relevant medical experience or training. ECF No. 301-2 at 3-4. Just as troubling, Deputy Director Williams's declaration contains no representations at all regarding the medical official who was supposed to be identified to train the drug administrators or that person's experience. This omission is concerning as Deputy Director Williams testified at the evidentiary hearing that he did not select the trainer of the drug

---

[4] Deputy Director Gittere testified during the evidentiary hearing that the detailed drug preparation instructions prepared as a supplement to the 2018 protocol's version of EM 103 & 110 (PEX 2060-2076), Ex. 73 to Petitioner's Evidentiary Hearing Exhibits, Drug Preparation Instructions Supplement (EM 103, 110)), were embedded in the present execution protocol. ECF No. 292 at 99-100. This assumption is incorrect. The omission makes it even more important that the drug administrators are properly selected and trained.

[5] Deputy Director Williams later testified these requirements were merely aspirational. ECF No. 294 at 16.

1  administrators. ECF No. 294 at 15-16.[6] In short, NDOC has provided no

2  information about the qualifications of the medical person who will train the drug

3  administrators and whether that individual has even been identified. And the

4  information that Deputy Director Williams has supplied provides no relevant

5  qualifications or experience for the drug administrators.

6      Finally, NDOC is already in violation of the execution protocol's requirement

7  that EMTs be contracted not less than 30 days before the execution. PEX 5835 (EM

8  105.01(B)(1)), PEX 5849 (EM 109.01). And Deputy Director Gittere's declaration

9  shows that NDOC does not presently have EMTs with advanced certifications for

10  the execution who meet his minimum requirements (ECF No. 292 at 52). ECF No.

11  301-1 at 6.

12  / / /

13  / / /

14  / / /

---

[6] Deputy Director Gittere testified that he did not select the drug administrators, ECF No. 292 at 97-98, and was not involved in their training. *Id*. at 46.

## III. Conclusion

In light of NDOC's recent submissions, there should be a discussion at the next status check about the overall progress of this litigation as NDOC is admittedly not prepared to conduct an execution before the end of February, and it does not even have the personnel in place for training of medical personnel.

Moreover, this Court should require that NDOC provide the information about any identified lethal injection medical personnel (to the extent any still exist) to the Court and to Floyd's counsel so that an adequate inquiry can be made. Otherwise, NDOC must be enjoined from carrying out any execution. *Morales*, 465 F. Supp.2d at 982-84.

Dated this 31st day of January, 2022.

Respectfully submitted,

Rene L. Valladares
Federal Public Defender

*/s/ David Anthony*
David Anthony
Assistant Federal Public Defender

*/s/ Brad D. Levenson*
Brad D. Levenson
Assistant Federal Public Defender