Rene L. Valladares
Federal Public Defender
Nevada Bar No. 11479
David Anthony
Assistant Federal Public Defender
Nevada Bar No. 007978
David_Anthony@fd.org
Ellesse Henderson
Assistant Federal Public Defender
California State Bar No. 302838
Ellesse_Henderson @fd.org
411 E. Bonneville Ave., Ste. 250
Las Vegas, NV 89101
(702) 388-6577
(702) 388-5819 (fax)

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Zane M. Floyd and Robert Ybarra Jr., <br><br> Plaintiffs, <br><br> v. <br><br> James Dzurenda, Director, Nevada Department of Corrections, *et al.,* <br> Defendants. | Case No. 3:21-cv-00176-RFB-CLB <br><br> **Motion for Preliminary Injunction** <br><br> DEATH PENALTY CASE |

TABLE OF CONTENTS

Introduction ..................................................................................................... 1

Factual Background .........................................................................................2

    A.    Floyd lost as unripe a challenge to the execution protocol in his habeas proceedings. ..................................................................................... 3

    B.    In March 2021, CCDA Wolfson announced plans to execute Floyd. ............. 4

    C.    NDOC opposed a stay, an evidentiary hearing, and any opportunity for Floyd to challenge the new protocol. ...........................................................9

    D.    This Court preliminarily enjoined Floyd's execution, and the state court separately ordered a stay. .................................................................. 10

    E.    The Supreme Court denied Sherman's petition for writ of certiorari, and the Clark County District Attorney again announced in the RJ plans to seek execution warrants. ............................................................................. 11

Legal Standard ............................................................................................... 11

Argument ....................................................................................................... 12

    A.    Plaintiffs are moving for equitable relief at the earliest possible time. ...... 13

    B.    Plaintiffs are entitled to a preliminary injunction. ..................................... 13

        1.    Plaintiffs are likely to succeed on the merits. ........................................... 14

        2.    The balance of the equities weighs heavily in Plaintiffs' favor. ............... 17

            a)    Plaintiffs will be irreparably injured without a preliminary injunction. 17

            b)    Any injury to the defendants is significantly outweighed by the harms Plaintiffs face. ................................................................................. 18

            c)    The public interest does not support an unconstitutional execution. ...... 20

    C.    This Court is authorized to grant a stay of execution under the All Writs Act. .......................................................................................................... 21

Conclusion.......................................................................................................23

## INTRODUCTION

On April 6, 2026, undersigned counsel learned the Clark County District Attorney's office planned to seek execution warrants for Zane Floyd and Donald Sherman.[1] The following week, on April 15, a newspaper article made those plans public.[2] In that article, Clark County District Attorney Steven Wolfson reported speaking with the Director of the Nevada Department of Corrections, James Dzurenda, "who said he had multiple options for obtaining lethal injection drugs."[3] There's "a likelihood of [NDOC] obtaining the drugs," Wolfson added, "and if they obtain the drugs, then we intend to move forward."[4]

The parties have been here before. In March 2021, Floyd learned of his impending execution date from the same newspaper.[5] But NDOC delayed disclosure of the execution drugs, preventing Floyd from litigating the protocol's constitutionality until after an execution date was set. This Court granted a preliminary injunction, holding the Due Process Clause required adequate time to litigate the execution protocol before an execution. And although the case became

---

[1] Sherman has filed a motion to intervene in this litigation. ECF No. 362.

[2] Noble Brigham & Akiya Dillon, *DA to seek death warrants for 3 Nevada convicted killers*, Las Vegas Review-Journal, April 15, 2026, https://www.reviewjournal.com/crime/da-to-seek-death-warrants-for-3-convicted-killers-3762502/. In the same article the DA's office also announced plans to seek an execution warrant for Sterling Atkins. Undersigned counsel represents Atkins's co-defendant and so is conflicted from his representation.

[3] *Id.*

[4] *Id.*

[5] David Ferrara, *DA to proceed with death penalty against gunman in 1999 store killings*, Las Vegas Review-Journal (Mar. 30, 2021), https://www.reviewjournal.com/crime/courts/da-to-proceed-with-death-penalty-against-gunman-in-1999-store-killings-2315637/.

moot on appeal to the Ninth Circuit, Judge Berzon agreed in a concurrence with this Court's holding that there exists "a procedural-due-process-based right to a reasonable period to contest the drug protocol." *Floyd v. Daniels*, No. 21-16134, 2021 WL 5406851, at *2 (9th Cir. Nov. 18, 2021) (Berzon, J., concurring) (citing *First Amend. Coal. of Arizona, Inc. v. Ryan*, 938 F.3d 1069, 1084–85 (9th Cir. 2019) (Berzon, J., concurring in part and dissenting in part), and *Lopez v. Brewer*, 680 F.3d 1068, 1083–84 (9th Cir. 2012) (Berzon, J., concurring in part and dissenting in part)); *see also id.* ("When asked at argument, the state maintained—but only in passing, and with no real conviction—that there is *no* procedural due process right at all to pre-execution disclosure to the person whose execution is planned of the drug protocol the state plans to use. That position is surely wrong.").

The same result is warranted now. Floyd and Sherman will soon face execution warrants under an unknown protocol, with unknown drugs, sequences, and dosages. However, Nevada's approach to executions is unconstitutional as the Due Process Clause requires adequate time to litigate the constitutionality of any protocol. This Court should grant a preliminary injunction and, once NDOC discloses the protocol, set a briefing schedule providing Floyd and Sherman the time the Constitution requires to properly litigate the new, untested protocol.

### FACTUAL BACKGROUND

For years plaintiffs have challenged Nevada's then-current execution protocols individually in their federal habeas proceedings. *See Floyd v. Filson*, 949 F.3d 1128, 1152 (9th Cir. 2020); *Sherman v. Baker*, No. 2:02-CV-1349-LRH-VCF, 2015 WL 9216570, at *2 (D. Nev. Dec. 16, 2015), *aff'd sub nom. Sherman v. Gittere*,

92 F.4th 868 (9th Cir. 2024); *Sherman v. Baker*, No. 2:02-CV-1349-LRH-VCF, 2012 WL 993419, at *16 (D. Nev. Mar. 23, 2012). And each challenges the current protocol in these Section 1983 proceedings. But a pattern has emerged. When Plaintiffs challenge then-existing protocols, State officials respond that the challenges are not yet ripe, as the protocols could—and in fact do—change. But when Plaintiffs ask for adequate time to litigate newly disclosed protocols, those same State officials oppose, insisting that executions proceed as quickly as possible. Plaintiffs find themselves in that same position now.

### A.    Floyd lost as unripe a challenge to the execution protocol in his habeas proceedings.

Floyd argued in his habeas proceedings that execution by lethal injection is unconstitutional under the Eighth and Fourteenth Amendments. *See Floyd*, 949 F.3d at 1152. The State responded that Floyd's challenge was unripe because he did not face an execution warrant. Supplemental Answering Brief of Respondent-Appellee at 4–6, *Floyd v. Filson*, No. 14-99012 (9th Cir. Sept. 21, 2018). Although concerns were expressed at oral argument with the State's ripeness argument, in particular due to the speed at which the State could seek an execution and the Ninth Circuit's then-recent experience with an Arizona protocol revised hours before an execution,[6] the Ninth Circuit ultimately agreed that Floyd's claim was unripe. *See Floyd*, 949 F.3d at 1152. Judge Berzon cautioned, however, that "it

---

[6] Oral Argument at 49:00–53:30, *Floyd v. Filson*, No. 14-99012 (9th Cir. Jan. 31, 2019), https://www.ca9.uscourts.gov/media/video/?20190131/14-99012/.

might be nice to go back and see whether you get some order to this," so "we're not all litigating with a gun to our heads."[7]

### B.    In March 2021, CCDA Wolfson announced plans to execute Floyd.

In early November 2020, the Supreme Court denied Floyd's petition for writ of certiorari. *Floyd v. Gittere*, 141 S. Ct. 660 (2020). That denial ended all then-pending litigation for Floyd.

In March 2021, Wolfson announced in the *Review-Journal* that he intended to seek Floyd's execution.[8] That same article, however, noted some of the issues with the drugs obtained for a previously planned execution.[9] NDOC had not stated whether it had been able to obtain a new supplier of drugs for the prior protocol, or whether it would create a new protocol.[10]

Immediately after the District Attorney's Office sought an execution order for the week of June 7, 2021, Floyd filed this civil rights case challenging the prior three-drug protocol, which consisted of midazolam, fentanyl, and cisatracurium.[11] In addition to challenging the previous protocol under the Eighth Amendment, Floyd claimed that proceeding with his execution would violate his Fifth and Fourteenth Amendment rights to due process because the State had not provided

---

[7] *Id.* at 53:00–53:30.

[8] David Ferrara, *DA to proceed with death penalty against gunman in 1999 store killings*, Las Vegas Review Journal (Mar. 30, 2021), https://www.reviewjournal.com/crime/courts/da-to-proceed-with-death-penalty-against-gunman-in-1999-store-killings-2315637/.

[9] *Id.*

[10] *Id.*

[11] ECF No. 2.

adequate notice of the execution protocol and an opportunity for Floyd to be heard.[12] Floyd repeated those due process arguments regularly at the hearings that followed.[13]

In response, NDOC "agree[d] with Floyd's overarching premise that '[f]undamental fairness, if not due process, requires that the execution protocol . . . be forwarded to him in prompt and timely fashion.'"[14] NDOC additionally confirmed that it would be creating a new execution protocol with new drugs for Floyd's execution.[15] NDOC Director Charles Daniels testified on May 6, 2021, that creation of the new protocol could take an additional 90 to 120 days.[16] That length of time was needed, according to Daniels because: (1) he needed to confer with the Chief Medical Officer and other individuals, (2) he was "still in the process of looking at various drugs to be used," (3) he needed to look at the costs involved, (4) he needed to coordinate with other state entities and officials, (5) he needed to check the equipment, (6) he needed to consider constitutional implications, and (7) he needed to check drug availability and expiration.[17]

---

[12] *Id.* at 55–56; *see also* ECF No. 7 (arguing that the Eighth Amendment has no meaning without a corresponding due process right to learn of the execution protocol and be heard on any constitutional challenges); ECF No. 71 (distinguishing procedural due process dicta from *Pizzuto* and arguing that, "if ever a procedural due process right to know the details of an execution protocol exist, it must surely exist in the circumstances of Floyd's case . . . .").

[13] ECF No. 40 at 8–11, 18–19; ECF No. 49 at 26–29, 107; ECF No. 81 at 30–33, 48–53.

[14] ECF No. 7 at 4 (quoting Floyd's motion).

[15] *See* ECF Nos. 22, 23, 24, 25.

[16] ECF No. 49 at 44–45.

[17] *Id.* at 40–44, 55, 76.

For the month and a half following Floyd's complaint, he was in limbo, unable to proceed with his lethal injection challenge. NDOC repeatedly argued for delaying litigation until it finalized the execution protocol, including delaying any consideration of Floyd's motions for a temporary restraining order, preliminary injunction, and stay of execution.[18] Yet, at the same time, NDOC refused to disclose any information Floyd could use to begin investigating potential execution drugs, attempting to shield broad categories of information with the deliberative process privilege. Those privilege arguments were, at first, relatively narrow.[19] But they steadily expanded to include the names of any drugs under consideration, all internal communications between state employees, and purely factual information, such as drug availability and side effects.[20] NDOC explicitly refused to provide this information under a protective order.[21] When this Court told the parties it would decide before the June 3 hearing whether to order disclosure,[22] NDOC responded that it would seek a stay and an interlocutory appeal rather than disclose the

---

[18] *See* ECF No. 22 at 7–10 (no "actual case or controversy," "hypothetical," no "current injury in fact," "speculation, conjecture, and hypothetical"); ECF No. 10 at 2 ("nothing to stay," "illusory"); ECF No. 40 at 5–6, 9–12, 29–30 ("wait to see," "nothing for the court to stay," "very hypothetical"); ECF No. 49 at 14–19 ("putting the cart before the horse"); ECF No. 81 at 33–40, 46–47, 58 ("premature," "premature," "puts the cart before the horse," "still not ripe," "premature"); *see also* ECF No. 40 at 10–11 (arguing Floyd's claims were premature because final protocol hypothetically could include same drugs Floyd had proposed as less harmful alternative).

[19] *See* ECF No. 7 at 5.

[20] ECF No. 40 at 21–23, 27–28; ECF No. 49 at 7–39, 58–63, 67–69, 77–79, 92, 97–98; ECF No. 81 at 37–47, 57–58; ECF No. 37; *see also* ECF No. 49 at 31–32 (insisting that the privilege would cover any topic of examination except whether a final decision had been made).

[21] ECF No. 81 at 37–47, 57–59.

[22] *Id.* at 56–57.

6

names of the drugs.[23] While NDOC was fighting disclosure of the drug names, it was adding to its stores of those drugs. Between March 31 and June 3, 2021, NDOC placed three orders for alfentanil, one order for ketamine, one order for cisatracurium, and two orders for potassium acetate.[24]

In response, this Court repeatedly emphasized Floyd's due process rights, and its concerns given the lack of information Floyd had to meaningfully litigate the execution protocol. For instance, at the first hearing, recognizing that there would be a time when disclosure of the protocol came too late for meaningful litigation, this Court informed NDOC that "the closer that the finalization occurs to the proposed execution date, the more likely the Court would be to be open to at least a temporary stay until the protocol could be evaluated."[25] This Court repeated similar concerns at the next hearing, noting a tension between the CCDA seeking an execution, NDOC's delay in finalizing the execution protocol, and NDOC's opposition to a stay. Because "due process obviously . . . requires notice," this Court asked NDOC why the case should not be stayed "temporarily at least until the protocol was finalized."[26] NDOC responded by citing federalism, comity, lack of ripeness, and potential mootness, yet simultaneously refused to concede a stay might be necessary when those obstacles no longer existed.[27]

---

[23] *Id.* at 57; *see also* ECF No. 49 at 34–36.
[24] ECF No. 118 at 2.
[25] ECF No. 39 at 21–23.
[26] ECF No. 40 at 5; *see also id.* at 6–9 [ ("30 days, 45 days, those are standard periods of time that are granted under due process for far less significant deprivations."); *id.* at 11–13, 24, 31–34.
[27] *Id.* at 5–6, 9–12, 20–23, 29–31.

7

At the next hearing, on May 6, this Court responded to NDOC's privilege assertions by again suggesting a stay was appropriate.[28] Shortly after that hearing, the CCDA moved the proposed execution date from June 7, 2021, to July 26, 2021.[29] At a hearing four days later, Floyd argued that until the protocol was disclosed, changes to the planned execution date changed little with respect to Floyd's ability to meaningfully litigate his claims.[30] This Court responded it was "inclined to give [Floyd] the same amount of time that Director Daniels had to be able to evaluate the protocol," adding that part of its "inclination to grant the stay has to do with the fact that it's uncertain, and the uncertainty of it creates issues as relates to the investigation."[31] NDOC made no argument in opposition, instead "stand[ing] by" its previous pleadings and reserving the right to challenge the stay "at the appropriate time."[32]

On May 20, this Court again noted the tension between NDOC's shielding of the protocol and its opposition to a stay.[33] Although this Court said it was inclined to honor NDOC's deliberative process privilege at that time, it also made clear it was going to provide Floyd adequate time to review the protocol once released.[34] That time, this Court reiterated, should be the same that NDOC had to investigate and prepare the protocol.[35]

---

[28] ECF No. 49 at 19–20, 22–23.
[29] ECF No. 54 at 2–3.
[30] ECF No. 61 at 18–19.
[31] *Id.* at 20.
[32] *Id.* at 22.
[33] ECF No. 81 at 22–25, 34–35.
[34] *Id.* at 22–25, 34–35, 39, 42–45.
[35] *Id.* at 35, 41.

On June 3, NDOC provided Floyd's counsel the names of the drugs chosen for the final protocol.[36] The following week, on June 9, NDOC provided the dosages for those drugs and the sequence of their administration in a redacted final execution protocol (which NDOC filed with this Court the following day).[37] The NDOC Director later testified that the dosages and sequence had been finalized a day or two before that disclosure.[38]

### C. NDOC opposed a stay, an evidentiary hearing, and any opportunity for Floyd to challenge the new protocol.

After NDOC released the protocol, Floyd supplemented his motion for a preliminary injunction and stay of execution.[39] Floyd argued that the equities supporting a stay weighed heavily in his favor: he was likely to prevail on the merits, he would be irreparably harmed absent a stay, the public would be harmed by an unconstitutional execution, and any interests NDOC had were diminished by its delay releasing the execution protocol.[40] In doing so, Floyd identified serious concerns regarding the constitutionality of the lethal injection scheme in the newly disclosed protocol. And Floyd argued that judicial estoppel and the All Writs Act supported a stay.[41]

In response, NDOC insisted that Floyd's execution go forward without a stay and without an evidentiary hearing.[42]

---

[36] *See* ECF No. 91 at 5–9.
[37] ECF Nos. 93, 93-1 at 23–28.
[38] ECF No. 113 at 30, 39–40.
[39] ECF No. 98.
[40] *Id.* at 20–22.
[41] *Id.* at 23–24.
[42] ECF No. 107 at 10, 24.

**D.    This Court preliminarily enjoined Floyd's execution, and the state court separately ordered a stay.**

On June 28, this Court granted Floyd's motion for a preliminary injunction,[43] issuing a written order the following week, elaborating on the factual and legal bases for its decision and preliminarily enjoining Floyd's execution until the week of October 25, 2021.[44] This Court found that NDOC had begun creating a new execution protocol at the end of March, and Daniels had known the drugs for the protocol by early April, yet NDOC did not share that information with Floyd until June.[45] And this Court explained the eight different potential execution methods in the final protocol meant Floyd would need to address a variety of execution drugs.[46]

In April and May 2021, Floyd filed three motions in state district court challenging the State's request for an order and warrant of execution. The state district court denied the motions. Floyd filed petitions for writs of mandamus with the Nevada Supreme Court, challenging these denials. Because of this litigation, Floyd moved for a stay in the state district court, arguing the Nevada Supreme Court needed time to decide the writ petitions before Floyd was executed. The state district court agreed and ordered a stay. While that stay was in place, the Ninth Circuit dismissed NDOC's appeal of this Court's preliminary injunction as moot, with Judge Berzon agreeing in a concurrence with this Court's reasoning.

---

[43] ECF No. 113 at 161–69.
[44] ECF No. 128.
[45] *Id.* at 3.
[46] *Id.* at 4.

10

**E.    The Supreme Court denied Sherman's petition for writ of certiorari, and the Clark County District Attorney again announced in the RJ plans to seek execution warrants.**

On May 19, 2025, the Supreme Court denied Sherman review, ending his habeas litigation. *Sherman v. Bean*, 145 S. Ct. 2707 (2025). To Plaintiffs' knowledge, NDOC at that time did not have drugs available to carry out an execution.[47] Plaintiffs have received no notice that has changed with respect to the *current* protocol. But according to Wolfson's statements to the *Review-Journal*, Plaintiffs have cause for concern as NDOC potentially plans to create a *new* protocol (although there is some ambiguity[48]): "Wolfson said he had spoken with [NDOC] Director James Dzurenda, who said he had multiple options for obtaining lethal injection drugs."[49] Given this statement, Plaintiffs have moved as quickly as possible to restart the litigation in this Court.

## LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure governs the issuance of preliminary equitable relief. Under Rule 65, a party seeking injunctive relief must show: (1) a likelihood of success on the merits; (2) that he is likely to suffer irreparable harm without the injunction; (3) that the balance of equities tips in his

---

[47] *See* ECF No. 263 at 210–12 (ordering NDOC to provide notice when it obtains execution drugs); ECF No. 340 (status report noting purchase of ketamine and potassium chloride in February 2024); *see also* ECF No. 352 (status report noting purchase of cisatracurium besylate in June 2025).

[48] If Dzurenda, through Wolfson, is referring to drugs for the current protocol, then Plaintiffs are entitled to this information to continue the current challenge.

[49] Brigham & Dillon, *supra* note 2.

favor; and (4) that an injunction is in the public interest. *Winter v. National Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

The Ninth Circuit recognizes a "sliding scale" variant of the *Winter* standard, where a strong showing of one factor can offset a weaker showing of another factor. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a preliminary injunction may be granted if the plaintiff can show: (1) that there are "serious questions going to the merits"; (2) the balance of hardships tips sharply toward the plaintiff; and (3) the last two *Winter* factors are met. *Fraihat v. U.S. Immigration & Customs Enforcement*, 16 F.4th 613, 635 (9th Cir. 2021). A "serious question" is one on which the movant "has a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

When there is a need for immediate relief, a court may issue a temporary restraining order without a hearing, and order full briefing on a preliminary injunction to be heard within 14 days. *See* Fed. R. Civ. P. 65. The legal standards applicable to temporary restraining orders and preliminary injunctions are "substantially identical." *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

Plaintiffs can satisfy this standard.

### ARGUMENT

Plaintiffs seek an equitable remedy of a preliminary injunction and stay of execution. *See Towery v. Brewer*, 672 F.3d 650, 657 (9th Cir. 2012); *Nooner v. Norris*, 491 F.3d 804, 807–08 (8th Cir. 2007). As a result, this Court must consider

the parties' conduct in the litigation, assess the merits of the underlying claims, and balance the equities involved. *See Towery*, 672 F.3d at 657–58, 661; *Beardslee v. Woodford*, 395 F.3d 1064, 1068 (9th Cir. 2005). Those factors strongly favor granting the motion.

### A. Plaintiffs are moving for equitable relief at the earliest possible time.

Courts disfavor last-minute litigation over executions. *See Pizzuto v. Tewalt*, 997 F.3d 893, 899–900 (9th Cir. 2021); *Beardslee*, 395 F.3d at 1068.[50] Because of this, Plaintiffs are filing this motion before NDOC has confirmed whether it will be creating a new protocol, one week after reading Wolfson's statements in the *Review-Journal*. This represented the earliest possible time for Plaintiffs to do so.

Plaintiffs anticipate NDOC responding, like last time, that this motion is premature.[51] But Plaintiffs nonetheless err on the side of caution, given their lack of information about the drugs available to NDOC and uncertainty about how quickly the District Attorney's office will seek execution warrants.

### B. Plaintiffs are entitled to a preliminary injunction.

Plaintiffs are likely to succeed on the merits of their underlying claims. Should this Court deny a preliminary injunction, however, they face imminent

---

[50] *See also* Oral Argument at 51:00, *Floyd v. Filson*, No. 14-99012 (9th Cir. Jan. 31, 2019), https://www.ca9.uscourts.gov/media/video/?20190131/14-99012/.

[51] *See, e.g.*, ECF No. 23 at 7–10 (no "actual case or controversy," "speculation, conjecture, and hypothetical," "unripe," "premature"); ECF No. 25 at 2 ("nothing to stay," "illusory"); ECF No. 40 at 5–6, 9–12, 29–30 ("wait to see," "nothing for the court to stay," "very hypothetical"); ECF No. 49 at 14–19 ("putting the cart before the horse"); ECF No. 81 at 33–40, 46–47, 58 ("premature," "premature," "puts the cart before the horse," "still not ripe," "premature").

execution under an unchallenged protocol. Because this irreparable harm strongly outweighs any countervailing interests the defendants might assert, Plaintiffs are entitled to a preliminary injunction.

### 1. Plaintiffs are likely to succeed on the merits.

The Due Process Clause of the Fourteenth Amendment prohibits Nevada from depriving Plaintiffs "of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. When the government seeks to deprive a person of his life, procedural due process requires that the deprivation be implemented in a fair manner. *See United States v. Salerno*, 481 U.S. 739, 746 (1987) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). This Court previously found that Floyd had not been afforded adequate, timely notice to meaningfully review Nevada's execution protocol and respond substantively to the potential deprivation of his Eighth Amendment rights.[52] *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *see also Floyd*, 2021 WL 5406851, at *2 (Berzon, J., concurring). The same risks exist now.

It is firmly established that the Eight Amendment forbids executing anyone in a manner that is "cruel and unusual." *Fierro v. Gomez*, 77 F.3d 301, 306 (9th Cir.) (citing *Louisiana ex rel. Francis v. Resweber,* 329 U.S. 459, 464 (1947) (plurality opinion)), *cert. granted, judgment vacated on other grounds*, 519 U.S. 918 (1996). It should go without saying that effectuating that protection necessitates meaningful notice as to the method of execution and an opportunity to challenge that method of execution in court. Indeed, it is the specter of this very scenario that has caused

---

[52] ECF No. 128.

14

members of the Ninth Circuit to caution that a State's erection of "impenetrable roadblocks . . . to obtaining such information denie[s] death-row inmates their procedural due process right to have Eighth Amendment challenges heard at a meaningful time and in a meaningful manner." *First Amend. Coal. of Arizona, Inc.*, 938 F.3d at 1081 (Berzon, J., concurring in part and dissenting in part); *see Pizzuto*, 997 F.3d at 899–902.

Without adequate and timely notice of the execution protocol, which NDOC's previous hide-the-ball then ambush tactics plainly did not provide, Plaintiffs' Eighth Amendment rights against cruel and unusual punishment are worthless. If NDOC's previous position was correct, nothing would prevent NDOC from adopting a new, untested execution protocol the day before, the hour before, or the minute before the execution, no matter how inhumane it might prove to be. That is not the law. *See Lopez*, 680 F.3d at 1083–84 (Berzon, J., concurring in part and dissenting in part) (noting the condemned "clearly has a liberty interest in avoiding a mode of execution that constitutes cruel and unusual punishment").

In *Beaty v. Brewer,* the Ninth Circuit denied the appellant's motion for injunctive relief,[53] and Judge Reinhardt, joined by six other judges in dissent from denial of rehearing en banc, grappled with this issue: "It is the question of procedural due process: whether an individual may be executed pursuant to a protocol substituted for the established means of execution, eighteen hours before

---

[53] Because the decision in *Beaty* simply denied the appellant's motion for a stay on appeal, the decision does not bind merits panels. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 660–61 (9th Cir. 2021).

the scheduled time of execution and without sufficient opportunity even to present his constitutional objections." 649 F.3d 1071, 1072 (9th Cir. 2011) (Reinhardt, J., dissenting from denial of rehearing en banc); *see also First Amend. Coal. of Arizona, Inc.*, 938 F.3d at 1082 (Berzon, J., concurring in part and dissenting in part). "To require such a showing in the eighteen hours before execution," Judge Reinhardt concluded, "is to deny Beaty due process." *Beaty*, 649 F.3d at 1073 (Reinhardt, J., dissenting from denial of rehearing en banc).

Also relevant here are NDOC's previous adoptions of novel, untested execution protocols. This was not an issue in *Pizzuto*. Nor was it an issue in dozens of other cases denying stays of execution. *See, e.g., Barr v. Lee*, 591 U.S. 979, 980 (2020) (per curium); *Beardslee*, 395 F.3d at 1072–73; *Rhoades v. Reinke*, 671 F.3d 856, 859 (9th Cir. 2011); *Cooper v. Rimmer*, 379 F.3d 1029, 1033 (9th Cir. 2004); *Jones v. Comm'r, Ga. Dep't of Corr.*, 811 F.3d 1288, 1296 (11th Cir. 2016); *Reynolds v. Strickland*, 598 F.3d 300, 301–02 (6th Cir. 2010); *Workman v. Bredesen*, 486 F.3d 896, 906–07 (6th Cir. 2007); *Beaty v. Brewer*, 791 F. Supp. 2d 678, 683 (D. Ariz. 2011). And it was not an issue in the cases NDOC relied on in its appeal of this Court's previous preliminary injunction, where the execution protocols were known to the plaintiffs at the time of the motions. *See Jones v. Comm'r, Ga. Dep't of Corr.*, 812 F.3d 923, 925–26 (11th Cir. 2016) (Marcus, J., concurring in the denial of initial hearing en banc); *Phillips v. DeWine*, 841 F.3d 405, 420 (6th Cir. 2016); *Zink v. Lombardi*, 783 F.3d 1089, 1109 (8th Cir. 2015) (en banc) (per curiam); *Sepulvado v. Jindal*, 729 F.3d 413, 418–20 (5th Cir. 2013). The plaintiffs in these cases *already knew* what drugs were in the execution protocol, and were seeking other

16

information about the protocols, like the drug manufacturers and execution team members. *See Jones*, 812 F.3d at 924–25 (Marcus, J., concurring in the denial of initial hearing en banc); *Phillips*, 841 F.3d at 410–12; *Zink*, 783 F.3d at 1096; *Sepulvado*, 729 F.3d at 416. Moreover, in *Whitaker v. Livingston*, the Fifth Circuit explained that it is "not unreasonable to assume that if a prisoner has the right to be free from a demonstrated risk of severe pain when compared to a known and available alternative, he ought to have the opportunity to prove the risk of pain and the availability of alternatives." 732 F.3d 465, 469 (5th Cir. 2013). If, the court explained, "the state were using a drug never before used or unheard of, whose efficacy or science was completely unknown, the case might be different." *Id.*

### 2. The balance of the equities weighs heavily in Plaintiffs' favor.

In addressing the remaining factors, this Court must balance Plaintiffs' interests against NDOC's and the public's. *See United States v. Mitchell*, 971 F.3d 993, 996 (9th Cir. 2020); *Towery*, 672 F.3d at 657. Because Plaintiffs face an unconstitutional execution, and any information about that execution is solely in the possession of NDOC, that balance weighs heavily in Plaintiffs' favor.

### a) Plaintiffs will be irreparably injured without a preliminary injunction.

As this Court previously recognized, "[t]here can be no greater irreparable and permanent harm than death."[54] *Accord O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982) ("In a capital case, the possibility of irreparable injury weighs

---

[54] ECF No. 128 at 9.

17

heavily in the movant's favor."); *Rhoades v. Reinke*, 830 F. Supp. 2d 1046, 1048 (D. Idaho) ("[T]he very nature of an execution means that the plaintiff will suffer irreparable harm."), *aff'd*, 671 F.3d 856; *see also Towery*, 672 F.3d at 661 (noting that "every § 1983 plaintiff in an injunction appeal involving an upcoming execution demonstrate[s] irreparable harm"); *Beaty*, 649 F.3d at 1072 (plaintiff "has a strong interest in being executed in a constitutional manner"). As with the previous preliminary injunction, this factor weighs heavily in Plaintiffs' favor. *See Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014), *as amended* (Mar. 11, 2014).

### b) Any injury to the defendants is significantly outweighed by the harms Plaintiffs face.

In general, the State has an interest in enforcing Nevada's criminal judgments. *Hill v. McDonough*, 547 U.S. 573, 584 (2006). But NDOC does not have an interest in executing Plaintiffs under an unconstitutional protocol. *See Ray v. Comm'r, Ala. Dep't of Corr.*, 915 F.3d 689, 701–02 (11th Cir. 2019); *In re Holladay*, 331 F.3d 1169, 1177 (11th Cir. 2003). In its previous insistence on carrying out speedy executions, NDOC has ignored this counterbalancing interest in ensuring those executions are performed in accordance with the Constitution. The rule NDOC has attempted to advance in the past, and will presumably advance here, is one where the federal judiciary would play *no role* in ensuring the constitutionality of executions. But that cannot be the case. And Plaintiffs are not seeking to prevent the State from ever carrying out their sentences; they are instead seeking to enjoin the State from executing them unconstitutionally. *See Gomez v. U.S. Dist. Ct. for N.*

18

*Dist. Of Cal.*, 966 F.2d 460, 462 (9th Cir. 1992) (Noonan, J., dissenting from grant of writ of mandate) ("The state will get its man in the end. In contrast, if persons are put to death in a manner that is determined to be cruel, they suffer injury that can never be undone, and the Constitution suffers an injury that can never be repaired.").

NDOC might additionally argue against an injunction because of the potential expiration of execution drugs. But this Court's previous order adequately balanced drug expiration dates with Floyd's due process interest in litigating the protocol's constitutionality.[55] Indeed, it was the state court stay of execution—not this Court's preliminary injunction—that pushed Floyd's execution date past the drugs' expiration. And NDOC could help ensure adequate time for litigation by revealing information about a new protocol or drugs before an execution date is set.[56] *See Towery*, 672 F.3d at 661; *see also Landrigan v. Brewer*, No. 10-02246, 2010 WL 4269559, at *9 (D. Ariz. Oct. 25, 2010) (criticizing defendants for "withholding *all* evidence regarding the drug," while at the same time opposing stay of execution), *aff'd*, 625 F.3d 1144 (9th Cir. 2010), *rev'd on other grounds*, 562 U.S. 996 (2010); *cf. Pizzuto*, 997 F.3d at 902 (expressing concern with states withholding information about execution protocol "to minimize judicial scrutiny").

---

[55] ECF No. 128 at 11.

[56] Under Nevada law, an execution date is set between 15 and 30 days after the warrant is issued. Nev. Rev. Stat. § 176.495(2).

19

#### c)    The public interest does not support an unconstitutional execution.

The public interest, which "addresses impact on non-parties rather than parties," weighs in Plaintiffs' favor. *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014). As this Court explained, "the public has an equal interest in ensuring that that the imposition of the ultimate state sanction—death—is done in a constitutional manner."[57] *See In re Ohio Execution Protocol Litig.*, 840 F. Supp. 2d 1044, 1059 (S.D. Ohio 2012), *case dismissed* (Mar. 20, 2012); *Coe v. Bell*, 89 F. Supp. 2d 962, 966 (M.D. Tenn. 2000), *vacated on mootness grounds*, 230 F.3d 1357 (6th Cir. 2000) (unpublished table disposition); *see also Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights."), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). Although the State may stress the public's interest in the enforcement of criminal judgments, that interest cannot be served "at the expense of a condemned inmate's constitutional rights." *In re Ohio Execution Protocol Litig.*, 840 F. Supp. 2d at 1059; *see Ray*, 915 F.3d at 701–02. At the very least, the public has an interest in ensuring that the state does not arbitrarily amend its execution protocol without ensuring adequate opportunity for any constitutional challenge.

Plaintiffs' execution with an undisclosed and untested protocol undermines this interest. Allowing time for meaningful litigation, in contrast, serves this

---

[57] ECF No. 128 at 12.

20

interest. As the Ninth Circuit explained in *Wood v. Ryan*, information concerning execution protocols informed the decision to ban gas chamber executions and sustain executions by hanging. *Wood v. Ryan*, 759 F.3d 1076, 1087–88 (9th Cir.), *vacated on other grounds*, 573 U.S. 976 (2014). Neither the public nor the judiciary can "meaningfully evaluate execution protocol[s] cloaked in secrecy." *Id.*

**C.    This Court is authorized to grant a stay of execution under the All Writs Act.**

In addition to this Court's power to grant temporary injunctive relief, this Court is also empowered to grant the requested stay of execution under 28 U.S.C. § 1651(a), the All Writs Act. Pursuant to 28 U.S.C. § 1651(a), federal courts are empowered to issue injunctions to "protect the jurisdiction they already have." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099–1100 (11th Cir. 2004); *see also Hill v. McDonough*, 464 F.3d 1256, 1258 (11th Cir. 2006); *Messer v. Kemp*, 831 F.2d 946, 957 (11th Cir. 1987). A court may issue a writ under the Act whenever it is "calculated in the court's sound judgment to achieve the ends of justice entrusted to it." *Klay*, 376 F.3d at 1100 (brackets and citation omitted). An injunction under the All Writs Act preserves the integrity of the issuing court's orders, *United States v. New York Tel. Co.,* 434 U.S. 159, 172 (1977), and "must simply point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior." *Hill*, 464 F.3d at 1258. The All Writs Act allows courts to "safeguard not only ongoing proceedings, but potential future proceedings." *Klay*, 376 F.3d at 1099.

This Court in its discretion should issue an injunction under the All Writs Act to preserve the integrity and equitable course of these proceedings, and to prevent NDOC from undermining Plaintiffs' rights to not be executed in a manner prohibited under the Constitution. *See, e.g.*, *Helmbecker v. 555 Associates*, Civil Action No. 01-6140, 2003 WL 21652182, at *6 (E.D. Pa. Mar. 26, 2003) (issuing an injunction under the All Writs Act because of the plaintiff's "tactical maneuvers intended to delay the case"). The need for this Court to complete a thorough review cannot be overstated, given the precedent NDOC's conduct in this case is likely to set.

True enough, courts routinely deny constitutional challenges to lethal injection protocols that have *already* been litigated and found to be constitutionally sound. *See, e.g.*, *Dickens v. Brewer*, 631 F.3d 1139, 1141 (9th Cir. 2011). But courts considering protocols in the first instance must engage in a fact intensive inquiry supported by adversaries presenting a wide range of evidence. *See Chavez v. Florida SP Warden*, 742 F.3d 1267, 1275 (11th Cir. 2014) (Wilson, J., concurring) ("[W]hether a significant change has occurred to a state's lethal injection protocol is a fact-intensive inquiry for which an evidentiary hearing is especially important.").

Here, this Court's eventual determination as to the constitutionality of NDOC's novel protocol undoubtedly will have persuasive effect for future challenges in Nevada and other states. *See, e.g.*, *Barr*, 591 U.S. at 980 (relying on previous courts' consideration of execution drug). Plaintiffs and this Court—and other future courts and claimants—will not benefit from a rushed, incomplete determination as to the constitutionality of NDOC's novel protocol, which will occur if Plaintiffs'

executions are carried out in an expedited fashion. In addition to notions of fairness and equity, an injunction also protects the integrity of this Court's eventual order by ensuring Plaintiff's claims—and the ultimate question of the protocol's constitutionality—receive a fulsome, thorough, and contested analysis.

## CONCLUSION

The Clark County District Attorney, for the second time in five years, publicly announced he planned to seek execution warrants under an unknown protocol, with unknown drugs. Because the Due Process Clause protects Plaintiffs' right to litigate that protocol's constitutionality, a preliminary injunction is warranted, staying any execution for a period of time that will allow Plaintiffs to adequately litigate their challenges.

Dated this 23rd day of April, 2026.

Respectfully submitted,

Rene L. Valladares
Federal Public Defender

*/s/ David Anthony*
David Anthony
Assistant Federal Public Defender

*/s/Ellesse Henderson*
Ellesse Henderson
Assistant Federal Public Defender

23